ABRAHAM A. TABAIE (SBN 260727)
abraham.tabaie@skadden.com
EMILY REITMEIER (SBN 305512)
emily.reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
525 University Avenue
Palo Alto, California  94301-1908
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570


EDWARD L. TULIN (*pro hac vice*)
edward@gishpllc.com
ANDREW D. GISH (*pro hac vice*)
andrew@gishpllc.com
RAYMOND J. BILDERBECK (*pro hac vice*)
ray@gishpllc.com
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
Telephone:     (212) 518-2000


Attorneys for Defendant Voyager Labs, Ltd.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| META PLATFORMS, INC., | Case No. 4:23-cv-00154-HSG |
| Plaintiff, | |
| vs. | **DEFENDANT VOYAGER LABS LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT** |
| VOYAGER LABS LTD., | |
| Defendant. | Hearing Date:  June 1, 2023 |
| | Hearing Time: 2:00 p.m. |
| | Judge: Honorable Haywood S. Gilliam |
| | Complaint Filed: January 12, 2023 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 1, 2023, at 2:00 p.m., or as soon thereafter as this motion may be heard, before the Honorable Haywood S. Gilliam of the United States District Court for the Northern District of California, in Courtroom 2, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant Voyager Labs Ltd. will and hereby does move the Court to dismiss the Complaint of Plaintiff Meta Platforms, Inc.  Defendant's motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion to Dismiss; the Supporting Memorandum of Points and Authorities; any pleadings, records, papers, and filings in this matter; the oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF RELIEF SOUGHT

Defendant seeks an order dismissing Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiff has failed to state a claim for breach of contract because Plaintiff has failed to allege any facts establishing mutual assent to enter into a contract or describing the terms of that contract.

2.     Whether, in the absence of any pleaded facts supporting Plaintiff's "alter ego" or agency theories, Plaintiff has failed to state a claim based on any alleged actions of individuals or entities other than Defendant.

1

**TABLE OF CONTENTS**

2

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

3     I.     INTRODUCTION ...............................................................................1

4     II.     COMPLAINT SUMMARY AND FACTUAL BACKGROUND .........................3

5         A.     The Parties .................................................................................3

6         B.     The Non-Party Entities ..................................................................4

7         C.     Allegations Relating to Supposed Contracts with Voyager UK .................4

8     III.     LEGAL STANDARDS ........................................................................5

9         A.     Legal Standards Governing Rule 12 Motions to Dismiss...........................5

10         B.     Legal Standards for Pleading Breach of Contract Claims ..........................6

11         C.     Legal Standards Governing Online Adhesion Contracts ...........................7

12     IV.     ARGUMENT ...................................................................................8

13         A.     Meta's Breach of Contract Claim Should Be Dismissed for Failing to
14                 Plausibly Allege that an Agreement Exists Between Meta and
Voyager UK .................................................................................8

15             1.     Meta Has Not Sufficiently Alleged the Existence of a Contract
16                   That Voyager UK Allegedly Breached...............................8

17             2.     Meta Fails to Plausibly Allege That Voyager UK Manifested
                  Assent to Any Contract Term ........................................10

18         B.     Meta Fails to Sufficiently Allege How Voyager UK is Bound by the
19             Actions of the Non-Party Entities ...................................................13

20             1.     "Alter Ego" Liability Is a Rare Exception That Requires
                  Additional Pleaded Facts ...............................................14

21                 (a)     *Meta Fails to Plead Any "Unity of Interests"* ..................14

22                 (b)     *Meta Fails to Plead Any "Inequitable Results" If Alter*
23                      *Ego Liability is Rejected* ..............................................17

24             2.     Meta's Complaint Fails to Plausibly Allege That the Non-
                  Party Entities Are Agents of Voyager UK.........................17

25             3.     Because Meta Fails To Plausibly Allege Alter Ego or Agency
26                   Liability Based on the Conduct of the Non-Party Entities, Its
                  Breach of Contract Claim Should Be Dismissed.........................18

27

CONCLUSION.....................................................................................................19

28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Futures LLC v. LCF Labs Inc.*,
   No. 8:21-cv-02121-JVS (ADSx), 2022 WL 16859970 (C.D. Cal. Oct. 5, 2022)......................6, 10

*Allied Prods. Corp. v. Electric & Gas Tech.*, *Inc.*,
   No. 97 C 5256, 1998 WL 173305 (N.D. Ill. Apr. 8, 1998)..........................................................18

*AlterG, Inc. v. Boost Treadmills LLC*,
   No. 18-CV-07568-EMC, 2019 WL 4221599 (N.D. Cal. Sept. 5, 2019) .....................................10

*Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013 (N.D. Cal. 2006) ..................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................5, 6, 19

*Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972 (C.D. Cal. 2013) ..................................................15

*Be In, Inc. v. Google Inc.*,
   No. 12-cv-3373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ............................................*passim*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................5, 19

*Berkson v. Gogo LLC,* 97 F. Supp. 3d 359 (E.D.N.Y. 2015) ..............................................................6

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ....................................1, 7, 12

*BMMSoft, Inc. v. White Oaks Technology, Inc.*,
   No. C–09–4562 MMC, 2010 WL 3340555 (N.D. Cal. Aug. 25, 2010) ......................................11

*Conley v. Gibson*, 355 U.S. 41 (1957) .............................................................................................5

*Cvent Inc. v. Eventbrite*, 739 F. Supp. 2d 927 (E.D. Va. 2010)........................................................13

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) .........................................................................15

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
   No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865 (N.D. Cal. Mar. 5, 2012).......................16

*Garibaldi v. Bank of Am. Corp.*,
   No. C 13-02223 SI, 2014 WL 172284 (N.D. Cal. Jan. 15, 2014)...............................................1, 9

*Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) ......................13, 17

*Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1037 (9th Cir. 2010) ............................13

*Gunderson v. ADM Investor Servs., Inc.*, 85 F. Supp. 2d 892 (N.D. Iowa 2000)............................18

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ...............15

*Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings, Inc.*,
   No. 18-cv-05031-EMC, 2019 WL 331161 (N.D. Cal. Jan. 25, 2019)..........................................16

*Hospitality Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
  No. 15-cv-01791 JVS (DFMx), 2016 WL 9045621, (C.D. Cal. Jan. 28, 2016)...........................17

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143 (9th Cir. 2004)....................14

*Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 200 Cal. Rptr. 3d 117 (2016) ........................12

*Masimo Corp. v. Sotera Wireless*,
  No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 232276 (S.D. Cal. Dec. 9, 2020) .............14

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ...............................................................................6

*Netbula, LLC v. BindView Development Corp. Eyeglasses*,
  516 F.Supp.2d 1137 (N.D. Cal. 2007) ..........................................................................................10

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .................................................11, 12

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811 (2011) ...............................................................6

*Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................................................5

*Park v. Morgan Stanley & Co.*,
  No. 2:11-cv-9466-ODW (MRWx), 2012 WL 589653 (C.D. Cal. Feb. 22, 2012)....................8, 9

*Prochaska & Assocs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  798 F. Supp. 1427 (D. Neb. 1992)..................................................................................................18

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) .....................................................................14, 15

*Reichert v. General Ins. Co.*, 68 Cal. 2d 822 (1968) .........................................................................6

*Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014).....................................................................15

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ...................................................................7

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)...................................14, 17

*Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp.3d 938 (N.D. Cal. 2015). ...........................15

*Sw. Airlines Co. v. BoardFirst, LLC*,
  No. 3:06–CV–0891–B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ......................................13

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
  No. CV99–7654, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) .................................................13

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (1994)............................................14, 16

*TopstepTrader, LLC v. OneUp Trader, LLC*,
  No. 17 C 4412, 2018 WL 1859040 (N.D. Ill. Apr. 18, 2018).....................................................11

*Uniloc 2017 LLC v. H&R Block, Inc.*,
  No. SACV 19-1149 JVS (KESx), 2019 U.S. Dist. LEXIS 229166 (C.D. Cal. Dec. 23, 2019) ....16

*Vaccarino v. Midland Nat. Life Ins., Co.*,
  No. 11-cv-05858 (CAS) (MANx), 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011) ........................8

*Williams v. Yamaha Motor Co.*,
　851 F.3d 1015, 1021 (9th Cir. 2017) .......................................................................... 2, 14

*Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*,
　No. 8:20-cv-00102-JWH-ADSx, 2022 WL 739522 (C.D. Cal. Feb. 2, 2022) .................. 2, 17, 18

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................ 1, 5

Fed. R. Civ. P. 12 .......................................................................................................... 3, 6, 19

**Other Authorities**

Restatement (Third) of Agency § 1.01 (2006) .................................................................. 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

In its Complaint, Plaintiff Meta Platforms, Inc. ("Meta") asserts a single claim for breach of contract against Defendant Voyager Labs Ltd. ("Voyager UK").  To satisfy its pleading obligations under Rule 8 of the Federal Rules of Civil Procedure, Meta must plead facts from which a reasonable factfinder could plausibly conclude that Meta and Voyager UK formed a contract through acts of mutual assent.  Meta pleads no such facts.  Instead, Meta relies on two improper pleading tactics.

*First*, Meta invokes a hodgepodge of more than a half-dozen sets of terms, guidelines, rules, standards, and policies that allegedly govern "everyone" who has ever used Facebook or Instagram. But Meta attaches no contract to its Complaint, and instead quotes from undated versions of what Meta alleges are "Facebook's Terms" and "Instagram's Terms."  Meta's Complaint thus does not put Voyager UK on notice of (i) what the essential terms of the allegedly breached contracts are; (ii) whether those terms have changed over time; or even (iii) the alleged duration(s) of those contracts. That is inadequate to plausibly plead the existence of a contract.  *See, e.g., Garibaldi v. Bank of Am. Corp.*, No. C 13-02223 SI, 2014 WL 172284, at *3 (N.D. Cal. Jan. 15, 2014) (dismissing breach of contract claim that was based on repeated references to "uniform policies").

Similarly, Meta's theory of contract formation appears to be:  there are billions of users of Meta's Facebook and Instagram websites, and Voyager UK allegedly was one of them; therefore, some contract must have been formed between Meta and Voyager UK.  But the Complaint does not allege how Voyager UK manifested assent to any such a contract, which necessarily would have been an online adhesion contract.  The Complaint alleges only that Voyager UK has, at various points over an eight-year span, "created and used multiple Facebook and Instagram accounts."  But even if that were true, it is insufficient to plausibly allege formation of an online adhesion contract because mere use of a website, without more, is not generally sufficient to manifest assent to the terms of such a contract.  *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022); *Be In, Inc. v. Google Inc.*, No. 12-cv-3373, 2013 WL 5568706, at *8 (N.D. Cal. Oct. 9, 2013).  Moreover, online adhesion contracts of the sort to which Meta alludes in its Complaint

1  typically fall into one of two categories: browsewrap (i.e., contracts that are allegedly formed by

2  mere use of a website and notice of applicable terms), or clickwrap (i.e., contracts that are allegedly

3  formed by an affirmative "click" accepting terms).  Meta does not say whether the alleged contracts

4  are browsewrap, clickwrap, or something else—and unlike an action for breach of a typical

5  bilateral, executed contract, Voyager UK may never have even seen the particular terms that

6  allegedly constitute the contracts in question.  Meta's Complaint therefore fails to place Voyager

7  UK on reasonable notice of the basis for its breach claim, which compels dismissal.

8          Meta tries to get around these pleading deficiencies by flooding the docket with exhibits

9  spanning 1,509 pages.  Yet, Meta cites only 25 pages from them—less than 2%.  And, as noted

10  above, no actual contract can be found among those exhibits—nor any screenshots of the Facebook

11  or Instagram websites that could allow the Court to assess how mutual assent may have been

12  provided.  Meta's Complaint is therefore designed to create an impression of wrongdoing by

13  substituting quantity of paper for quality of allegations.

14          _Second_, Meta improperly conflates Voyager UK with its subsidiaries, arguing that it should

15  "be held responsible for the activities of its subsidiaries[1] as if [Voyager UK] itself was the actor"

16  under an alter ego theory.  (Compl. ¶ 6.)  That is the entirety of Meta's alter ego allegations.  But

17  alter ego is an exceptional theory of liability that requires a plaintiff to plead facts showing (1) such

18  unity of interest among multiple corporations that their separate personalities no longer exist; and

19  (2) inequitable results if traditional corporate separateness is observed.  _See, e.g._, _Williams v._

20  _Yamaha Motor Co._, 851 F.3d 1015, 1021 (9th Cir. 2017).  Meta has not met these requirements.

