1    ABRAHAM A. TABAIE (SBN 260727)
     abraham.tabaie@skadden.com
2    EMILY REITMEIER (SBN 305512)
     emily.reitmeier@skadden.com
3    SKADDEN, ARPS, SLATE, MEAGHER &
       FLOM LLP
4    525 University Avenue
     Palo Alto, California  94301-1908
5    Telephone:     (650) 470-4500
     Facsimile:      (650) 470-4570
6

7    EDWARD L. TULIN (*pro hac vice*)
     edward@gishpllc.com
8    ANDREW D. GISH (*pro hac vice*)
     andrew@gishpllc.com
9    RAYMOND J. BILDERBECK (*pro hac vice*)
     ray@gishpllc.com
10   GISH PLLC
     41 Madison Avenue, Floor 31
11   New York, NY 10010
     Telephone:     (212) 518-2000
12

13   Attorneys for Defendant Voyager Labs, Ltd.

14

15                  **UNITED STATES DISTRICT COURT**

16           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17                      **SAN FRANCISCO DIVISION**

18

| 19  META PLATFORMS, INC., | Case No. 3:23-cv-00154-AMO |
|---|---|
| 20             Plaintiff, | |
| 21      vs. | **DEFENDANT VOYAGER LABS LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 22 | |
| 23  VOYAGER LABS LTD., | |
| 24             Defendant. | Hearing Date: July 27, 2023 |
| | Judge: Honorable Araceli Martinez-Olguin |
| 25 | Original Complaint Filed: January 12, 2023 |
| 26 | |

27

28

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 27, 2023, at 2:00 p.m., or as soon thereafter as this motion may be heard, before the Honorable Araceli Martinez-Olguin of the United States District Court for the Northern District of California, in Courtroom 10, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Voyager Labs Ltd. ("Voyager UK" or "Defendant") will and hereby does move the Court to dismiss the First Amended Complaint ("FAC") of Plaintiff Meta Platforms, Inc. ("Meta" or "Plaintiff").  Defendant's motion is made pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion to Dismiss; the Supporting Memorandum of Points and Authorities; the Declaration of Courtney Bromley ("the Bromley Declaration"); any pleadings, records, papers, and filings in this matter; the oral argument of counsel; and any other matters properly before the Court.

## <u>STATEMENT OF RELIEF SOUGHT</u>

Defendant seeks an order (i) dismissing with prejudice Plaintiff's First Cause of Action pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) for failure to state a claim upon which relief can be granted; and (ii) dismissing with prejudice Plaintiff's Second and Third Causes of Action pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over Defendant for those claims.

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.      Whether Plaintiff fails to state a claim for breach of contract because Plaintiff does not allege (i) any facts establishing mutual assent to enter into an online adhesion contract or (ii) the terms of any such online adhesion contract.

2.      Whether Plaintiff fails to plead sufficient facts supporting its "alter ego" or agency theories, and therefore whether Plaintiff has failed to state a claim based on any alleged actions of individuals or entities other than Defendant.

1     3.      Whether this Court can properly exercise personal jurisdiction over Voyager UK—a

2   foreign corporation that is not bound by any forum selection clause in any contract with Meta and

3   that lacks minimum contacts with this forum—as to the Second and Third Causes of Action.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2  MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

3     I.      INTRODUCTION ...................................................................................................1

4     II.     FACTUAL BACKGROUND.................................................................................4

5           A.    The Parties ...............................................................................................4

6           B.    The Non-Party Entities ...........................................................................4

7           C.    Allegations Relating to Supposed Contracts with Voyager UK.................5

8           D.    Voyager UK's Motion to Dismiss and Meta's FAC.................................5

9     III.    LEGAL STANDARDS .........................................................................................6

10           A.    Legal Standards Governing Rule 12(b)(6) Motions to Dismiss .................6

11           B.    Legal Standards Governing Personal Jurisdiction .......................................6

12     IV.    ARGUMENT .........................................................................................................7

13           A.    Meta's Breach of Contract Claim Should Be Dismissed for Failing to
14                 Plausibly Allege an Agreement Exists Between Meta and Voyager
                  UK.................................................................................................................7

15                1.    Meta Has Not Sufficiently Alleged the Existence of a Contract
16                      That Voyager UK Allegedly Breached.............................................7

17                2.    Meta Fails to Plausibly Allege That Voyager UK Manifested
                       Assent ..........................................................................................10

18           B.    Meta Fails to Sufficiently Allege How Voyager UK is Bound by the
19                 Actions of the Non-Party Entities ...........................................................13

20                 1.    "Alter Ego" Is a Rare Exception That Requires Additional
                       Facts .............................................................................................14

21                     (a)    Meta Has Twice Failed to Plead "Unity of Interests"........14

22                     (b)    Meta Fails to Plead "Inequitable Results" If Alter Ego
23                          is Rejected................................................................16

24                2.    The FAC Fails to Plausibly Allege an Agency Theory .................17

25                3.    Because Meta Fails To Plausibly Allege Alter Ego or Agency
                       Liability, Its Breach of Contract Claim Should Be Dismissed......18

26            C.    Meta's Breach Claim Should Be Dismissed with Prejudice .....................18

27            D.    The Court Lacks Personal Jurisdiction Over CFAA & CDAFA
28                 Claims .....................................................................................................19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.   No Forum Selection Clause Confers Personal Jurisdiction for the CFAA & CDAFA Claims ........................................................20

2.   Voyager UK Lacks Sufficient Minimum Contacts to Confer Specific Personal Jurisdiction Over the CFAA and CDAFA Claims ............................................................................................23

CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012) ........................................................ 22

*Action Embroidery Corp. v. Atl. Embroidery Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ..................................................................................... 3

*Adobe Sys. Inc. v. Nwubah*,
    No. 18-cv-6063, 2019 WL 6611096 (N.D. Cal. Dec. 5, 2019) ................................... 24

*AK Futures LLC v. LCF Labs Inc.*,
    No. 8:21-cv-02121-JVS (ADSx), 2022 WL 16859970 (C.D. Cal. Oct. 5, 2022) ...................... 8, 9

*Allied Prods. Corp. v. Electric & Gas Tech., Inc.*,
    No. 97 C 5256, 1998 WL 173305 (N.D. Ill. Apr. 8, 1998) .................................... 17, 18

*AlterG, Inc. v. Boost Treadmills LLC*,
    No. 18-CV-07568-EMC, 2019 WL 4221599 (N.D. Cal. Sept. 5, 2019) ...................... 10

*Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013 (N.D. Cal. 2006) .................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 6, 18, 21

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ..................................................................................... 7

*Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972 (C.D. Cal. 2013) ............................ 15, 16

*Be In, Inc. v. Google Inc.*,
    No. 12-cv-3373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ..............................*passim*

*Bell Atlantic Corp. v. Twombly*,  550 U.S. 544 (2007) ................................................ 6, 18

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) ......................................... 10

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ...................... 1, 11, 12

*BMMSoft, Inc. v. White Oaks Technology, Inc.*,
    No. C–09–4562 MMC, 2010 WL 3340555 (N.D. Cal. Aug. 25, 2010) ...................... 11

*Born v. Celtic Mktg. LLC*,
    No. 8:19-cv-01950 (JLS) (ADS), 2020 WL 3883273 (C.D. Cal. May 20, 2020) .................... 25

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) ...................... 21

*Competent Software Pvt. Ltd. v. Corelogic Sol'ns, LLC*,
    No. 19-cv-2161-DOC-KES, 2020 WL 133688 (C.D. Cal. Jan. 13, 2020) ...................... 20

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................ 6

*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016) ........................ 25

*Cvent Inc. v. Eventbrite*, 739 F. Supp. 2d 927 (E.D. Va. 2010) .................................... 13

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...................................................................6, 7

*Daniels Agrosciences, LLC v. Ball DPF, LLC*,
   No. 13-cv-268, 2013 WL 5310208 (D.R.I. Sept. 20, 2013) ........................................22

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ....................................................15, 16

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) .....................................................7

*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002) .........................................................21

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
   No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865 (N.D. Cal. Mar. 5, 2012).......................16

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) ...........................23

*First Comm'l Mortgage Co. v. Reece*,
   89 Cal.App.4th 7318108 Cal.Rptr.2d 23 (2001) ........................................................8

*FTC-Forward Threat Control, LLC v. Dominion Harbor Enterprises, LLC*,
   Case No. 5:19-cv-06590, 2020 WL 5545156 (N.D. Cal. Sept. 16, 2020) .....................22

*Garibaldi v. Bank of Am. Corp.*,
   No. C 13-02223 SI, 2014 WL 172284 (N.D. Cal. Jan. 15, 2014)...............................1, 9

*Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015).................14, 17

*Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032 (9th Cir. 2010) .......................13

*Gunderson v. ADM Investor Servs., Inc.*, 85 F. Supp. 2d 892 (N.D. Iowa 2000)..............17

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ..............15

*Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings, Inc.*,
   No. 18-cv-05031-EMC, 2019 WL 331161 (N.D. Cal. Jan. 25, 2019).........................16

*Hospitality Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
   No. 15-cv-01791 JVS (DFMx), 2016 WL 9045621 (C.D. Cal. Jan. 28, 2016)............17