21  And even if Meta were to argue that the Non-Party Entities function instead as mere agents of

22  Voyager UK (rather than as its alter ego), then those allegations would fail as well because the

23  Complaint is devoid of any facts that could plausibly establish an agency relationship.  _See, e.g._,

24  _Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co._, No. 8:20-cv-00102-

25  JWH-ADSx, 2022 WL 739522, at *3 (C.D. Cal. Feb. 2, 2022) (granting motion to dismiss and

26

27  _____
    [1]      Those non-party subsidiaries are Voyager Analytics Inc. (a Delaware corporation), Bionic 8
28  Analytics Inc. (an Israeli corporation), and Novarize Inc. (a Delaware corporation) (collectively,
    "the Non-Party Entities").

1    noting that "[t]o sufficiently plead an agency relationship, a plaintiff must allege facts

2    demonstrating the principal's control over its agent").

3          In short, Meta has skipped the threshold showing that it must make to state a claim for

4    breach of contract:  a manifestation of mutual assent to the electronic contract(s) of adhesion that

5    allegedly have been breached, and what the terms of those contracts allegedly are.  Meta appears to

6    believe that its sheer ubiquity absolves it of its pleading duties under federal law.  But neither

7    Meta's reliance on its substantial number of users, nor its attachment of irrelevant documents, nor

8    its inadequately pleaded theory of alter ego or agency liability can fill the fundamental gaps in its

9    Complaint.  And because Meta's entire case appears to be based on terms, conditions, and standards

10   that were drafted entirely by Meta as adhesion contracts, it is necessary that Meta place Voyager

11   UK on notice of its theory of contract formation and provide the complete set of terms for those

12   contracts.  Meta has done neither.  Because Meta has not satisfied Rule 8, the Complaint should be

13   dismissed pursuant to Rule 12(b)(6).

14   II.      **COMPLAINT SUMMARY AND FACTUAL BACKGROUND**[2]

15           A.      **The Parties**

16          Meta is a Delaware corporation that "operates, among other services, Facebook and

17   Instagram."  (Compl., ¶ 3.)  Voyager UK is a limited liability company incorporated under the laws

18   of England and Wales.  (Compl. ¶ 4.)  Voyager UK is one member of an international group of

19   companies that have "developed a proprietary AI-based" software that uses "an innovative, scalable

20   and cognitive approach . . . to interpret the complex layers of the digital world" through "big data

21   analytics."  (Compl., Ex. 1 at 4.)  Designed to analyze "open, deep, and dark web data, as well as

22   internal data" through "machine learning, pattern recognition, natural language processing, [and]

23   combinatorial and statistical algorithms," this analytical software can provide "deep actionable

24   insights."  (Compl. Ex. 2; Ex. 3 at 34.)  It is "used by analysts, agents and other professionals

25

26   _____

27   [2]        For purposes of this Motion, Voyager UK treats all of the factual allegations in the
28   Complaint as if they were true, without thereby admitting their truth.

worldwide to tackle challenges like fraud, crime, terror, insider threats, trafficking and other risks, helping to create a safer world for all." (Compl. Ex. 1 at 4.)

Meta defines the foregoing technology as "Surveillance Software," (Compl. ¶ 1), although Meta cites no evidence that it was allegedly used for "surveillance."

### B.   The Non-Party Entities

Meta alleges that Voyager UK "exercises complete control over" three Non-Party Entities (Voyager Analytics, Inc., Bionic 8 Analytics, Inc., and Novarize, Inc.), and therefore that "[Voyager UK] can [] be held responsible for the activities of its subsidiaries as if [Voyager UK] itself was the actor." (Compl. ¶ 6.)  In support of that claim, Meta alleges that:

> (1)   Voyager UK "files annual reports that consolidate [Voyager UK]'s and its subsidiaries' financial statements" (a single purported example of which was offered by Meta as Exhibit 1 to the Complaint); and
>
> (2)   "[Voyager UK] and Voyager Analytics, Inc. both operate under the name 'Voyager Labs.'"

(*Id.*)  Meta alleges no further facts to support its claim of "complete control" by Voyager UK over the Non-Party Entities.  Throughout the remainder of the Complaint, Meta refers to Voyager UK as having taken action "through its employees and agents," thus appearing to conflate the Non-Party Entities with Voyager UK as a single, omnibus entity.

### C.   Allegations Relating to Supposed Contracts with Voyager UK

The Complaint alleges that "[e]veryone who creates a Facebook account or otherwise uses Facebook agrees to the Terms of Service and other rules that govern access to and use of Facebook," and that "[e]veryone who 'create[s] an Instagram account or use[s] Instagram' agrees to Instagram's Terms of Use and other rules that govern access to and use of Instagram." (Compl. ¶ 22.)  But the Complaint is devoid of any detail as to how a user indicates assent to those Terms— i.e., whether they are "clickwrap" agreements, "browsewrap" agreements, or something else. (Compl. ¶ 22.)  And as for Voyager UK, Meta alleges that "through its employees and agents, [Voyager UK] created and used multiple Facebook and Instagram accounts and thereby agreed to Facebook's and Instagram's Terms." (Compl. ¶ 68; *see also id.* ¶ 30(a)-(g).)  Meta never alleges

that Voyager UK was presented with any of those "Terms" during creation or use of those accounts, or that Voyager UK manifested assent to them through any affirmative action (other than the creation of a Facebook or Instagram account in some undefined way, and the alleged use of those websites).

Nevertheless, Meta alleges that "[a]t all relevant times, [Voyager UK] was bound by Facebook's Terms and Instagram's Terms." (Compl. ¶ 29.) Those "relevant times" encompass May 1, 2015 through January 12, 2023. (*Id.* ¶ 30.) "Facebook's Terms" appear to encompass (1) the "Terms of Service"; (2) "Facebook's Community Standards"; (3) the "the Meta Commercial Terms" and (4) additional, unspecified "rules that govern access to and use of Facebook." (*Id.* ¶ 29.) Similarly, "Instagram's Terms" appear to encompass (1) "Instagram's Terms of Use"; (2) "Instagram's Community Guidelines"; and (3) additional, unspecified "rules that govern access to and use of Instagram." (*Id.* ¶ 23.) The Complaint does not attach any of the foregoing materials as exhibits, and does not specify whether Meta contends that those were clickwrap, browsewrap, or something else. And while the Complaint quotes numbered sections of certain "Terms," it does so without identifying the document or agreement being quoted, and instead generically refers to the source of those quotations as "Facebook's Terms" and/or "Instagram's Terms." (*Id.* ¶¶ 22-28.)