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) .....................................................7

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143 (9th Cir. 2004)....................15

*Kevcon, Inc. v. L.B. Contracting, LLC*,
   No. 12-cv-2014 BEN (BLM), 2013 WL 78962 (S.D. Cal. Jan. 3, 2013) ....................21

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................19

*Mardis v. Jackson Hewitt Tax Service Inc.*,
   No. 16-cv-2115, 2019 WL 7207551 (D.N.J. Dec. 26, 2019)......................................21

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) ...............................................7

*Masimo Corp. v. Sotera Wireless*,
   No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 232276 (S.D. Cal. Dec. 9, 2020) ..............14

*McNally v. Kingdom Trust Co.*,
  No. 20-cv-830-DOC-MRW, 2020 WL 7786539 (C.D. Cal. Nov. 13, 2020) .........................20, 21

*Mewawalla v. Middleman*, 601 F. Supp. 3d 574 (N.D. Cal. 2022) .................................................21

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .............................................................................6

*Papasan v. Allain*, 478 U.S. 265 (1986) .........................................................................................6

*Park v. Morgan Stanley & Co. Inc.*,
  No. 2:11-cv-9466-ODW (MRWx), 2012 WL 589653 (C.D. Cal. Feb. 22, 2012).....................8, 9

*Pestmaster Franchise Network, Inc. v. Mata*,
  No. 16-cv-07268-EMC, 2017 WL 1956927 (N.D. Cal. May 11, 2017)................................21, 22

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) ......................................................................3, 6, 7

*Preferred Rx Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535 (6th Cir. 1995)..............................20

*Prochaska & Assocs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  798 F. Supp. 1427 (D. Neb. 1992) ........................................................................................... 18

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ...............................................................14, 15

*Republic of Kazakhstan v. Ketebaev*,
  No. 17-CV-00246-LHK, 2017 WL 6539897 (N.D. Cal. Dec. 21, 2017) ....................................24

*Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014)........................................................... 15

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ........................................................... 11

*Smith v. Cap. One Fin. Corp.*, No. C 11-3425 PJH,
  2012 WL 259515 (N.D. Cal. Jan. 27, 2012) ..............................................................................8

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)................................*passim*

*Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp.3d 938 (N.D. Cal. 2015). ...........................15

*Sw. Airlines Co. v. BoardFirst, LLC*,
  No. 3:06–CV–0891–B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ....................................13

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,
  282 F.R.D. 216 (D. Ariz. 2012) ...............................................................................................19

*ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316 (9th Cir. 2020) .............................24

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
  No. CV99–7654, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ...............................................13

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (1994).....................................15, 16

*TopstepTrader, LLC v. OneUp Trader, LLC*,
  No. 17 C 4412, 2018 WL 1859040 (N.D. Ill. Apr. 18, 2018)......................................................11

*Uniloc 2017 LLC v. H&R Block, Inc.*,
  No. SACV 19-1149 JVS (KESx), 2019 U.S. Dist. LEXIS 229166 (C.D. Cal. Dec. 23, 2019) .... 16

*Vaccarino v. Midland Nat. Life Ins., Co.*,
No. 11-cv-05858 (CAS) (MANx), 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011) ........................8

*Vangura Kitchen Tops, Inc. v. C&C N. Am., Inc.*,
No. 08-cv-1011, 2008 WL 4540186 (W.D. Pa. Oct. 7, 2008) ......................................................22

*Walden v. Fiore*, 571 U.S. 277 (2014) .......................................................................... 3, 23, 24

*Wescott v. Reisner*, No. 17-cv-06271, 2018 WL 2463614 (N.D. Cal. June 1, 2018) ........................23

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) .....................................................2, 15

*Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*,
No. 8:20-cv-00102-JWH-ADSx, 2022 WL 739522 (C.D. Cal. Feb. 2, 2022) ..........................2, 14

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ............................................19

**Statutes**
Cal. Code Civ. P. § 410.10.....................................................................................................7

**Other Authorities**
Restatement (Third) of Agency § 1.01 (2006) ...................................................................18

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3          This case is about online adhesion contracts—and this Motion concerns whether Meta can

4    use them to distort the well-established legal principles governing contractual relations and

5    jurisdictional analysis.  Meta's FAC is based primarily on two unprecedented theories:  (i) that mere

6    invocation of terms that allegedly govern "everyone" who has ever used Facebook and Instagram is

7    sufficient to state a plausible breach of contract claim; and (ii) that a forum selection clause that

8    allegedly appears in those terms constitutes a preemptive and permanent waiver of personal

9    jurisdiction for all time and for all claims brought by Meta—even for a foreign entity that never

10   assented to those terms.  Voyager UK already identified the deficiencies in Meta's first theory in an

11   earlier motion to dismiss (Dkt. No. 36, hereafter "First MTD").   Rather than address those

12   deficiencies, Meta instead filed the FAC—which repeats its untenable breach of contract claim nearly

13   verbatim and asserts two new claims based on an equally untenable interpretation of still-unidentified

14   terms in a still-unidentified online adhesion contract.  Having now twice failed to assert a plausible

15   breach of contract claim and having failed to plead any facts establishing personal jurisdiction for the

16   remaining claims, Meta's FAC should be dismissed in its entirety with prejudice.

17         As discussed in the First MTD, Meta's original complaint failed to assert a plausible breach

18   claim for three reasons.  *First*, Meta referred generally to a hodgepodge of terms, guidelines, rules,

19   standards, and policies.  But Meta attached none of those materials to its original complaint, and

20   instead quoted from undated versions of what Meta called "Facebook's Terms" and "Instagram's

21   Terms."  That tactic failed to put Voyager UK on notice of the allegedly breached contract or to

22   plausibly plead the existence of any such contract.  *See, e.g., Garibaldi v. Bank of Am. Corp.*, No. C

23   13-02223 SI, 2014 WL 172284, at *3 (N.D. Cal. Jan. 15, 2014) (dismissing breach of contract claim

24   that was based on repeated references to "uniform policies").  (*See* First MTD at 1, 8-10.)  <u>*Second*</u>,

25   Meta failed to allege how Voyager UK—the only named defendant—manifested assent to any of the

26   foregoing online adhesion contracts, other than its alleged creation and use of Facebook and

27   Instagram accounts.  But mere use of a website, without more, does not manifest assent to the terms

28   of such a contract.  *See, e.g., Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir.

2022); *Be In, Inc. v. Google Inc.*, No. 12-cv-3373, 2013 WL 5568706, at *8 (N.D. Cal. Oct. 9, 2013).[1] (*See* First MTD at 1-2, 10-13.)  *Third*, Meta improperly conflated Voyager UK with its subsidiaries, arguing that Voyager UK should "be held responsible for the activities of its subsidiaries as if [Voyager UK] itself was the actor" because they file consolidated financial statements and sometimes use the common name "Voyager Labs" in marketing materials. (FAC ¶ 7.)  If Meta was alleging that Voyager UK is the alter ego of the Non-Party Entities,[2] then that theory fails because Meta did not plead (1) such unity of interest among multiple corporations that their separate personalities no longer exist; and (2) inequitable results if traditional corporate separateness is observed.  *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017).  And if Meta was alleging that the Non-Party Entities are Voyager UK's agents, that theory also fails because Meta did not plead facts showing that Voyager UK exercises control over them.  *See, e.g.*, *Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, No. 8:20-cv-00102-JWH-ADSx, 2022 WL 739522, at *3 (C.D. Cal. Feb. 2, 2022) (granting motion to dismiss because the plaintiff failed to "allege facts demonstrating the principal's control over its agent").  (First MTD at 2-3, 13-19.)

Meta's FAC does not remedy any of the above deficiencies.  The FAC is just as devoid of any facts to support Meta's theories of breach of contract, alter ego, and agency as the original complaint.  Meta's first claim should therefore be dismissed with prejudice.

Meta also asserts two new claims:  one under the Computer Fraud and Abuse Act ("the CFAA Claim"), and another under Section 502 of the California Penal Code ("the CDAFA Claim").  This Court lacks personal jurisdiction over Voyager UK for those claims.[3]

---

[1] Meta does not allege whether the alleged contracts are browsewrap (i.e., contracts allegedly formed by use of a website and notice of applicable terms), clickwrap (i.e., contracts that are allegedly formed by an affirmative "click" accepting terms), or something else.

[2] Those non-party subsidiaries are Voyager Analytics Inc. (a Delaware corporation), Bionic 8 Analytics Inc. (an Israeli corporation), and Novarize Inc. (a Delaware corporation) (collectively, "the Non-Party Entities").

[3] Although personal jurisdiction is a threshold issue that would typically be addressed first in a motion to dismiss, Voyager UK addresses it here after its Rule 12(b)(6) arguments on the first claim because: (i) Voyager UK's personal jurisdiction arguments relate only to the second and third claims; and (ii) while Voyager UK's 12(b)(6) arguments were already addressed in the First MTD, this motion is the first opportunity that Voyager UK has had to address the second and third claims, which were not asserted in Meta's original complaint.