## III.   **LEGAL STANDARDS**

### A.   **Legal Standards Governing Rule 12 Motions to Dismiss**

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "naked assertion[s] devoid of further factual enhancement'" are not sufficient to meet this standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556-57) (quotation marks

1    omitted).  To determine whether a complaint satisfies the requirements of Rules 8(a)(2) and

2    12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable

3    inferences to be drawn from them."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

4    However, this standard "do[es] not require courts to credit a complaint's conclusory statements

5    without reference to its factual context."  *Iqbal*, 556 U.S. at 686.

6        **B.**    **Legal Standards for Pleading Breach of Contract Claims**

7        Under California law, to state a claim for breach of contract, a plaintiff must allege <u>facts</u>

8    showing (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance

9    of the contract, (3) defendant's breach of the contract, and (4) resulting damages.  *Oasis W. Realty,*

10   *LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822,

11   830 (1968)).  This motion focuses on the first prong of the foregoing test.

12       To properly plead the existence of a contract sufficient to meet that first prong, a plaintiff

13   must "make clear" what contracts are at issue by identifying them specifically; courts dismiss

14   claims where "dizzying references to multiple 'agreements,' 'promises,' and 'contracts' [make] it

15   'impossible' to discern which contract, terms, parties, and breaches [are] the basis of the breach-of-

16   contract claim."  *AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121-JVS (ADSx), 2022 WL

17   16859970, at *4 (C.D. Cal. Oct. 5, 2022).

18       In addition, "the formation of a contract requires a manifestation of mutual assent."  *Be In,*

19   *Inc.*, 2013 WL 5568706, at *6 (quotation marks omitted).  "Indeed, such a manifestation is the

20   touchstone of contract."  *Id.*; *see also Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 383 (E.D.N.Y.

21   2015) ("Sometimes forgotten in the Internet Age—where contracts of adhesion are often the rule for

22   online consumers—is the essential element of contract formation: mutual manifestation of assent.").

23   Thus, in order to plead the formation and existence of a contract that can survive a challenge under

24   Rules 8(a)(2) and 12(b)(6), a plaintiff alleging breach of contract must not only identify the

25   contracts at issue, but must also allege facts sufficient to create a reasonable inference that a

26   defendant accepted the contract terms that it is accused of breaching.  *See, e.g.*, *Be In, Inc.*, 2013

27   WL 5568706, at *9 (finding that "pleadings are insufficient to establish contract formation" unless

28

1   they "establish grounds for the Court to find a manifestation of [the defendant's] mutual assent to"

2   the terms of the contract).

3       **C.**    <u>**Legal Standards Governing Online Adhesion Contracts**</u>

4         Online adhesion contracts are unique, and thus the analytical construct used to assess their

5   formation and existence is different from that which applies to traditional, bilateral paper contracts.

6   As recently explained by the California Court of Appeal:

7         In the world of paper contracting, the outward manifestation of assent

8         to the same thing by both parties is often readily established by the
    offeree's receipt of the physical contract. . . .  By contrast, when

9         transactions occur over the internet, there is no face-to-face contact and
    the consumer is not typically provided a physical copy of the

10        contractual terms. In that context, and in the absence of actual notice,
    a manifestation of assent may be inferred from the consumer's actions

11        on the website—including, for example, checking boxes and clicking
    buttons—but any such action must indicate the parties' assent to the

12        same thing, which occurs only when the website puts the consumer on
    constructive notice of the contractual terms.

13  *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021).  Whether a complaint sufficiently

14  alleges mutual assent of online adhesion contract(s) depends on the kind of adhesion contract at

15  issue.   For so-called "clickwrap" agreements, pleading that a user affirmatively clicked a box

16  indicating acceptance of the relevant terms may provide requisite allegations of mutual acceptance.

17  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).  On the other hand, for

18  so-called "browsewrap" agreements—where plaintiffs sometimes suggest that consumers' mere use

19  of a website binds them to terms that they did not affirmatively accept—merely alleging that

20  someone has used a website is generally not enough to satisfy the requirements under Rule 8.  *Be*

21  *In, Inc.*, 2013 WL 5568706, at *9 (dismissing breach of contract claims that had been based on an

22  alleged browsewrap contract and noting that "Defendants' mere use of the website can only serve as

23  a manifestation of assent where Defendants had, or should have had, reason to know that mere use

24  would be so interpreted").

25

26

27

28

## IV.   ARGUMENT

### A.   Meta's Breach of Contract Claim Should Be Dismissed for Failing to Plausibly Allege that an Agreement Exists Between Meta and Voyager UK

#### 1.   Meta Has Not Sufficiently Alleged the Existence of a Contract That Voyager UK Allegedly Breached

Before the Court can analyze Voyager UK's alleged acceptance of the terms of a contract, Meta needs to identify a contract between the two that was allegedly breached.  Meta has failed to do so in a way that places Voyager UK on notice of the relevant contract terms.[3]

The existence and content of a contract is central to any breach claim, and therefore the identification of the relevant contract is a threshold allegation that a plaintiff must plead to survive a motion to dismiss.  *See Park v. Morgan Stanley & Co.*, No. 2:11-cv-9466-ODW (MRWx), 2012 WL 589653, at *2 (C.D. Cal. Feb. 22, 2012) (finding that a plaintiff had failed to sufficiently allege the existence of a contract where the pleadings "fail[ed] to allege the nature of the contract sufficiently enough to give Defendant[s] notice of the contract to which Plaintiff refers . . . leav[ing] Defendants to guess as to which 'agreement' was actually breached"); *Vaccarino v. Midland Nat. Life Ins., Co.*, No. 11-cv-05858 (CAS) (MANx), 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011) (dismissing breach of contract claim where the plaintiff failed to "identify her contract's essential terms," or "which terms of the contract were breached").