Meta's primary theory of personal jurisdiction is that a forum selection clause in one or more of its website terms of service "requires [Voyager UK] to submit to the personal jurisdiction of" this Court for the CFAA and CDAFA Claims.  That theory should be rejected because:  (i) Meta has not quoted or otherwise provided the actual forum selection clause, and Meta's legal conclusion as to what the clause "requires" is insufficient; (ii) as set forth in the Bromley Declaration, Voyager UK never agreed to any forum selection clause in any contract with Meta; and (iii) even if Voyager UK had agreed to a forum selection clause in Meta's terms of use (which it did not), that clause would not confer personal jurisdiction over the CFAA or CDAFA Claims because those claims are not and cannot be based on Meta's terms of use.

Meta also alleges that this Court can exercise specific personal jurisdiction over Voyager UK based on its minimum contacts with California.  That theory should likewise be rejected because: (i) even if taken as true, allegations that Meta and certain of its California-based users were "targeted" by Voyager UK are insufficient to establish personal jurisdiction in light of the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014); and (ii) as set forth in the Bromley Declaration, Voyager UK has not engaged in any conduct alleged to have occurred in California.  Finally, to the extent that Meta asserts that the conduct of the Non-Party Entities should be attributed to Voyager UK to establish personal jurisdiction because those companies are closely related, are alter egos of one another, or have an agency relationship, that jurisdictional theory fails for the same reason discussed above for Meta's inadequately pleaded breach claim (and as also discussed in the First MTD).[4]  (*See* First MTD at 2-3, 13-19.)

In its original complaint, Meta skipped the required threshold showing for its breach of contract claim:  a manifestation of mutual assent to the terms of online contract(s) of adhesion.  Instead, Meta flooded the docket with 1,500+ pages of exhibits, and then cited only 25 of those pages—roughly 2%.  No contract is among all that paper; nor are any screenshots of Facebook or

---

[4] Although Voyager UK does not contest personal jurisdiction for Meta's contract claim, that does not resolve the question of whether personal jurisdiction exists for other claims. *See, e.g.*, *Action Embroidery Corp. v. Atl. Embroidery Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant."); *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (noting that where, as here, "a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant'").

1   Instagram that might allow the Court to assess whether Voyage UK manifested assent to terms

2   allegedly governing use of those websites, nor any materials that could lead to the reasonable

3   inference that Voyager UK's subsidiaries are merely its agents or alter ego.   Faced with those

4   deficiencies, Meta doubled down—it recycled its original allegations, again failed to attach any

5   alleged contracts or evidence of mutual assent, again cited only 2% of the materials that it attached,

6   and again ignored the caselaw requiring factual support for an alter ego or agency theory.   This

7   repeated failure to assert a plausible breach claim reveals that Meta is either unable or unwilling to

8   do so.   And Meta's two new claims fare no better—because neither an unidentified forum selection

9   clause nor the conduct alleged in the FAC can support the exercise of personal jurisdiction.   The FAC

10   should therefore be dismissed in its entirety.

11   ## II.   FACTUAL BACKGROUND

12   ### A.   The Parties

13   Meta is a Delaware corporation that "operates . . . Facebook and Instagram."   (FAC ¶ 4.)

14   Voyager UK is a limited liability company organized under the laws of England and Wales.   (*Id.* ¶

15   5.)   Voyager UK has no offices, employees, officers, directors, or other presence in California.

16   (Bromley Decl. ¶¶ 11-18.)   Voyager UK is not registered to do business in California, has no

17   registered agent for service of process in California, provides no services for any California-based

18   customers, and does not market, sell, or offer to sell any products in California.   (*Id.* ¶¶ 11, 21.)

19   ### B.   The Non-Party Entities

20   Meta alleges that Voyager UK "exercises complete control over" the three Non-Party Entities

21   and therefore that "[Voyager UK] can [] be held responsible for [their] activities as if [Voyager UK]

22   itself was the actor."   (FAC ¶ 7.)   In support of that claim, Meta alleges that:

23   (1)   Voyager UK "files annual reports that consolidate [Voyager UK]'s and its subsidiaries'

24         financial statements"; and

25   (2)   "[Voyager UK] and Voyager Analytics, Inc. both operate under the name 'Voyager Labs.'"

26   (*Id.*)   Meta alleges no further facts to support its claim of "complete control"; indeed, the foregoing

27   allegations are identical to those in its original complaint, notwithstanding the caselaw that Voyager

28   UK cited in the First MTD that establishes that those allegations are inadequate.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES            CASE NO. 3:23-cv-00154-AMO

### C.    Allegations Relating to Supposed Contracts with Voyager UK

The FAC alleges that "[e]veryone who creates a Facebook account or otherwise uses Facebook agrees to the Terms of Service and other rules that govern access to and use of Facebook," and that "[e]veryone who 'create[s] an Instagram account or use[s] Instagram' agrees to Instagram's Terms of Use and other rules that govern access to and use of Instagram." (FAC ¶ 25.) But the FAC is devoid of any detail as to how a user assents to those Terms—i.e., whether they are "clickwrap" agreements, "browsewrap" agreements, or something else.  And as for Voyager UK, Meta alleges that "through its employees and agents, [Voyager UK] created and used multiple Facebook and Instagram accounts and thereby agreed to Facebook's and Instagram's Terms."  (FAC ¶ 81; *see also id.* ¶ 33(a)-(g).)  Meta never alleges that it presented those "Terms" to Voyager UK during creation or use of those accounts, or that Voyager UK manifested assent through any affirmative action.

Nevertheless, Meta alleges that from at least May 1, 2015 through January 12, 2023, Voyager UK "was bound by Facebook's Terms and Instagram's Terms." (FAC ¶¶ 32, 33.) "Facebook's Terms" appear to encompass (1) the "Terms of Service"; (2) "Facebook's Community Standards"; (3) "as applicable, the Meta Commercial Terms" and (4) additional, unspecified "rules that govern access to and use of Facebook."  (*Id.* ¶ 25.)   Similarly, "Instagram's Terms" appear to encompass (1) "Instagram's Terms of Use"; (2) "Instagram's Community Guidelines"; and (3) additional, unspecified "rules that govern access to and use of Instagram."  (*Id.* ¶ 26.)  The FAC does not attach any of the foregoing materials as exhibits, and does not specify whether Meta contends that those were clickwrap, browsewrap, or something else.  And while the FAC quotes numbered sections of certain "Terms," it does so without identifying the document or agreement being quoted, and instead generically refers to the source of those quotations as "Facebook's Terms" and/or "Instagram's Terms."  (*Id.* ¶¶ 27-31.)

### D.    Voyager UK's Motion to Dismiss and Meta's FAC

On April 13, 2023, Voyager UK filed the First MTD, asserting that Meta's Complaint failed to plausibly assert a claim for breach of contract. (Dkt. No. 36.)  Rather than file an opposition brief, Meta instead filed the FAC on May 5, 2023. (Dkt. No. 42.)  As compared to the original Complaint, the FAC differs in limited ways, by alleging: (i) additional conduct that occurred after the filing of

the Complaint (FAC ¶¶ 2, 59, 67-76); (ii) the CFAA and CDAFA claims for the first time (*id.* ¶¶ 3, 90-103); (iii) subject-matter jurisdiction of those new claims (*id.* ¶¶ 10-12); and (iv) that "[a] Facebook [and Instagram] user account cannot be created without the user agreeing to Facebook's [or Instagram's] Terms," and that "by continuing to access and use a Facebook [or Instagram] account, the user is agreeing to Facebook's [or Instagram's] Terms" (*id.* ¶¶ 25-26).  The FAC also replaces the 2020 Annual Report that was Exhibit 1 to the original Complaint with the 2021 Annual Report, and adds Exhibit 6 (a letter that Meta's counsel sent to Voyager UK's counsel in February 2023).

### III.   LEGAL STANDARDS

#### A.   Legal Standards Governing Rule 12(b)(6) Motions to Dismiss

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Rather, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "naked assertion[s] devoid of further factual enhancement'" are not sufficient to meet this standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556-57) (quotation marks omitted).  To determine whether a complaint satisfies the requirements of Rules 8(a)(2) and 12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  However, this standard "do[es] not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Iqbal*, 556 U.S. at 686.

#### B.   Legal Standards Governing Personal Jurisdiction

The plaintiff bears the burden of demonstrating personal jurisdiction over the defendant.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117,

1   125 (2014). California's long arm statute permits exercise of personal jurisdiction to the fullest extent

2   permissible under the U.S. Constitution; therefore, the court's inquiry "centers on whether exercising

3   jurisdiction comports with due process." *Picot*, 780 F.3d at 1211; *see also* Cal. Code Civ. P. § 410.10.

4   Due process "limits the power of a state's courts to exercise jurisdiction over defendants who do not

5   consent to jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).  In order

6   to comport with the constitutional requirements of due process, a defendant must "have certain

7   minimum contacts with [the forum state] such that the maintenance of the suit does not offend

8   traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

9   316 (1945) (internal quotation marks omitted).  Under this "minimum contacts" analysis, a court can

10  exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction."

11  *Daimler*, 571 U.S. at 121–22 (citations omitted).

12          Specific jurisdiction may be exercised when a defendant's contacts with a forum give rise to

13  the asserted claims.  *See Goodyear*, 564 U.S. at 924-25.  It exists when a defendant: (1) purposefully

14  directs activities at the forum or its residents or purposely avails itself of the privilege of conducting

15  activities in the forum; (2) the claim arises out of or relates to those activities; and (3) the exercise of

16  jurisdiction is reasonable.  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir.