Here, despite attaching 1,509 pages of largely irrelevant "exhibits" to the Complaint, Meta does not include any of the supposed contract(s) that Meta alleges are the basis for its breach claim. Instead, Meta alludes to seven different <u>categories</u> of potential contracts: (1) Facebook's Terms of Service; (2) Facebook's Community Standards; (3) Meta Commercial Terms (but only "as applicable"); (4) other "rules that govern access to and use of Facebook"; (5) Instagram's Terms of Use; (6) Instagram's Community Guidelines; and (7) other "rules that govern access to and use of Instagram."  (Compl. ¶¶ 22, 23.)  Meta's Complaint defines categories (1)-(4) as "Facebook's Terms," and defines categories (5)-(7) as "Instagram's Terms."  (*Id.*)  These references are

---

[3]   Voyager UK does not believe that any enforceable contract exists between itself and Meta, which may account for the lack of detail in the Complaint.

1 insufficient to place Voyager UK on notice of the actual contracts that Meta allegedly entered with

2 Voyager UK, for several reasons.

3 *First*, it is unclear what is meant by "as applicable, the Meta Commercial Terms" (Compl.

4 ¶ 22), and therefore it is likewise unclear whether Meta contends that its commercial terms even

5 apply, only certain unidentified Commercial Terms apply, or that they only apply to certain things

6 (for instance, to a Business Manager account vs. other types of accounts).  It is also unclear how the

7 various terms and conditions referenced in the Complaint relate to one another, whether some terms

8 supersede others, and, if so, how.  Meta never quotes from the Meta Commercial Terms in its

9 Complaint and, as noted above, Meta has not provided a copy of the Meta Commercial Terms that

10 it contends might apply here.  Meta's Complaint therefore does not satisfy Rule 8 because Voyager

11 UK is left guessing as to what the applicable contract terms are, and whether or to what extent Meta

12 contends that those terms apply.  *See e.g.*, *Garibaldi v. Bank of Am. Corp.,* No. C 13-02223 SI,

13 2014 WL 172284, at *3 (N.D. Cal. Jan. 15, 2014) (dismissing breach of contract claim despite

14 multiple "references [to] defendant's 'uniform policies' regarding accrual of paid time off," because

15 this failed to provide "sufficient factual information for the Court to determine what these 'uniform

16 policies' actually are"); *Park,* 2012 WL 589653, at *2 (dismissing breach of contract claim where

17 defendant alleged that "compensation guides and agreements" existed between the parties and had

18 been breached).

19 *Second*, Meta's Complaint refers to a catchall category of contracts consisting of "rules that

20 govern access to and use of" Facebook and Instagram, (Compl. ¶¶ 22, 23), but then says nothing

21 more about those alleged contracts, their terms, when they are supposed to have been executed, and

22 how they are allegedly binding on Voyager UK today.  Meta has thus invoked an amorphous web

23 of various Facebook and Instagram "rules" and is hedging its bets on whether it will later need to

24 shoehorn in other adhesion documents using this undefined, umbrella category.  But this pleading

25 tactic turns ordinary principles of contract law upside down.  If Meta's Complaint is deemed

26 sufficient to satisfy Rule 8, then plaintiffs could invoke the mere specter of electronic adhesion

27 contracts without ever providing those contracts or details about when a user allegedly agreed to

28 them.  Meta's allegations relating to these unspecified "rules" therefore fail to satisfy even the

1   liberal standards under Rule 8 and should be dismissed.  *See AK Futures LLC v. LCF Labs Inc*., No.

2   8:21-cv-02121 (JVS) (ADSx), 2022 WL 2784409, at *4 (C.D. Cal. June 24, 2022) (granting motion

3   to dismiss where complaint merely suggested "that multiple contracts are at issue, mentioning

4   'contracts for the manufacture, distribution, co-pack and sale of Cake products'").

5   _Third_, Meta never alleges whether the current versions of the foregoing seven categories of

6   potential contracts have been breached, or whether the versions that were in effect at the time of

7   alleged account creation were breached.  Meta also does not state whether all contracts allegedly

8   created with Voyager UK are in force in perpetuity, or if they are of some fixed duration of time.

9   For instance, Meta alleges that Voyager UK created Facebook and Instagram accounts in 2016, but

10  does not allege whether the seven categories of agreements outlined above were all entered in 2016,

11  or whether at that time Meta and Voyager UK allegedly entered into different agreements, different

12  versions of the agreements referenced in the Complaint, or something different altogether. Meta

13  does not even contend that those 2016 contracts are still in force today.  Meta's evasive pleading

14  tactic warrants dismissal.  *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, No. 18-CV-07568-EMC,

15  2019 WL 4221599, at *10 (N.D. Cal. Sept. 5, 2019) (granting motion to dismiss breach of contract

16  claim to the extent it was based on superseded agreements).

### 2.     Meta Fails to Plausibly Allege That Voyager UK Manifested Assent to Any Contract Term

19  Even if Voyager UK were able to discern the terms of the contracts it is alleged to have

20  entered, Meta's Complaint also fails to allege what conduct by Voyager UK demonstrates its

21  acceptance of any contract with Meta.  Under California law, a plaintiff alleging breach of contract

22  must plead facts showing the mutual assent of the parties to the contract.  *See*, *e.g.*, *Netbula, LLC v.*

23  *BindView Development Corp. Eyeglasses*, 516 F.Supp.2d 1137, 1155 (N.D. Cal. 2007).  Here, the

24  Complaint fails to allege facts sufficient to create a reasonable inference that Voyager UK assented

25  to the terms of any contract with Meta.

26  Meta's Complaint does not allege that any traditional, bilateral contracts were entered into

27  by Meta and Voyager UK; Meta's breach claim is based entirely on electronic adhesion contracts.

28  As noted above, online adhesion contracts are typically clickwrap, browsewrap, or some sort of

1  hybrid between those two categories.  A clickwrap agreement can be formed when a website user is

2  presented with the applicable contract terms, and then is required to take a step such as checking or

3  clicking a box to register assent to those terms.  *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d

4  1171, 1176 (9th Cir. 2014).  By contrast, a browsewrap agreement can be formed merely through

5  use of a particular website or software package, with the terms and conditions traditionally available

6  through a website post or a hyperlink.  *Id.*

7      Here, the Complaint does not identify what type of online adhesion contract Meta contends

8  has been entered into by Voyager UK.  But assuming for the sake of argument that the contracts

9  that Voyager UK allegedly entered are either clickwrap or browsewrap adhesion contracts—an

10  assumption to which Meta is not entitled—then Meta's Complaint fails to allege conduct by

11  Voyager UK that would meet the applicable pleading standards.

12      *First,* Meta has failed to plead facts from which a reasonable factfinder could conclude that