17  2017).  A defendant "purposefully directs" its activities at the forum state when it "(1) commit[s] an

18  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

19  likely to be suffered in the forum state." *Picot*, 780 F.3d at 1214 (citing *Dole Food Co. v. Watts*, 303

20  F.3d 1104, 1111 (9th Cir. 2002)).

21  **IV.   ARGUMENT**

22          **A.   Meta's Breach of Contract Claim Should Be Dismissed for Failing to Plausibly
              Allege That an Agreement Exists Between Meta and Voyager UK**

23

24                  **1.   Meta Has Not Sufficiently Alleged the Existence of a Contract That
                        Voyager UK Allegedly Breached**

25

26          Before the Court can analyze Voyager UK's alleged acceptance of the terms of a contract,

27  Meta needs to identify a contract between the two that was allegedly breached.  Meta has twice failed

28  to do so in a way that would place Voyager UK on notice of the relevant contract terms.

Under California law, to state a claim for breach of contract, "a plaintiff must allege <u>facts</u> showing (1) the existence of a contract, (2) that the plaintiff performed his duties under the contract or was excused from doing so, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of that breach." *Smith v. Cap. One Fin. Corp.*, No. C 11-3425 PJH, 2012 WL 259515, at \*4 (N.D. Cal. Jan. 27, 2012) (citing *First Comm'l Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001)) (emphasis added).

This motion focuses on the first prong of the foregoing test.  To properly plead the existence of a contract sufficient to meet that first prong, a plaintiff must "make clear" what contracts are at issue by identifying them specifically—courts dismiss claims where "dizzying references to multiple 'agreements,' 'promises,' and 'contracts' [make] it 'impossible' to discern which contract, terms, parties, and breaches [are] the basis of the breach-of-contract claim." *AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121-JVS (ADSx), 2022 WL 16859970, at \*4 (C.D. Cal. Oct. 5, 2022); *see also Park v. Morgan Stanley & Co.*, No. 2:11-cv-9466-ODW (MRWx), 2012 WL 589653, at \*2 (C.D. Cal. Feb. 22, 2012) (finding that a plaintiff had failed to sufficiently allege the existence of a contract where the pleadings "fail[ed] to allege the nature of the contract sufficiently enough to give Defendant[s] notice of the contract to which Plaintiff refers . . . leav[ing] Defendants to guess as to which 'agreement' was actually breached"); *Vaccarino v. Midland Nat. Life Ins., Co.*, No. 11-cv-05858 (CAS) (MANx), 2011 WL 5593883, at \*7 (C.D. Cal. Nov. 14, 2011) (dismissing breach of contract claim where the plaintiff failed to "identify her contract's essential terms," or "which terms of the contract were breached").

Here, for the second time, despite attaching more than 1,500 pages of largely irrelevant "exhibits" to the FAC, Meta does not include any of the supposed contract(s) that Meta alleges are the basis for its breach claim.  Instead, Meta alludes to seven different <u>categories</u> of potential contracts: (1) Facebook's Terms of Service; (2) Facebook's Community Standards; (3) Meta's Commercial Terms (but only "as applicable"); (4) other "rules that govern access to and use of Facebook"; (5) Instagram's Terms of Use; (6) Instagram's Community Guidelines; and (7) other "rules that govern access to and use of Instagram."  (FAC ¶¶ 25, 26.)  The FAC defines categories (1)-(4)

as "Facebook's Terms," and categories (5)-(7) as "Instagram's Terms." (*Id.*) These references are insufficient to state a plausible breach of contract claim, for several reasons.

*First*, it is unclear what Meta means by "as applicable, the Meta Commercial Terms" (FAC ¶ 25), and therefore it is likewise unclear whether Meta contends (i) that its Commercial Terms apply, (ii) that only certain unidentified Commercial Terms apply, or (iii) that they only apply to certain activities. It is also unclear how the various terms and conditions referenced in the FAC relate to one another, whether some terms supersede others, and, if so, how. Meta never quotes any of its Commercial Terms in the FAC and, as noted above, Meta has not provided a copy of them. Meta's FAC therefore does not satisfy Rule 8 because Voyager UK is left guessing as to what the applicable contract terms are, and whether or to what extent Meta contends that those terms apply. *See e.g.*, *Garibaldi v. Bank of Am. Corp.*, No. C 13-02223 SI, 2014 WL 172284, at *3 (N.D. Cal. Jan. 15, 2014) (dismissing breach of contract claim despite multiple "references [to] defendant's 'uniform policies' regarding accrual of paid time off," because this failed to provide "sufficient factual information for the Court to determine what these 'uniform policies' actually are"); *Park,* 2012 WL 589653, at *2 (dismissing breach of contract claim where defendant alleged that "compensation guides and agreements" existed between the parties and had been breached).

*Second*, Meta's FAC refers to a catchall category of contracts consisting of "rules that govern access to and use of" Facebook and Instagram, (FAC ¶¶ 25, 26), but then says nothing more about those alleged contracts, their terms, when they are supposed to have been executed, or why they allegedly bind Voyager UK today. Meta has thus invoked an amorphous web of various Facebook and Instagram "rules" and is hedging its bets on whether it will later need to shoehorn in other adhesion documents using this undefined, umbrella category. But this pleading tactic turns ordinary principles of contract law upside down. If Meta's FAC is deemed sufficient to satisfy Rule 8, then plaintiffs could invoke the mere specter of electronic adhesion contracts without ever providing those contracts or details about how a user allegedly agreed to them. Meta's allegations relating to these unspecified "rules" therefore fail to satisfy even the liberal standards under Rule 8 and should be dismissed. *See AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121 (JVS) (ADSx), 2022 WL 2784409, at *4 (C.D. Cal. June 24, 2022) (granting motion to dismiss where complaint merely

1  suggested "that multiple contracts are at issue, mentioning 'contracts for the manufacture, distribution,
2  co-pack and sale of [certain] products'").

3      *Third*, Meta never alleges whether the current versions of the foregoing seven categories of
4  potential contracts are the basis for its breach claim, or whether the versions that were in effect at the
5  time of alleged account creation are instead the basis.  Meta also does not state whether all contracts
6  allegedly created with Voyager UK are in force in perpetuity, or are of fixed duration.  For instance,
7  Meta alleges that Voyager UK created Facebook and Instagram accounts in 2016, but does not allege
8  that all seven categories of agreements outlined above were entered in 2016, or that they are still in
9  force today.  Meta's evasive pleading tactic warrants dismissal.  *See, e.g.*, *AlterG, Inc. v. Boost*
10 *Treadmills LLC*, No. 18-CV-07568-EMC, 2019 WL 4221599, at *10 (N.D. Cal. Sept. 5, 2019)
11 (granting motion to dismiss breach of contract claim based on superseded agreements).

12          **2.    Meta Fails to Plausibly Allege That Voyager UK Manifested Assent**

13      Even if Voyager UK were on notice of the terms of the contracts it allegedly entered (which
14 it is not), Meta has for the second time alleged no facts from which it can be inferred that Voyager
15 UK accepted those terms.  That is fatal to Meta's breach of contract claim, because "the formation of
16 a contract requires a manifestation of mutual assent."  *Be In, Inc.*, 2013 WL 5568706, at *6 (quotation
17 marks omitted).  "Indeed, such a manifestation is the touchstone of contract."  *Id.*; *see also Berkson*
18 *v. Gogo LLC,* 97 F. Supp. 3d 359, 383 (E.D.N.Y. 2015) ("Sometimes forgotten in the Internet Age—
19 where contracts of adhesion are often the rule for online consumers—is the essential element of
20 contract formation: mutual manifestation of assent."); *Be In, Inc.*, 2013 WL 5568706, at *9 (finding
21 that "pleadings are insufficient to establish contract formation" unless they "establish grounds for the
22 Court to find a manifestation of [the defendant's] mutual assent to" the terms of the contract).

23      Meta's breach claim is based entirely on electronic adhesion contracts.  Such adhesion
24 contracts are analyzed differently from traditional paper contracts:

25          In the world of paper contracting, the outward manifestation of assent
           to the same thing by both parties is often readily established by the
26          offeree's receipt of the physical contract. . . .  By contrast, when
           transactions occur over the internet, there is no face-to-face contact and
27          the consumer is not typically provided a physical copy of the
           contractual terms. In that context, and in the absence of actual notice,
28          a manifestation of assent may be inferred from the consumer's actions
           on the website—including, for example, checking boxes and clicking

1
2
> buttons—but any such action must indicate the parties' assent to the same thing, which occurs only when the website puts the consumer on constructive notice of the contractual terms.

3 *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021).  Whether a complaint sufficiently

4 alleges mutual assent of online adhesion contract(s) depends on the kind of adhesion contract at issue.