13  Voyager UK entered a clickwrap contract with Meta.  Courts in this District have held that, at a

14  minimum, allegations of binding clickwrap agreements require pleading by a plaintiff that the

15  software or application could not be used unless the defendant clicked a box agreeing to the terms

16  of service.  *See*, *e.g.*, *BMMSoft, Inc. v. White Oaks Technology, Inc.*, No. C–09–4562 MMC, 2010

17  WL 3340555, at *1 (N.D. Cal. Aug. 25, 2010); *see also TopstepTrader, LLC v. OneUp Trader,*

18  *LLC*, No. 17 C 4412, 2018 WL 1859040 (N.D. Ill. Apr. 18, 2018) (dismissing breach of contract

19  claims where complaint failed to allege how the defendant manifested assent to the terms of

20  clickwrap agreement).  Here, the Complaint alleges that "[e]veryone who creates a Facebook

21  account or otherwise uses Facebook agrees to the Terms of Service and other rules that govern

22  access to and use of Facebook," and that "[e]veryone who create[s] an Instagram account or use[s]

23  Instagram agrees to Instagram's Terms of Use and other rules that govern access to and use of

24  Instagram."[4]  (Compl. ¶ 22.)  But these conclusory allegations say nothing about the alleged steps

25  that Voyager UK took—and Meta's Complaint includes no screenshots of Facebook or Instagram,

26  no description of any boxes that were clicked, no allegation that Facebook or Instagram cannot (or

27

28  ───────────────

[4]      The Complaint presents this allegation in the present tense, but does not allege that these
requirements also applied in 2015 when Voyager UK allegedly entered into contracts with Meta.

1   could not) be used unless a user clicked a box agreeing to certain terms, etc.  That is insufficient to

2   plausibly allege the existence of a clickwrap agreement.

3        _Second_, Meta fails to plead facts from which a reasonable factfinder could conclude that

4   Voyager UK entered into a browsewrap contract with Meta.  "Because no affirmative action is

5   required by the website user to agree to the terms of a contract other than his or her use of the

6   website, the determination of the validity of the browsewrap contract depends on whether the user

7   has actual or constructive knowledge of a website's terms and conditions."  _Nguyen_, 763 F.3d at

8   1176.  Meta's Complaint does not allege that Voyager UK had actual or constructive knowledge of

9   any of the "terms and conditions" to which it allegedly agreed; on the contrary, Meta's allegations

10  invoke only generic "users" who "agree" to terms, without providing any facts supporting those

11  allegations or any allegations specific to Voyager UK.  _Be In, Inc._, 2013 WL 5568706, at *9

12  (dismissing breach of contract claims based on browsewrap agreements for failure to plead

13  "grounds for the Court to find a manifestation of Defendants' mutual assent to the Terms of

14  Service").  As the Ninth Circuit has recognized, to determine whether the requisite notice was

15  provided, courts must assess the design and content of the website in question, the prominence of

16  terms and conditions, etc.—bearing in mind that "the onus must be on website owners to put users

17  on notice of the terms" that will apply to them.  _Id._ at 1179; _Berman_, 30 F.4th at 856 ("Unless the

18  website operator can show that a consumer has actual knowledge of the agreement, an enforceable

19  contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably

20  conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes

21  some action, such as clicking a button or checking a box, that unambiguously manifests his or her

22  assent to those terms.").

23        Meta never explains how Voyager UK was placed on notice of the contract terms to which it

24  allegedly agreed.  There is no allegation that Voyager UK was presented with any textual notice

25  that continued use of a website would bind it to any particular set of terms—let alone seven

26  categories of potentially applicable terms.  _See Long v. Provide Com., Inc._, 245 Cal. App. 4th 855,

27  867, 200 Cal. Rptr. 3d 117, 126 (2016) ("[T]o establish the enforceability of a browsewrap

28  agreement, a textual notice should be required to advise consumers that continued use of a Web site

1    will constitute the consumer's agreement to be bound by the Web site's terms of use."); *Be In, Inc.*,

2    2013 WL 5568706, at *9 ("Because browsewrap agreements, where enforceable, are a powerful

3    means of binding users with very little affirmative assent, a complaint must state facts establishing

4    the means by which the link in question would give notice to a reasonably prudent internet user.").[5]

5        As such, to the extent that the Complaint is based on a browsewrap agreement between

6    Meta and Voyager UK, Meta has failed to sufficiently plead the existence of such an agreement.

7
8
       **B.**     <u>**Meta Fails to Sufficiently Allege How Voyager UK is Bound by the Actions of
the Non-Party Entities**</u>

9        Meta's Complaint conflates the alleged actions of Voyager UK—the only named

10    defendant—with those allegedly taken by the Non-Party Entities.  In particular, Meta alleges that

11    Voyager UK exerts "complete control" over the Non-Party Entities and that Voyager UK should

12    "therefore be held responsible for the activities of its subsidiaries as if [it] was the actor."  (Compl.

13    ¶¶ 6, 67.)

14        Meta's Complaint therefore appears to be relying on an "alter ego" theory.  Under California

15    law,[6] this rarely applied theory allows a parent corporation to be held liable for the actions of its

16    otherwise independent subsidiaries, but only if a plaintiff has met specific and exacting pleading

17    standards.  "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a

18    plaintiff must allege specific facts supporting . . . the necessary elements." *Gerritsen v. Warner*

19    *Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015); *see also Arikat v. JP Morgan*

20    *Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006) (dismissing claims because "Plaintiffs'

21    introductory allegation that all defendants are each agents and employees of the other is conclusory

22
23

---

24   [5]     *See also Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV99–7654, 2003 WL 21406289, at
*2 (C.D. Cal. Mar. 7, 2003); *Cvent Inc. v. Eventbrite*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010)

25   ("[I]n order to state a plausible claim for relief based upon a browsewrap agreement, the website
user must have had actual or constructive knowledge of the site's terms and conditions, and have

26   manifested assent to them.") (citing *Sw. Airlines Co. v. BoardFirst, LLC*, No. 3:06–CV–0891–B,
2007 WL 4823761 at *5 (N.D. Tex. Sept. 12, 2007)).

27
28
  [6]     California law governs the question of whether Meta has sufficiently pleaded alter ego
liability.  *Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1037 (9th Cir. 2010) ("In
determining whether alter ego liability applies, [courts] apply the law of the forum state.").