5 For so-called "clickwrap" agreements, pleading that a user affirmatively clicked a box indicating

6 acceptance of the relevant terms may be sufficient.  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th

7 849, 856 (9th Cir. 2022).  On the other hand, for so-called "browsewrap" agreements—where

8 plaintiffs sometimes suggest that consumers' mere use of a website binds them to terms that they did

9 not affirmatively accept—merely alleging that someone has used a website is generally not enough

10 to satisfy the requirements under Rule 8.  *Be In, Inc.*, 2013 WL 5568706, at *9 (dismissing claims for

11 breach of browsewrap contract and noting that "Defendants' mere use of the website can only serve

12 as a manifestation of assent where Defendants had, or should have had, reason to know that mere use

13 would be so interpreted").

14         The FAC does not identify what type of online adhesion contract(s) Voyager UK allegedly

15 entered.  But assuming that those are either clickwrap or browsewrap adhesion contracts—an

16 assumption to which Meta is not entitled—then Meta's FAC fails to allege conduct by Voyager UK

17 that would meet the applicable pleading standards.

18         *First*, Meta fails to plead facts from which a reasonable factfinder could conclude that

19 Voyager UK entered a clickwrap contract with Meta.  At a minimum, a plaintiff must plead that the

20 software or application could not be *used* unless the defendant clicked a box or otherwise

21 affirmatively agreed to the terms of service.  *See, e.g.*, *BMMSoft, Inc. v. White Oaks Technology, Inc.*,

22 No. C–09–4562 MMC, 2010 WL 3340555, at *1 (N.D. Cal. Aug. 25, 2010); *see also TopstepTrader,*

23 *LLC v. OneUp Trader, LLC*, No. 17 C 4412, 2018 WL 1859040 (N.D. Ill. Apr. 18, 2018) (dismissing

24 breach of contract claims where complaint failed to allege how the defendant manifested assent to

25 the terms of clickwrap agreement).  Here, the FAC alleges that "[e]veryone who creates a Facebook

26 [or Instagram] account or otherwise uses Facebook [or Instagram] agrees to the Terms of Service and

27 other rules that govern access to and use of Facebook [and Instagram]," that the foregoing user

28

1   accounts "cannot be created without the user agreeing to Facebook or Instagram's terms."[5]  (FAC ¶¶

2   25, 26.)   But those conclusory allegations say nothing about what Voyager UK actually did to

3   manifest assent to any terms—like Meta's original Complaint, the FAC includes no screenshots of

4   Facebook or Instagram, no description of any boxes that were clicked, no allegation that Facebook

5   or Instagram cannot be _used_ unless a user affirmatively agreed to certain terms, etc.

6       _Second_, Meta again fails to plead facts from which a reasonable factfinder could conclude that

7   Voyager UK entered a browsewrap contract with Meta.  "Because no affirmative action is required

8   by the website user to agree to the terms of a contract other than his or her use of the website, the

9   determination of the validity of the browsewrap contract depends on whether the user has actual or

10  constructive knowledge of a website's terms and conditions."  _Nguyen_, 763 F.3d at 1176.  Just as with

11  the original Complaint, Meta's FAC does not allege that Voyager UK had actual or constructive

12  knowledge of any of the "terms and conditions" to which it allegedly agreed; on the contrary, Meta's

13  allegations invoke only generic "users" who "agree" to terms through continued use of the websites.

14  That is insufficient.  _See Be In, Inc._, 2013 WL 5568706, at *9  (dismissing breach of contract claims

15  based on browsewrap agreements for failure to plead "grounds for the Court to find a manifestation

16  of Defendants' mutual assent to the Terms of Service").  As the Ninth Circuit has recognized, to

17  determine whether the requisite notice was provided, courts must assess the design and content of the

18  website in question, the prominence of terms and conditions, etc.—bearing in mind that "the onus

19  must be on website owners to put users on notice of the terms" that will apply to them.  _Id._ at 1179;

20  _Berman_, 30 F.4th at 856 ("Unless the website operator can show that a consumer has actual

21  knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory

22  only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer

23  will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box,

24  that unambiguously manifests . . . assent to those terms.").

25      Meta never explains how Voyager UK was placed on notice of the contract terms to which it

26  allegedly agreed.  Meta does not allege that Voyager UK was presented with any textual notice that

27  continued use of a website would bind it to any particular set of terms—let alone seven categories of

28
---
[5]     The FAC alleges this in the present tense, but does not allege that these requirements also applied in 2016 when Voyager UK allegedly created Facebook/Instagram accounts.

potentially applicable terms. *See Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 867, 200 Cal. Rptr. 3d 117, 126 (2016) ("[T]o establish the enforceability of a browsewrap agreement, a textual notice should be required to advise consumers that continued use of a Web site will constitute the consumer's agreement to be bound by the Web site's terms of use."); *Be In, Inc.*, 2013 WL 5568706, at *9 ("Because browsewrap agreements, where enforceable, are a powerful means of binding users with very little affirmative assent, a complaint must state facts establishing the means by which the link in question would give notice to a reasonably prudent internet user.").[6]

Meta's failure to supplement its deficient pleading with factual allegations sufficient to support an inference of Voyager UK's acceptance of contract terms under either a "clickwrap" or a "browsewrap" standard therefore warrants dismissal of the FAC.

### B.  Meta Fails to Sufficiently Allege How Voyager UK is Bound by the Actions of the Non-Party Entities

The FAC conflates the alleged actions of Voyager UK—the only named defendant—with those allegedly taken by the Non-Party Entities.  Meta alleges that because Voyager UK exerts "complete control" over the Non-Party Entities, Voyager UK should "therefore be held responsible for the activities of its subsidiaries as if [it] was the actor." (FAC ¶¶ 7.)  Like the original Complaint, the FAC appears to be relying on an "alter ego" theory for its breach claim.

Under California law,[7] this rarely applied theory may permit a parent corporation to be held liable for the actions of its otherwise independent subsidiaries, but not unless a plaintiff has first met specific and exacting pleading standards.  "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting . . . the necessary elements." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015); *see also Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006) (dismissing claims because

---

[6] *See also Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV99–7654, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003); *Cvent Inc. v. Eventbrite*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010) ("[I]n order to state a plausible claim for relief based upon a browsewrap agreement, the website user must have had actual or constructive knowledge of the site's terms and conditions, and have manifested assent to them.") (citing *Sw. Airlines Co. v. BoardFirst, LLC*, No. 3:06–CV–0891–B, 2007 WL 4823761 at *5 (N.D. Tex. Sept. 12, 2007)).

[7] California law governs whether Meta has sufficiently pleaded alter ego liability. *See Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1037 (9th Cir. 2010).

1   "Plaintiffs' introductory allegation that all defendants are each agents and employees of the other is

2   conclusory and . . . unavailing").  Meta fails to meet the foregoing standards, and thus any claim based

3   on the Non-Party Entities' actions should be dismissed.

4           1.      **"Alter Ego" Is a Rare Exception That Requires Additional Facts**

5           "Alter ego is an extreme remedy, sparingly used."  *Sonora Diamond Corp. v. Superior Court*,

6   83 Cal. App. 4th 523, 539 (2000) (citing cases).  As a general rule, the formal corporate separation

7   between a parent corporation and its subsidiaries "insulates a parent corporation from liability created

8   by its subsidiary, notwithstanding the parent's ownership of the subsidiary."  *Ranza v. Nike, Inc.*, 793

9   F.3d 1059, 1070 (9th Cir. 2015).  Under California law, the rare "alter-ego" exception applies only

10  "when the corporate form is used for *a wrongful or inequitable purpose*, [in which case] a court may

11  disregard the corporate form and impute the acts of a subsidiary to the parent. . . [in order to] prevent[]

12  a parent corporation from escaping liability by *abusing corporate privilege* through a subsidiary that

13  is, in effect, *a sham corporation*, to commit wrongful acts."  *Masimo Corp. v. Sotera Wireless*, No.

14  19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 232276, at *26-27 (S.D. Cal. Dec. 9, 2020) (citing

15  cases) (emphasis added).

16          A plaintiff may invoke the alter ego doctrine only "where some conduct amounting to *bad*

17  *faith* makes it inequitable for the corporate owner to hide behind the corporate form."  *Sonora*

18  *Diamond*, 83 Cal. App. 4th at 539 (emphasis added).  Given this focus on deliberate, inequitable

19  conduct intended to defraud or mislead counterparties, a plaintiff seeking to advance an alter ego

20  theory must plausibly allege facts showing that "(1) there is such a unity of interest that the separate

21  personalities of the corporations no longer exist; and (2) inequitable results will follow if the corporate

22  separateness is respected."  *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994);

23  *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (restating elements).

24  Meta has twice failed to plausibly allege either of those elements.

25                  *(a)     Meta Has Twice Failed to Plead "Unity of Interests"*

26          To properly plead unity of interests, it is not enough to plead the mere "fact of control" of one

27  entity over another, as Meta does in the FAC (and as Meta did in the original complaint).  *Katzir's*

28  *Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004).  Nor is it enough

1  to plead "[t]otal ownership and shared management" between two entities.  *Ranza*, 793 F.3d at 1073

2  (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).

3  Instead, a plaintiff must plausibly allege "pervasive control over [a] subsidiary, such as when a parent

4  corporation dictates *every facet of the subsidiary's business—from broad policy decisions to routine*

5  *matters of day-to-day operation.*"  *Id.* (emphasis added) (quotation marks and citations omitted).