1   and . . . unavailing").  Meta has failed to meet the foregoing standards, and thus any claim for relief

2   based on actions by any entity other than Voyager UK should be dismissed.

### 1.   "Alter Ego" Liability Is a Rare Exception That Requires Additional Pleaded Facts

5   "Alter ego is an extreme remedy, sparingly used."  *Sonora Diamond Corp. v. Superior*

6   *Court*, 83 Cal. App. 4th 523, 539 (2000) (citing cases).  As a general rule, the formal corporate

7   separation between a parent corporation and its subsidiaries "insulates a parent corporation from

8   liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary."  *Ranza*

9   *v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  Under California law, the rare "alter-ego"

10  exception applies only: "when the corporate form is used for *a wrongful or inequitable purpose*, [in

11  which case] a court may disregard the corporate form and impute the acts of a subsidiary to the

12  parent. . . [in order to] prevent[] a parent corporation from escaping liability by *abusing corporate*

13  *privilege* through a subsidiary that is, in effect, *a sham corporation*, to commit wrongful acts."

14  *Masimo Corp. v. Sotera Wireless*, No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 232276, at

15  *26-27 (S.D. Cal. Dec. 9, 2020) (citing cases) (emphasis added).

16  A plaintiff may invoke the alter ego doctrine only "where some conduct amounting to *bad*

17  *faith* makes it inequitable for the corporate owner to hide behind the corporate form."  *Sonora*

18  *Diamond*, 83 Cal. App. 4th at 539 (emphasis added).  Given this focus on deliberate, inequitable

19  conduct intended to defraud or mislead counterparties, a plaintiff seeking to advance an alter ego

20  theory must plausibly allege facts showing that that "(1) there is such a unity of interest that the

21  separate personalities of the corporations no longer exist; and (2) inequitable results will follow if

22  the corporate separateness is respected."  *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th

23  1269, 1285 (1994); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017)

24  (restating elements).  Meta has failed to plausibly allege either of those elements.

### (a)   Meta Fails to Plead Any "Unity of Interests"

26  To properly plead a unity of interests sufficient to allege the alter ego doctrine, it is not

27  enough to plead the mere "fact of control" of one entity over another.  *Katzir's Floor & Home*

28  *Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004).  Nor is it enough to plead the

1   "[t]otal ownership and shared management" between two entities.  *Ranza*, 793 F.3d at 1073 (citing

2   *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).

3   Instead, a plaintiff must plausibly allege "pervasive control over [a] subsidiary, such as when a

4   parent corporation dictates *every facet of the subsidiary's business—from broad policy decisions to*

5   *routine matters of day-to-day operation.*"  *Id.* (emphasis added) (quotation marks and citations

6   omitted).  California courts consider several factors to determine whether the relationship between a

7   parent and subsidiary reflects pervasive control, including:  "the commingling of funds and other

8   assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical

9   equitable ownership of the entities, use of the same offices and employees, use of one as a mere

10  shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate

11  formalities, lack of segregation of corporate records, and identical directors and officers."  *Sandoval*

12  *v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citing cases).

13       Here, Meta fails to allege any facts that would support the foregoing factors.  And where a

14  plaintiff fails to discuss a factor relevant to the alter ego analysis, that alone "weighs against a

15  finding of alter ego liability."  *Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp. 3d 938, 955

16  (N.D. Cal. 2015).  Instead of addressing any of the above factors, the Complaint includes a single

17  paragraph with three allegations that are inadequate to show a unity of interests between Voyager

18  UK and the Non-Party Entities.

19       *First*, Meta alleges that "[Voyager UK] exercises complete control over its subsidiaries

20  including governing the subsidiaries' financial and operating policies."  (Compl. ¶ 6.)  This

21  conclusory statement on its face only applies to the Non-Party Entities' "financial and operating

22  policies."  In other words, even this allegation is directed to only limited aspects of the subsidiaries'

23  "policies."  In any event, the Ninth Circuit has rejected alter ego liability where a plaintiff based

24  such claims on "formulation [by a parent corporation] of general business policies and strategies

25  applicable to its subsidiaries, including specialization in particular areas of commerce." *Doe v.*

26  *Unocal Corp.*, 248 F.3d 915, 927-28 (9th Cir. 2001); *see also Barantsevich v. VTB Bank*, 954 F.

27  Supp. 2d 972, 988 (C.D. Cal. 2013) ("[E]vidence of general policy-setting is insufficient to show

28  the requisite unity of interest between the two companies").

*Second*, the Complaint alleges that Voyager UK "files annual reports that consolidate [Voyager UK]'s and its subsidiaries' financial statements." (Compl. ¶ 6.) But courts have refused to find that the filing of consolidated financial statements constitutes a sufficient basis for alleging unity of interests. *See Tomaselli*, 25 Cal. App. 4th at 1285 (finding that allegations, which included claims that corporate entities "had consolidated financial statements" were "woefully short of the showing on which alter ego normally rests"); *Uniloc 2017 LLC v. H&R Block, Inc.*, No. SACV 19-1149 JVS (KESx), 2019 U.S. Dist. LEXIS 229166, at *10 (C.D. Cal. Dec. 23, 2019) (noting that "courts in this District have concluded that consolidated financial statements are insufficient to satisfy the alter ego test") (citing cases); *see also Unocal Corp.*, 248 F.3d at 928 (recognizing that "references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship").

*Finally*, the Complaint alleges that "at least [Voyager UK] and Voyager Analytics, Inc. both operate under the name 'Voyager Labs.'" (Compl. ¶ 6.) As an initial matter, this allegation cannot establish Voyager UK 's unity of interests with Bionic 8 Analytics, Inc. or Novarize Inc. But even with respect to Voyager Analytics, Inc., courts have rejected the argument that unity of interests is established by alleging that two distinct corporations sometimes operate under the same name.[7] *See, e.g.*, *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865, at *18 (N.D. Cal. Mar. 5, 2012) (determining that "the alleged failure of [] marketing materials to distinguish among the corporate defendants" was insufficient to plead the unity of interests necessary to support alter ego liability); *Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings, Inc.*, No. 18-cv-05031-EMC, 2019 WL 331161, at *8 (N.D. Cal. Jan. 25, 2019) (finding that references to separate entities using a single name was insufficient to plead the necessary unity of interests for an alter ego relationship).