6  California courts consider several factors to determine whether a parent-subsidiary relationship

7  reflects pervasive control, including:  "the commingling of funds and other assets of the entities, the

8  holding out by one entity that it is liable for the debts of the other, identical equitable ownership of

9  the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs

10  of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of

11  corporate records, and identical directors and officers."  *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040

12  (N.D. Cal. 2014) (citing cases).

13      Here, Meta fails to allege any facts relating to the foregoing factors, which alone "weighs

14  against a finding of alter ego liability."  *Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp. 3d

15  938, 955 (N.D. Cal. 2015).  Instead of addressing the above factors, the FAC repeats a single

16  paragraph from the original Complaint with three inadequate allegations.

17      *First*, Meta alleges that Voyager UK "exercises complete control over its subsidiaries—

18  including governing the subsidiaries' financial and operating policies."  (FAC ¶ 7.)  Meta's conclusory

19  statement applies only to the Non-Party Entities' "financial and operating policies"—not to every

20  facet of their operations.  In any event, the Ninth Circuit has rejected alter ego liability where a

21  plaintiff bases such claims on "formulation [by a parent corporation] of general business policies and

22  strategies applicable to its subsidiaries, including specialization in particular areas of commerce."

23  *Doe v. Unocal Corp.*, 248 F.3d 915, 927-28 (9th Cir. 2001); *see also Barantsevich v. VTB Bank*, 954

24  F. Supp. 2d 972, 988 (C.D. Cal. 2013) ("[E]vidence of general policy-setting is insufficient to show

25  the requisite unity of interest between the two companies").

26      *Second*, the Complaint alleges that Voyager UK "files annual reports that consolidate

27  [Voyager UK]'s and its subsidiaries' financial statements."  (FAC ¶ 6.)  But that is insufficient to

28  support an inference that unity of interests exists.  *See Tomaselli*, 25 Cal. App. 4th at 1285 (finding

1    that allegations, which included claims that corporate entities "had consolidated financial statements"

2    were "woefully short of the showing on which alter ego normally rests"); *Uniloc 2017 LLC v. H&R*

3    *Block, Inc.*, No. SACV 19-1149 JVS (KESx), 2019 U.S. Dist. LEXIS 229166, at *10 (C.D. Cal. Dec.

4    23, 2019) (noting that "consolidated financial statements are insufficient to satisfy the alter ego test")

5    (citing cases); *see also Unocal Corp.*, 248 F.3d at 928 (recognizing that "references in the parent's

6    annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not

7    establish the existence of an alter ego relationship").

8          <u>*Finally*</u>, the Complaint alleges that "at least [Voyager UK] and Voyager Analytics, Inc. both

9    operate under the name 'Voyager Labs.'"  (FAC ¶ 7.)  As an initial matter, this allegation cannot

10   establish Voyager UK's unity of interests with Bionic 8 Analytics, Inc. or Novarize Inc.  But even

11   with respect to Voyager Analytics, Inc., unity of interests cannot be plausibly pleaded merely by

12   alleging that two distinct corporations sometimes operate under the same name.  *See, e.g.*, *Eclectic*

13   *Props. East, LLC v. Marcus & Millichap Co.*, No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865,

14   at *18 (N.D. Cal. Mar. 5, 2012) (determining that "the alleged failure of [] marketing materials to

15   distinguish among the corporate defendants" was insufficient to plead the unity of interests necessary

16   to support alter ego liability); *Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings, Inc.*, No.

17   18-cv-05031-EMC, 2019 WL 331161, at *8 (N.D. Cal. Jan. 25, 2019) (finding that references to

18   separate entities using a single name was insufficient to plead the necessary unity of interests for an

19   alter ego relationship).  Taken to its logical conclusion, Meta's position would be tantamount to an

20   admission that Meta Platforms Ireland Limited ("Meta Ireland") is its alter ego because both Meta

21   and Meta Ireland operate using the common business monikers "Facebook" and "Instagram."

22          The FAC thus fails to allege any facts to support a reasonable inference that Voyager UK has

23   the requisite "unity of interests" necessary to establish that the Non-Party Entities are merely its alter

24   ego, and instead includes scant allegations that courts have found insufficient.  On this basis alone,

25   Meta's alter ego theory fails.

26         *(b)*    <u>*Meta Fails to Plead "Inequitable Results" If Alter Ego is Rejected*</u>

27          Meta also fails to plead facts sufficient to create a reasonable inference that unless the Non-

28   Party Entities are deemed to be the alter ego of Voyager UK, "inequitable results" would occur, as

1  required under the second prong of the alter ego test.  The types of allegations necessary to meet this

2  second prong typically amount to "bad faith," such as fraud or deliberate undercapitalization of a

3  subsidiary.  *Gerritsen*, 116 F. Supp. 3d at 1138, 1143 (citation omitted).  "Without such evidence, the

4  alter ego doctrine cannot be invoked."  *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539.

5  Meta does not plead that any "inequitable result" would follow if the corporate separateness

6  of the four entities mentioned in the FAC is maintained.  Nor does Meta plead any facts that would

7  support a reasonable inference that Voyager UK took any actions in bad faith, exerted manipulative

8  control over the Non-Party Entities, engaged in any fraudulent conduct, or that any of the Non-Party

9  Entities were deliberately undercapitalized.  This failure thus provides a separate and independent

10 basis for rejecting all claims for relief based on the actions of any of the Non-Party Entities.  *See, e.g.*,

11 *Women's Recovery Ctr., LLC*, 2022 WL 739522, at *4.

12 ## 2.  The FAC Fails to Plausibly Allege an Agency Theory

13 Meta may argue that, either in addition to or in lieu of an alter ego theory, the Non-Party

14 Entities are agents of Voyager UK, and that this agency relationship provides the basis for its breach

15 claim, despite the absence of any such explicit allegation in the FAC.  But even if the FAC were read

16 in this way, Meta's breach claim should still be dismissed because the FAC pleads no facts from

17 which a reasonable factfinder could plausibly conclude that the Non-Party Entities are agents of

18 Voyager UK.  *See, e.g.*, *Hospitality Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, No. 15-cv-

19 01791 JVS (DFMx), 2016 WL 9045621, at *4-5 (C.D. Cal. Jan. 28, 2016) (rejecting agency liability

20 where the complaint merely alleged that two entities were the agents of another).

21 Indeed, the hallmark of an agency relationship is that "the alleged agents had actual or

22 apparent authority to act on behalf of another."  *Gunderson v. ADM Investor Servs., Inc.*, 85 F. Supp.

23 2d 892, 905 (N.D. Iowa 2000); *see also Allied Prods. Corp. v. Electric & Gas Tech.*, *Inc.*, No. 97 C

24 5256, 1998 WL 173305, at *2 (N.D. Ill. Apr. 8, 1998) (same).  But the FAC alleges no such thing; it

25 never contends that any of the Non-Party Entities had actual or apparent authority to act on behalf of

26 Voyager UK.  Instead, the FAC relies solely on the unsupported and conclusory allegation that

27 Voyager UK can "be held responsible for the activities of its subsidiaries."  (FAC ¶ 7.)  That is

28 insufficient.  *See, e.g.*, *Women's Recovery Ctr., LLC*, 2022 WL 739522, at *3 (bare invocation of

agency theory is insufficient); *see also Prochaska & Assocs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 798 F. Supp. 1427, 1432 (D. Neb. 1992) (finding that a "bald" allegation of agency "is by itself a mere legal conclusion and is therefore insufficient").  Likewise, Meta fails to allege that Voyager UK has "manifest[ed] assent to [an agent] that the agent shall act on [its] behalf and subject to [its] control."  *See* Restatement (Third) of Agency § 1.01 (2006).

### 3.    Because Meta Fails To Plausibly Allege Alter Ego or Agency Liability, Its Breach of Contract Claim Should Be Dismissed

Meta's claim for breach of contract "realleges and incorporates all preceding paragraphs," including the paragraph in which Voyager UK was alleged to be liable for all acts performed by the Non-Party Entities, and then alleges that "Defendant, through its employees and agents, created and used multiple Facebook and Instagram accounts and thereby agreed to Facebook's and Instagram's Terms."  (FAC ¶¶ 80, 81.)  In other words, Meta's breach of contract claim advances a theory of contract formation that is based on certain employees and agents.  But if such employees and agents are those of just the *Non-Party Entities*, then this claim does not raise any reasonable inference that *Voyager UK* is liable for such conduct.

The FAC does not provide the requisite level of detail that would enable a Court to attribute responsibility for the conduct of the Non-Party Entities to Voyager UK under either alter ego or agency theories, and Meta's vague allegations do not provide "fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  The claims based on these theories should therefore be dismissed under Rule 12(b)(6) because they fail to "plead[] factual content that allows the court to draw the reasonable inference that the *defendant* is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added).