Meta's Complaint thus fails to allege any facts from which a reasonable factfinder could plausibly conclude that Voyager UK has the requisite "unity of interests" necessary to establish that the Non-Party Entities are merely its alter ego, and instead includes scant allegations that courts

---

[7] Taken to its logical conclusion, Meta's position would be tantamount to an admission that Meta Platforms Ireland Limited ("Meta Ireland") is its alter ego because both Meta and Meta Ireland operate using the common business monikers "Facebook" and "Instagram."

1   have found insufficient.  On this basis alone, Meta's alter ego theory fails, and all claims for relief
2   based on the conduct of any of the Non-Party Entities should be dismissed.

3              *(b)       Meta Fails to Plead Any "Inequitable Results" If Alter Ego Liability is
4                         Rejected*

5          Meta also fails to plead facts sufficient to create a reasonable inference that unless the Non-
6   Party Entities are deemed to be the alter ego of Voyager UK, "inequitable results" would occur, as
7   required under the second prong of the alter ego test.  The types of allegations necessary to meet
8   this second prong typically amount to "bad faith," such as fraud or deliberate undercapitalization of
9   a subsidiary.  *Gerritsen*, 116 F. Supp. 3d at 1138, 1143 (citation omitted).  "Without such evidence,
10  the alter ego doctrine cannot be invoked."  *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539.

11         Meta does not plead that any "inequitable result" would follow if the corporate separateness
12  of the four entities mentioned in the Complaint is maintained.  Nor does Meta plead any facts that
13  would support a reasonable inference that Voyager UK took any actions in bad faith, exerted
14  manipulative control over the Non-Party Entities, engaged in any fraudulent conduct, or that any of
15  the Non-Party Entities were deliberately undercapitalized.  Meta's failure to address this second
16  prong of the alter ego test thus provides a separate and independent basis for rejecting all claims for
17  relief based on the actions of any of the Non-Party Entities.  *See, e.g.*, *Women's Recovery Ctr., LLC*,
18  2022 WL 739522, at *4.

19     **2.    Meta's Complaint Fails to Plausibly Allege That the Non-Party Entities
20            Are Agents of Voyager UK**

21         Meta may argue in response to this motion that, either in addition to or in lieu of an alter ego
22  theory, the Non-Party Entities are alleged to be agents of Voyager UK, and that this agency
23  relationship provides the basis for its breach claim.  But even if the Complaint were read in such a
24  manner, the single breach claim should still be dismissed because Meta has failed to plead any facts
25  from which a reasonable factfinder could plausibly conclude that the Non-Party Entities operate as
26  agents of Voyager UK.  *See, e.g.*, *Hospitality Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
27  No. 15-cv-01791 JVS (DFMx), 2016 WL 9045621, at *4-5 (C.D. Cal. Jan. 28, 2016) (dismissing

28

1   breach of contract claims to the extent they were based on agency liability where the complaint

2   merely alleged that two entities were the agents of another).

3          Indeed, the hallmark of an agency relationship is that "the alleged agents had actual or

4   apparent authority to act on behalf of another."  *Gunderson v. ADM Investor Servs., Inc.*, 85 F.

5   Supp. 2d 892, 905 (N.D. Iowa 2000); *see also Allied Prods. Corp. v. Electric & Gas Tech., Inc.*,

6   No. 97 C 5256, 1998 WL 173305, at *2 (N.D. Ill. Apr. 8, 1998) (same).  But the Complaint alleges

7   no such thing; it never contends that any of the Non-Party Entities had actual or apparent authority

8   to act on behalf of Voyager UK.  Instead, the Complaint relies solely on bald allegations that these

9   supposed agents were acting on behalf of Voyager UK.  (Compl. ¶¶ 36, 47, 48, 68.)  That is

10  insufficient to plausibly allege the existence of an agency relationship.  *See, e.g.*, *Women's Recovery*

11  *Ctr., LLC*, 2022 WL 739522, at *3 (bare invocation of agency theory is insufficient to survive

12  motion to dismiss); *see also Prochaska & Assocs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*,

13  798 F. Supp. 1427, 1432 (D. Neb. 1992) (finding that a "bald" allegation of agency "is by itself a

14  mere legal conclusion and is therefore insufficient to withstand a motion to dismiss").  Likewise,

15  Meta fails to allege that Voyager UK has "manifest[ed] assent to [an agent] that the agent shall act

16  on [its] behalf and subject to [its] control."  *See* Restatement (Third) of Agency § 1.01 (2006).  The

17  Complaint is thus devoid of any facts that could plausibly establish that the Non-Party Entities are

18  agents of Voyager UK.

19          **3.**     **Because Meta Fails To Plausibly Allege Alter Ego or Agency Liability**
            **Based on the Conduct of the Non-Party Entities, Its Breach of Contract**
20          **Claim Should Be Dismissed**

21          Meta's single claim for breach of contract "realleges and incorporates all preceding

22  paragraphs," including the paragraph in which Voyager UK was alleged to be liable for all acts

23  performed by the Non-Party Entities, and then alleges that "Defendant, through its employees and

24  agents, created and used multiple Facebook and Instagram accounts and thereby agreed to

25  Facebook's and Instagram's Terms."  (Compl. ¶¶ 67, 68.)  In other words, Meta's breach of contract

26  claim advances a theory of contract formation that is based on certain employees and agents.  But if

27  such employees and agents are those of just the *Non-Party Entities*, then this claim does not raise

28  any reasonable inference that *Voyager UK* is liable for such conduct.

1    None of the factual allegations in the Complaint provide the requisite level of detail that

2    would enable a Court to attribute responsibility for the conduct of the Non-Party Entities to

3    Voyager UK under either alter ego or agency theories, and Plaintiff's vague allegations do not

4    provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550

5    U.S. at 555 (2007).  The claims based on these theories should therefore be dismissed under Rule

6    12(b)(6) because they fail to "plead[] factual content that allows the court to draw the reasonable

7    inference that the *defendant* is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

8                                        <u>**CONCLUSION**</u>

9        For the above reasons, Meta has failed to state a claim upon which relief can be granted, and

10   the Complaint should be dismissed pursuant to Rule 12(b)(6).

11

12   Dated:  April 13, 2023                SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13                                         By:   */s/Abraham A. Tabaie*
14                                               ABRAHAM A. TABAIE
                                                 Attorneys for Defendant Voyager Labs Ltd.

15

16

17

18

19

20

21

22

23

24

25

26

27

28