### C.    Meta's Breach Claim Should Be Dismissed with Prejudice

Meta has now had two chances to state a plausible breach of contract claim, and it missed the mark both times.  The First MTD raised each of the points above, and yet Meta chose not to address any of them in the FAC.  As but one example, even as Meta took the time and effort to add new exhibits to the FAC (including Exhibits 1 and 6), Meta apparently could not locate the actual contracts that Voyager UK is alleged to have entered and attach those as exhibits.  Nor could Meta marshal any

1  facts to support its alter ego or agency theories, instead choosing merely to repeat bare, conclusory

2  statements.  Meta is a sophisticated entity, represented by sophisticated counsel, and it obviously

3  knows how to assert a plausible contract claim when the facts support such a claim.  But Meta clearly

4  cannot do so here.  And because Meta was indisputably on notice of the deficiencies in its original

5  breach claim (and in its alter ego/agency theories), and could not remedy them in the FAC, those

6  claims should be dismissed with prejudice.  *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010

7  (N.D. Cal. 2012) (dismissing claims with prejudice and noting that "Defendant's first motion to

8  dismiss placed Plaintiffs on notice regarding the deficiencies of these claims in the complaint, and

9  Plaintiffs failed to cure the defects in the Amended Complaint"); *Teamsters Local 617 Pension &*

10  *Welfare Funds v. Apollo Group, Inc.*, 282 F.R.D. 216, 236 (D. Ariz. 2012) (noting that "a plaintiff's

11  failure to correct the deficiencies in its FAC is a strong indication that the plaintiffs have no additional

12  facts to plead").  The Court should therefore exercise its "particularly broad discretion" to dismiss

13  with prejudice where a sophisticated plaintiff could have remedied its pleading deficiencies but failed

14  to do so.  *Id.* (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)).

15      **D.    The Court Lacks Personal Jurisdiction Over CFAA & CDAFA Claims**

16          Meta offers two bases for specific personal jurisdiction[8] over Voyager UK for the CFAA and

17  CDAFA Claims:  (i) a forum selection clause in an unspecified contract that has not been submitted

18  to the Court; and (ii) the allegation that Voyager UK individually targeted California-based Meta and

19  certain California-based Meta users, and marketed, offered, and distributed software to one or more

20  customers in California.[9]  Those should be rejected.

21  ────────────────────────

22  [8] Meta does not assert general jurisdiction—nor could it.  General jurisdiction lies only where a
    "corporation is fairly regarded as at home," which is typically only its state of incorporation or

23  principal place of business.  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011).
    Voyager UK is a foreign company organized under the laws of England and Wales, (FAC ¶ 5), and

24  its principal place of business is not alleged to be in California.

25  [9]  Meta argues in the Updated Joint Case Management Statement that "Defendant has appeared in
    this action, filed an initial motion to dismiss, and filed a case management statement in which it stated

26  that it has 'agreed not to contest the exercise of personal jurisdiction over it by this Court.'"  (Dkt. No.
    49 at 1.)  That argument should be rejected for at least three reasons.  *First*, Meta has not pleaded any

27  of the foregoing as a basis for personal jurisdiction.  *Second*, Meta misleadingly omits the full context
    of Defendant's prior statement, which was that it "agreed not to contest personal jurisdiction over it

28  by this Court ___solely for purposes of this action___."  (Dkt. No. 35 at 1 (emphasis added).)  At the time
    that Defendant made that statement, "this action" consisted only of a claim for breach of contract, and

*(cont'd)*

1       **1.**     **No Forum Selection Clause Confers Personal Jurisdiction for the CFAA & CDAFA Claims**

2

3       The FAC's principal basis for personal jurisdiction over Voyager UK is a forum selection

4 clause in Facebook and Instagram's terms of use/service.  That theory fails for three reasons:  (i) by

5 failing to quote or attach the alleged forum selection clause, Meta has presented only a legal

6 conclusion; (ii) Voyager UK has never agreed to any Meta terms of service or use, and therefore

7 cannot be bound by any such clause; and (iii) even if Voyager UK had agreed to Meta's unidentified

8 terms of service or use, that is irrelevant to whether personal jurisdiction exists for the CFAA and

9 CDAFA claims, because they are non-contractual.

10       *First*, Meta's failure to quote or attach the alleged forum selection clause is alone fatal to its

11 argument that such a clause confers personal jurisdiction.  As California courts have repeatedly

12 observed, "[i]t . . . falls to the Court to interpret [disputed] forum selections clauses" under federal

13 law by looking to the actual "forum selection provisions of the contact in question." *Competent*

14 *Software Pvt. Ltd. v. Corelogic Sol'ns, LLC*, No. 19-cv-2161-DOC-KES, 2020 WL 133688, at *2

15 (C.D. Cal. Jan. 13, 2020); *see also McNally v. Kingdom Trust Co.*, No. 20-cv-830-DOC-MRW, 2020

16 WL 7786539, at *1-2 (C.D. Cal. Nov. 13, 2020) (when considering a forum selection clause, the court

17 must "first address whether [it] is mandatory or permissive and whether the action falls within [its]

18 scope" by considering "the contract's plain language").  Without the relevant forum selection clause,

19 the Court cannot assess its coverage or applicability.  *See Kevcon, Inc. v. L.B. Contracting, LLC*, No.

20 12-cv-2014 BEN (BLM), 2013 WL 78962 (S.D. Cal. Jan. 3, 2013) (granting motion to dismiss for

21 lack of personal jurisdiction based on analysis of actual language of forum selection clause); *Mardis*

22 *v. Jackson Hewitt Tax Service Inc.*, No. 16-cv-2115, 2019 WL 7207551, at *4-6 (D.N.J. Dec. 26,

23 2019) (performing a detailed analysis of whether, under the specific language of the forum selection

24     Meta had given no indication that it intended to assert any additional claims.  *Third*, Defendant has

25 not filed an answer, and it has timely challenged jurisdiction for the second and third causes of action at its first opportunity.  Meta points to no caselaw that would allow it to pull a jurisdictional bait-and-

26 switch by asserting a single cause of action, and then use the fact that Defendant has timely filed a motion to dismiss that action and complied with Court requirements to provide case management

27 statements as a waiver of jurisdictional challenges to wholly new claims.  *Cf. Preferred Rx Inc. v.*

28 *Am. Prescription Plan, Inc.*, 46 F.3d 535, 551 (6th Cir. 1995) (holding that when an "amended complaint adds a new cause of action, jurisdiction as to which reasonably may be premised on different contacts or conduct, a defendant wishing to make a jurisdictional challenge to the new claim must assert the defense as required by Fed. R. Civ. P. 12(h)").

1  clause, it applied to the particular defendants and claims asserted).  Meta's FAC alleges only that

2  "Facebook's Terms of Service, Meta's Commercial Terms, and Instagram's Terms of Use each . . .

3  contain[s] a forum selection clause that requires Defendant to submit to the personal jurisdiction" of

4  this Court.  That is a legal conclusion that is entitled to no weight.  *See Iqbal*, 556 U.S. at 678.

5  <u>*Second*</u>, Voyager UK never "had multiple Facebook and Instagram accounts," and never

6  "thereby agreed to" any of Meta's terms of service or use.[10]  (Bromley Decl. ¶¶ 20, 23.)  Voyager UK

7  is therefore not bound by any of those terms.  *See, e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279,

8  294 (2002) ("The general rule is 'that a contract cannot bind a nonparty.'") (citations omitted).  And

9  while Meta's jurisdictional allegations in the FAC do not explicitly assert that Voyager UK should be

10  bound by an agreement between Meta and any of the Non-Party Entities, Meta elsewhere alleges

11  generally that Voyager UK can "be held responsible for the activities of its subsidiaries."  (FAC ¶ 7.)

12  To the extent this is construed as pleading (i) that one or more of the Non-Party Entities agreed to a

13  forum selection clause and (ii) that Voyager UK is bound as a non-party to such an agreement, such

14  a theory should also be rejected.  *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 589-90 (N.D. Cal.

15  2022) (citing cases and noting that "[m]ost district courts that have considered whether a plaintiff

16  may enforce a forum selection clause to establish personal jurisdiction over non-signatory defendants

17  have rejected such attempts because a non-signatory defendant to a contract has not consented to

18  jurisdiction"); *Pestmaster Franchise Network, Inc. v. Mata*, No. 16-cv-07268-EMC, 2017 WL

19  1956927, at *4-5 (N.D. Cal. May 11, 2017) (granting motion to dismiss for lack of personal

20  jurisdiction and determining that forum selection clause could not be used to establish jurisdiction

21  over non-signatory that was not "intimately involved in the formation and execution of the

22  contracts"); *FTC-Forward Threat Control, LLC v. Dominion Harbor Enterprises, LLC*, Case No.

23  5:19-cv-06590, 2020 WL 5545156, at *6 (N.D. Cal. Sept. 16, 2020) (determining that "Movants did

24  not sign the Agreement, did not consent to the forum selection clause, and therefore are not subject

25  to the jurisdiction of California courts absent other countervailing considerations").

26

27

_____

28  [10] In the context of resolving a jurisdictional challenge, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

1    _Third_, even if the Court were to conclude that Voyager UK is bound by a forum selection

2    clause that appears in Facebook's or Instagram's Terms of Use (whatever those might be), Meta's

3    interpretation of that clause as conferring jurisdiction over statutory claims would violate due process

4    by essentially subjecting a foreign defendant to general jurisdiction. *Abelesz v. OTP Bank*, 692 F.3d

5    638, 657 (7th Cir. 2012) ("Nor are . . . forum-selection clauses[] sufficient to establish general

6    jurisdiction."); *Vangura Kitchen Tops, Inc. v. C&C N. Am., Inc.*, No. 08-cv-1011, 2008 WL 4540186,

7    at *9 (W.D. Pa. Oct. 7, 2008) (noting that "a forum selection clause . . . does not suffice to give

8    [California] general jurisdiction over [a defendant] for all purposes, or specific jurisdiction [for claims

9    that] do not arise from [the parties'] agreement"); *Daniels Agrosciences, LLC v. Ball DPF, LLC*, No.

10   13-cv-268, 2013 WL 5310208, at *4, 7 (D.R.I. Sept. 20, 2013) (rejecting argument that forum

11   selection clause applies to "all" disputes between the parties because "[f]orum selection clauses …

12   are not sufficient to establish general jurisdiction").  Thus, even if a forum selection clause appears

13   in some set of terms of use or service to which Voyager UK agreed (which it did not), then specific

14   personal jurisdiction over the CFAA and CDAFA claims could be conferred only if those claims arise

15   from that particular contract.  They do not.

16        On the contrary, Meta contends that a CFAA violation occurred because Defendant accessed

17   "Meta's protected computers without authorization," and that a CDAFA violation occurred because

18   Defendant accessed and otherwise used "Meta's computers . . . without permission."  (FAC ¶¶ 93, 97-

19   102.)  The terms of service and use that allegedly contain the forum selection clause are not a basis

20   for either claim; on the contrary, the reason that Defendant allegedly acted "without authorization"

21   for purposes of the CFAA is because Meta "revoked Defendant's access to Facebook and Instagram,

22   including by sending cease-and-desist letters, disabling Defendant's accounts, and filing a civil

23   action," while the reason that Defendant allegedly acted "without permission" for purposes of the

24   CDAFA is because "Meta revoked Defendant's access to Facebook and Instagram and filed a civil

25   action against Defendant."  (*Id.* (emphasis added).)  Thus, Meta's CFAA and CDAFA claims are

26   independent from the first cause of action; in fact, they are necessarily premised on Meta having

27   terminated any alleged contracts with Voyager UK.  Indeed, as Meta well knows, a CFAA claim

28   cannot arise from an alleged violation of terms of service or use.  *See, e.g.*, *Facebook, Inc. v. Power*

1  *Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("[A] violation of the terms of a website—without

2  more—cannot establish liability under the CFAA.").

3          **2.**      <u>**Voyager UK Lacks Sufficient Minimum Contacts to Confer Specific**</u>

4                  <u>**Personal Jurisdiction Over the CFAA and CDAFA Claims**</u>

5        Meta also asserts two different types of minimum contacts that it alleges give rise to specific

6  personal jurisdiction:  (i) the individualized targeting of Meta and certain Meta customers that are

7  based in California; and (ii) marketing, offering, and distributing software to California-based

8  customers, including the Los Angeles Police Department ("LAPD").  Meta's first set of alleged

9  contacts is insufficient under well-established Supreme Court law.  And in any event, Voyager UK

10  has not engaged in any conduct alleged to constitute minimum contacts with California.

11        <u>*First*</u>, Meta's theory of individualized targeting—of California-based Meta and of California-

12  based Meta customers—was specifically rejected by the Supreme Court in *Walden v. Fiore*, 571 U.S.

13  277 (2014).  In *Walden*, the Supreme Court found that harm suffered by a plaintiff or other third

14  parties in the forum state from a foreign defendant's actions was insufficient to satisfy due process—

15  even when the defendant knows that its conduct is directed to entities based in the forum state.  *Id.* at

16  289-90; *see also Adobe Sys. Inc. v. Nwubah*, No. 18-cv-6063, 2019 WL 6611096, at *6 (N.D. Cal.

17  Dec. 5, 2019) (noting that "the Supreme Court has stressed that specific personal jurisdiction must

18  arise from a defendant's own contacts with the forum state, not from plaintiff's or a third party's

19  contacts with the forum"); *see also Wescott v. Reisner*, No. 17-cv-06271, 2018 WL 2463614, at *3

20  (N.D. Cal. June 1, 2018) ("The fact that [plaintiff] experiences his financial injury in California

21  because he happens to live here does not establish jurisdiction," because "'mere injury to a forum

22  resident is not a sufficient connection to the forum . . . .'") (citations omitted); *Republic of Kazakhstan*

23  *v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897, at *7 (N.D. Cal. Dec. 21, 2017) ("The mere

24  fact that Google—the company that owns the servers—is headquartered in California is not enough

25  to establish that Khrapunov, a Kazakh citizen who resides in Switzerland, expressly aimed his alleged

26  conduct at California.").  Thus, the Court should not engage in an injury-focused inquiry, but rather

27  must engage in a conduct-focused inquiry, such that "[t]he proper question is not where the plaintiff

28  experienced a particular injury or effect but whether the defendant's conduct connects him to the

1   forum in a meaningful way." *Walden*, 571 U.S. at 290.  And yet, Meta's minimum contacts allegations

2   in the FAC are injury-focused—i.e., Meta alleges that individuals and entities in California have been

3   targeted by Voyager UK, which is precisely the sort of argument rejected by the Supreme Court in

4   *Walden*.   Thus, even if such "targeting" occurred (which it did not) and even if Voyager UK

5   knowingly targeted California-based individuals and entities (which it did not), that would still be

6   insufficient to satisfy due process for purposes of specific personal jurisdiction.  Moreover, it is not

7   clear where Meta alleges that Voyager UK's actions occurred—presumably, if Voyager UK took any

8   alleged action—whether targeted at California or otherwise)—it would have been in the United

9   Kingdom.  Meta does not appear to be alleging that Meta's computers *in California* were accessed

10  "without authorization" or "without permission," but rather only that Meta itself (along with certain

11  of its users) reside in California.  Indeed, the only computer server alleged to have accessed a Meta

12  website is in Virginia, not in California.  (FAC ¶ 53.)

13        *Second*, Voyager UK does not individually target Meta or Meta's California-based customers;

14  does not market, offer, or distribute software to California-based customers, including the LAPD; and

15  does not employ anyone that the FAC alleges has taken action in California.  (Bromley Decl. ¶¶ 16-

16  18, 21.)   Indeed, Voyager UK has no offices, employees, officers, directors, or operations in

17  California, and has no contracts that were made in California or governed by California law, and thus

18  could not have anticipated that it would be haled into court in California absent waiver of personal

19  jurisdiction (which it has provided only for the first cause of action in this litigation).  (*Id.* ¶¶ 11-13,

20  21, 25.)  Voyager UK therefore has not purposefully directed any activities at California.  *See, e.g.*,

21  *ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) (affirming

22  dismissal for lack of personal jurisdiction where an "uncontroverted declaration" established a lack

23  of purposeful direction towards the forum state); *Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950 (JLS)

24  (ADS), 2020 WL 3883273, at *4 (C.D. Cal. May 20, 2020) (dismissing action for lack of personal

25  jurisdiction in part based on declarations "disavowing any involvement" in the activities alleged to

26  have been directed to the forum state).

27        Moreover, while Meta has not explicitly alleged alter ego or agency theory as a basis for

28  specific personal jurisdiction, Meta has failed to plead any facts that would support conferring

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES          CASE NO. 3:23-cv-00154-AMO

1   jurisdiction over Voyager UK by virtue of the actions of one or more of the Non-Party Entities, for

2   the reasons discussed above.  *See* Section IV.B., *supra*; *see also Corcoran v. CVS Health Corp.*, 169

3   F. Supp. 3d 970, 983-84 (N.D. Cal. 2016) (granting motion to dismiss for lack of personal jurisdiction

4   although parent and subsidiary had "overlapping officers and directors," presented themselves "as

5   one integrated company on [their] website and in government filings" and that the parent had "been

6   involved in discrete business decisions of" the subsidiary).  Indeed, under well-established precedent,

7   the court must "start with the firm proposition that neither ownership nor control of a subsidiary

8   corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of

9   the state where the subsidiary does business."  *Sonora Diamond Corp. v. Superior Ct. of Tuolumne*

10  *Cty.*, 83 Cal. App. 4th 523, 541 (2000).  "As a practical matter, the parent must be shown to have

11  moved beyond the establishment of general policy and direction for the subsidiary and in effect taken

12  over performance of the subsidiary's day-to-day operations." *Id.* at 542.  Meta's conclusory allegation

13  that Voyager UK exercises "complete control" over its subsidiaries thus cannot justify attributing

14  contacts that third-parties might have with California to Voyager UK.

<u>**CONCLUSION**</u>

16          For the above reasons, Meta has twice failed to state a claim for breach of contract, and that

17  claim should be dismissed with prejudice pursuant to Rule 12(b)(6).  Meta has also failed to satisfy

18  its burden of showing that this Court can exercise personal jurisdiction over Voyager UK for the

19  remaining claims of the FAC, and thus they should be dismissed with prejudice as well.

21  Dated:  June 2, 2023                              GISH PLLC
22                                                    By:  */s/ Edward L. Tulin*_____
23                                                    EDWARD L. TULIN
                                                      Attorneys for Defendant Voyager Labs Ltd.