EMILY REITMEIER (SBN 305512)
emily.reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
525 University Avenue
Palo Alto, California  94301-1908
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570

RYAN IWAHASHI (SBN 284766)
ryan@gishpllc.com
GISH PLLC
50 California Street
San Francisco, CA 94111
Telephone: (415) 630-2000

EDWARD L. TULIN (*pro hac vice*)
edward@gishpllc.com
ANDREW D. GISH (*pro hac vice*)
andrew@gishpllc.com
RAYMOND J. BILDERBECK (*pro hac vice*)
ray@gishpllc.com
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
Telephone:     (212) 518-2000

Attorneys for Defendant Voyager Labs, Ltd.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| META PLATFORMS, INC., | Case No. 3:23-cv-00154-AMO |
| Plaintiff, | |
| vs. | **DEFENDANT VOYAGER LABS LTD.'S NOTICE OF MOTION AND RENEWED MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| VOYAGER LABS LTD., | |
| Defendant. | Hearing Date:   April 4, 2024<br>Judge: Honorable Araceli Martinez-Olguin |
| | Original Complaint Filed: January 12, 2023 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 4, 2024, or as soon thereafter as this motion may be heard, before the Honorable Araceli Martinez-Olguin of the United States District Court for the Northern District of California, in Courtroom 10, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to the Court's Order dated January 25, 2024 (Dkt. No. 82) Defendant Voyager Labs Ltd. ("Voyager UK" or "Defendant") will and hereby does move the Court to dismiss the First Amended Complaint ("FAC") of Plaintiff Meta Platforms, Inc. ("Meta" or "Plaintiff").  Defendant's motion is made pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Renewed Motion to Dismiss; the Supporting Memorandum of Points and Authorities; the Declaration of Courtney Bromley (Dkt. No. 50-2, "the Bromley Declaration"); any pleadings, records, papers, and filings in this matter; the oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF RELIEF SOUGHT

Defendant seeks an order (i) dismissing with prejudice Plaintiff's First Cause of Action pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) for failure to state a claim upon which relief can be granted; and (ii) dismissing with prejudice Plaintiff's Second and Third Causes of Action pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over Defendant for those claims.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff fails to state a claim for breach of contract because Plaintiff does not plausibly allege (i) any facts establishing mutual assent to enter into an online adhesion contract or (ii) the terms of any such online adhesion contract.

2.      Whether Plaintiff fails to plead sufficient facts supporting its "alter ego" or agency theories, and therefore whether Plaintiff has failed to state a claim based on any alleged actions of individuals or entities other than Defendant.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.      Whether this Court can properly exercise personal jurisdiction over Voyager UK—a foreign corporation that is not bound by any forum selection clause in any contract with Meta and that lacks minimum contacts with this forum—as to the Second and Third Causes of Action.

1

## <u>TABLE OF CONTENTS</u>

2  MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

3    I.      INTRODUCTION ................................................................................1

4    II.     FACTUAL BACKGROUND ................................................................4

5            A.      The Parties ................................................................................4

6            B.      The Non-Party Entities ............................................................4

7            C.      Allegations Relating to Supposed Contracts with Voyager UK .................5

8            D.      Voyager UK's Motions to Dismiss and Meta's FAC ...................5

9    III.    LEGAL STANDARDS ........................................................................6

10           A.      Legal Standards Governing Rule 12(b)(6) Motions to Dismiss .................6

11           B.      Legal Standards Governing Personal Jurisdiction .......................7

12   IV.     ARGUMENT ......................................................................................8

13           A.      Meta's Breach of Contract Claim Should Be Dismissed for Failing to
                     Plausibly Allege That an Agreement Exists Between Meta and
14                   Voyager UK ..............................................................................8

15                  1.      Meta Has Not Sufficiently Alleged the Existence of a Contract
                            That Voyager UK Allegedly Breached ..........................8
16

17                  2.      Meta Fails to Plausibly Allege That Voyager UK Manifested
                            Assent ..........................................................................10

18           B.      Meta Fails to Sufficiently Allege How Voyager UK is Bound by the
                     Actions of the Non-Party Entities ..........................................13
19

20                  1.      "Alter Ego" Is a Rare Exception That Requires Additional
                            Facts ............................................................................14

21                          (a)      Meta Has Twice Failed to Plead "Unity of Interests" ........15

22                          (b)      Meta Fails to Plead "Inequitable Results" If Alter Ego
                                     is Rejected ....................................................................17
23

24                  2.      The FAC Fails to Plausibly Allege an Agency Theory .................17

25                  3.      Because Meta Fails To Plausibly Allege Alter Ego or Agency
                            Liability, Its Breach of Contract Claim Should Be Dismissed ......18

26           C.      Meta's Breach Claim Should Be Dismissed with Prejudice .....................19

27           D.      The Court Lacks Personal Jurisdiction Over the CFAA & CDAFA
                     Claims ......................................................................................19
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1. No Forum Selection Clause Confers Personal Jurisdiction for the CFAA & CDAFA Claims .......................................................20

2. Voyager UK Lacks Sufficient Minimum Contacts to Confer Specific Personal Jurisdiction Over the CFAA and CDAFA Claims ............................................................................................23

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. OTP Bank*, 692 F.3d 638, 657 (7th Cir. 2012).................................................22

*Action Embroidery Corp. v. Atl. Embroidery Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ....................................................................................3

*Adobe Sys. Inc. v. Nwubah*,
    No. 18-cv-6063, 2019 WL 6611096 (N.D. Cal. Dec. 5, 2019)...................................23

*Allied Prods. Corp. v. Electric & Gas Tech., Inc.*,
    No. 97 C 5256, 1998 WL 173305 (N.D. Ill. Apr. 8, 1998) .......................................18

*AlterG, Inc. v. Boost Treadmills LLC*,
    No. 18-CV-07568-EMC, 2019 WL 4221599 (N.D. Cal. Sept. 5, 2019) .....................10

*Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013 (N.D. Cal. 2006) ....................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................7, 19, 21

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017).......................8

*Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972 (C.D. Cal. 2013) ..................................16

*Be In, Inc. v. Google Inc.*,
    No. 12-cv-3373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ...............................2, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)......................................6, 7, 19

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) ..........................................11

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ..........................2, 11

*BMMSoft, Inc. v. White Oaks Technology, Inc.*,
    No. C–09–4562 MMC, 2010 WL 3340555 (N.D. Cal. Aug. 25, 2010) .......................12

*Born v. Celtic Mktg. LLC*,
    No. 8:19-cv-01950 (JLS) (ADS), 2020 WL 3883273 (C.D. Cal. May 20, 2020) ........25

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011).......................21

*Competent Software Pvt. Ltd. v. Corelogic Sol'ns, LLC*,
    No. 19-cv-2161-DOC-KES, 2020 WL 133688 (C.D. Cal. Jan. 13, 2020) ..................20

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................6

*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016)..........................25

*Cvent Inc. v. Eventbrite*, 739 F. Supp. 2d 927 (E.D. Va. 2010).......................................13

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...............................................................7

*Daniels Agrosciences, LLC v. Ball DPF, LLC*,
    No. 13-cv-268, 2013 WL 5310208 (D.R.I. Sept. 20, 2013) .................................22

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) .......................................16

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)..................................8

*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002) ....................................21

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
    No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865 (N.D. Cal. Mar. 5, 2012).......................17

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) .........................23

*FTC-Forward Threat Control, LLC v. Dominion Harbor Enterprises, LLC*,
    Case No. 5:19-cv-06590, 2020 WL 5545156 (N.D. Cal. Sept. 16, 2020) ....................22

*Garibaldi v. Bank of Am. Corp.*,
    No. C 13-02223 SI, 2014 WL 172284 (N.D. Cal. Jan. 15, 2014).......................1, 9

*Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104 (C.D. Cal. 2015) ..................14

*Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032 (9th Cir. 2010) ........................14

*Gunderson v. ADM Investor Servs., Inc.*, 85 F. Supp. 2d 892 (N.D. Iowa 2000)...................18

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ...............15

*Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings, Inc.*,
    No. 18-cv-05031-EMC, 2019 WL 331161 (N.D. Cal. Jan. 25, 2019)........................17

*Hospitality Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
    No. 15-cv-01791 JVS (DFMx), 2016 WL 9045621 (C.D. Cal. Jan. 28, 2016) ...................18

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................7

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143 (9th Cir. 2004)...................15

*Kevcon, Inc. v. L.B. Contracting, LLC*,
    No. 12-cv-2014 BEN (BLM), 2013 WL 78962 (S.D. Cal. Jan. 3, 2013) ......................21

*Mardis v. Jackson Hewitt Tax Service Inc.*,
    No. 16-cv-2115, 2019 WL 7207551 (D.N.J. Dec. 26, 2019)............................21

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) .................................7

*Masimo Corp. v. Sotera Wireless*,
    No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 232276 (S.D. Cal. Dec. 9, 2020) ..............15

*McNally v. Kingdom Trust Co.*,
    No. 20-cv-830-DOC-MRW, 2020 WL 7786539 (C.D. Cal. Nov. 13, 2020) ...................20

*Mewawalla v. Middleman*, 601 F. Supp. 3d 574 (N.D. Cal. 2022) ...............................21

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ........................................7

*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................................ 7

*Park v. Morgan Stanley & Co. Inc.*,
No. 2:11-cv-9466-ODW (MRWx), 2012 WL 589653 (C.D. Cal. Feb. 22, 2012)................... 8, 10

*Pestmaster Franchise Network, Inc. v. Mata*,
No. 16-cv-07268-EMC, 2017 WL 1956927 (N.D. Cal. May 11, 2017)........................ 21

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) ................................................ 3, 7, 8

*Prochaska & Assocs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
798 F. Supp. 1427 (D. Neb. 1992) ...................................................................... 18

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ....................................................... 14

*Republic of Kazakhstan v. Ketebaev*,
No. 17-CV-00246-LHK, 2017 WL 6539897 (N.D. Cal. Dec. 21, 2017) ...................... 23

*Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014).............................................. 15

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012)................................... 19

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ......................................... 11

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000)...................... 14, 15, 17, 25

*Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp.3d 938 (N.D. Cal. 2015). ........... 16

*Sw. Airlines Co. v. BoardFirst, LLC*,
No. 3:06–CV–0891–B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ...................... 13

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,
282 F.R.D. 216 (D. Ariz. 2012) ......................................................................... 19

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
813 F. App'x 316 (9th Cir. 2020)........................................................................ 24

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
No. CV99–7654, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ............................... 13

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (1994)............................... 15, 16

*TopstepTrader, LLC v. OneUp Trader, LLC*,
No. 17 C 4412, 2018 WL 1859040 (N.D. Ill. Apr. 18, 2018)..................................... 12

*Uniloc 2017 LLC v. H&R Block, Inc.*,
No. SACV 19-1149 JVS (KESx), 2019 U.S. Dist. LEXIS 229166 (C.D. Cal. Dec. 23, 2019) .... 16

*Vaccarino v. Midland Nat. Life Ins., Co.*,
No. 11-cv-05858 (CAS) (MANx), 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011).............. 9

*Vangura Kitchen Tops, Inc. v. C&C N. Am., Inc.*,
No. 08-cv-1011, 2008 WL 4540186 (W.D. Pa. Oct. 7, 2008)..................................... 22

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................. 3, 23, 24

*Wescott v. Reisner*,
  No. 17-cv-06271, 2018 WL 2463614 (N.D. Cal. June 1, 2018)....................................23

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).......................................2, 15

*Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*,
  No. 8:20-cv-00102-JWH-ADSx, 2022 WL 739522 (C.D. Cal. Feb. 2, 2022) ...................2, 17, 18

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ...........................20

**Statutes**
Cal. Code Civ. P. § 410.10................................................................................7

**Other Authorities**
Restatement (Third) of Agency § 1.01 (2006) .................................................................18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3    This case concerns online adhesion contracts—and this Motion concerns whether Meta can

4 use them to distort the well-established legal principles governing contractual relations and

5 jurisdictional analysis.  Meta's FAC is based primarily on two untenable theories:  (i) that mere

6 invocation of terms that allegedly govern "everyone" who has ever used Facebook and Instagram is

7 sufficient to state a plausible breach of contract claim; and (ii) that a forum selection clause that

8 allegedly appears in those terms constitutes a preemptive and permanent waiver of personal

9 jurisdiction for all time and for all claims brought by Meta—even against a foreign entity that is not

10 even alleged to have assented to those terms.  Voyager UK has already identified the deficiencies in

11 Meta's first theory in two earlier motions to dismiss (Dkt. No. 36, hereafter "First MTD," and Dkt.

12 No. 50, hereafter "Second MTD").  In response to the First MTD, Meta filed its FAC—which repeated

13 its untenable breach of contract claim nearly verbatim without addressing any of the dispositive issues

14 identified by Defendant in its First MTD, and which also asserted two new claims based on an equally

15 untenable interpretation of still-unidentified terms in a still-unidentified online adhesion contract.

16 And in response to the Second MTD, Meta again failed to directly address any of the issues that

17 render its breach of contract theory insufficient, and offered only perfunctory bases for exercising

18 personal jurisdiction over Defendant for the remaining claims.  (Dkt. No. 53).   Having repeatedly

19 failed to assert a plausible breach of contract claim, and having repeatedly failed to plead any facts

20 establishing personal jurisdiction for its other claims, Meta's FAC should be dismissed with prejudice.

21    Meta's original complaint and its FAC fail to assert a plausible breach of contract claim for

22 three reasons.  _First_, Meta refers generally to a hodgepodge of terms, guidelines, rules, standards, and

23 policies, but has attached none of those materials to its pleadings, and instead quotes from undated

24 versions of what Meta calls "Facebook's Terms" and "Instagram's Terms."  That fails to put Voyager

25 UK on notice of the allegedly breached contract and fails to plausibly plead the existence of any such

26 contract.  _See, e.g., Garibaldi v. Bank of Am. Corp._, No. C 13-02223 SI, 2014 WL 172284, at *3

27 (N.D. Cal. Jan. 15, 2014) (dismissing breach of contract claim that was based on repeated references

28 to "uniform policies").  _Second_, Meta fails to allege how Voyager UK—the only named defendant—

manifested assent to any of the foregoing online adhesion contracts, other than the alleged creation and use of Facebook and Instagram accounts by Voyager UK or one of its affiliates.  But mere use of a website, without more, does not manifest assent to the terms of such a contract.  *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022); *Be In, Inc. v. Google Inc.*, No. 12-cv-3373, 2013 WL 5568706, at *8 (N.D. Cal. Oct. 9, 2013).[1]  <u>Third</u>, Meta improperly conflates Voyager UK with its subsidiaries, arguing that Voyager UK should "be held responsible for the activities of its subsidiaries as if [Voyager UK] itself was the actor" because they file consolidated financial statements and sometimes use the common name "Voyager Labs" in marketing materials. (FAC ¶ 7.)  If Meta intended to allege that Voyager UK is the alter ego of the Non-Party Entities,[2] then that theory fails because Meta did not plead (1) such unity of interest among multiple corporations that their separate personalities no longer exist; and (2) inequitable results if traditional corporate separateness is observed.  *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017).  And if Meta intended to allege that the Non-Party Entities are Voyager UK's agents, that theory also fails because Meta did not plead facts showing that Voyager UK exercises control over them.  *See, e.g.*, *Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, No. 8:20-cv-00102-JWH-ADSx, 2022 WL 739522, at *3 (C.D. Cal. Feb. 2, 2022) (granting motion to dismiss because the plaintiff failed to "allege facts demonstrating the principal's control over its agent").  Meta has had more than a year to correct these deficiencies, but has failed to do so.  Meta's claim for breach of contract should therefore be dismissed with prejudice.

Meta's FAC also asserts a claim under the Computer Fraud and Abuse Act ("the CFAA Claim"), and a claim under Section 502 of the California Penal Code ("the CDAFA Claim").  This Court lacks personal jurisdiction over Voyager UK for those claims.[3]

---

[1] Meta does not allege whether the alleged contracts are browsewrap (i.e., contracts allegedly formed by use of a website and notice of applicable terms), clickwrap (i.e., contracts that are allegedly formed by an affirmative "click" accepting terms), or something else.

[2] Those non-party subsidiaries are Voyager Analytics Inc. (a Delaware corporation), Bionic 8 Analytics Inc. (an Israeli corporation), and Novarize Inc. (a Delaware corporation) (collectively, "the Non-Party Entities").

[3]  Although personal jurisdiction is a threshold issue that would typically be addressed first in a motion to dismiss, Voyager UK addresses it here after its Rule 12(b)(6) arguments on the first claim because Voyager UK's personal jurisdiction arguments relate only to the second and third claims.

Meta's primary theory of personal jurisdiction is that a forum selection clause in one or more of its website terms of service "requires [Voyager UK] to submit to the personal jurisdiction of" this Court for the CFAA and CDAFA Claims.  That theory should be rejected because:  (i) Meta has not quoted or otherwise provided the actual forum selection clause, and Meta's legal conclusion as to what the clause "requires" is insufficient; (ii) as set forth in the Bromley Declaration, Voyager UK never agreed to any forum selection clause in any contract with Meta; and (iii) even if Voyager UK had agreed to a forum selection clause in Meta's terms of use (which it did not), that clause would not confer personal jurisdiction over the CFAA or CDAFA Claims because those claims are not and cannot be based on Meta's terms of use.

Meta also alleges that this Court can exercise specific personal jurisdiction over Voyager UK based on its minimum contacts with California.  That theory should likewise be rejected because: (i) even if taken as true, allegations that Meta and certain of its California-based users were "targeted" by Voyager UK are insufficient to establish personal jurisdiction in light of the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014); and (ii) as set forth in the Bromley Declaration, Voyager UK has not engaged in any conduct alleged to have occurred in California.  Finally, to the extent that Meta asserts that the conduct of the Non-Party Entities should be attributed to Voyager UK to establish personal jurisdiction because those companies are closely related, are alter egos of one another, or have an agency relationship, that jurisdictional theory fails for the same reason discussed above for Meta's inadequately pleaded breach claim.[4]

In its original complaint, Meta skipped the required threshold showing for its breach of contract claim:  a manifestation of mutual assent to the terms of online contract(s) of adhesion.  Instead, Meta flooded the docket with 1,500+ pages of exhibits, and then cited only 25 of those pages—roughly 2%.  No contract is among all that paper; nor are any screenshots of Facebook or Instagram that might allow the Court to assess whether Voyage UK manifested assent to terms

---

[4] Although Voyager UK does not contest personal jurisdiction for Meta's contract claim, that does not resolve the question of whether personal jurisdiction exists for other claims.  *See, e.g.*, *Action Embroidery Corp. v. Atl. Embroidery Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant.")*; Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (noting that where, as here, "a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant'").

1   allegedly governing use of those websites, nor any materials that could lead to the reasonable

2   inference that Voyager UK's subsidiaries are merely its agents or alter ego.  Faced with those

3   deficiencies, Meta doubled down—it recycled its original allegations, again failed to attach any

4   alleged contracts or evidence of mutual assent, again cited only 2% of the materials that it attached,

5   and again ignored the caselaw requiring factual support for an alter ego or agency theory.  This

6   repeated failure to assert a plausible breach claim reveals that Meta is either unable or unwilling to

7   do so.  And the additional claims in the FAC fare no better, because neither an unidentified forum

8   selection clause nor the conduct alleged in the FAC can support the exercise of personal jurisdiction.

9   The FAC should therefore be dismissed in its entirety.

10      **II.**    **FACTUAL BACKGROUND**

11         **A.**    **The Parties**

12       Meta is a Delaware corporation that "operates . . . Facebook and Instagram."  (FAC ¶ 4.)

13   Voyager UK is a limited liability company organized under the laws of England and Wales.  (*Id*. ¶

14   5.)  Voyager UK has no offices, employees, officers, directors, or other presence in California.

15   (Bromley Decl. ¶¶ 11-18.)  Voyager UK is not registered to do business in California, has no

16   registered agent for service of process in California, provides no services for any California-based

17   customers, and does not market, sell, or offer to sell any products in California.  (*Id*. ¶¶ 11, 21.)

18         **B.**    **The Non-Party Entities**

19       Meta alleges that Voyager UK "exercises complete control over" the three Non-Party Entities

20   and therefore that "[Voyager UK] can [] be held responsible for [their] activities as if [Voyager UK]

21   itself was the actor."  (FAC ¶ 7.)  In support of that claim, Meta alleges that:

22   (1)     Voyager UK "files annual reports that consolidate [Voyager UK]'s and its subsidiaries'

23           financial statements"; and

24   (2)     "[Voyager UK] and Voyager Analytics, Inc. both operate under the name 'Voyager Labs.'"

25   (*Id.*)  Meta alleges no further facts to support its claim of "complete control"; indeed, the foregoing

26   allegations are identical to those in its original complaint, notwithstanding the caselaw that Voyager

27   UK cited in the First MTD and Second MTD that establishes that those allegations are inadequate.

28

**C.**   **Allegations Relating to Supposed Contracts with Voyager UK**

The FAC alleges that "[e]veryone who creates a Facebook account or otherwise uses Facebook agrees to the Terms of Service and other rules that govern access to and use of Facebook," and that "[e]veryone who 'create[s] an Instagram account or use[s] Instagram' agrees to Instagram's Terms of Use and other rules that govern access to and use of Instagram." (FAC ¶ 25.) But the FAC is devoid of any detail as to how a user assents to those Terms—i.e., whether they are "clickwrap" agreements, "browsewrap" agreements, or something else. And as for Voyager UK, Meta alleges that "through its employees and agents, [Voyager UK] created and used multiple Facebook and Instagram accounts and thereby agreed to Facebook's and Instagram's Terms." (FAC ¶ 81; *see also id.* ¶ 33(a)-(g).) Meta never alleges that it presented those "Terms" to Voyager UK during creation or use of those accounts, or that Voyager UK manifested assent through any affirmative action.

Nevertheless, Meta alleges that from at least May 1, 2015 through January 12, 2023, Voyager UK "was bound by Facebook's Terms and Instagram's Terms." (FAC ¶¶ 32, 33.) "Facebook's Terms" appear to encompass (1) the "Terms of Service"; (2) "Facebook's Community Standards"; (3) "as applicable, the Meta Commercial Terms" and (4) additional, unspecified "rules that govern access to and use of Facebook." (*Id.* ¶ 25.) Similarly, "Instagram's Terms" appear to encompass (1) "Instagram's Terms of Use"; (2) "Instagram's Community Guidelines"; and (3) additional, unspecified "rules that govern access to and use of Instagram." (*Id.* ¶ 26.) The FAC does not attach any of the foregoing materials as exhibits, and does not specify whether Meta contends that those were clickwrap, browsewrap, or something else. And while the FAC quotes numbered sections of certain "Terms," it does so without identifying the document or agreement being quoted, and instead generically refers to the source of those quotations as "Facebook's Terms" and/or "Instagram's Terms." (*Id.* ¶¶ 27-31.)

**D.**   **Voyager UK's Motions to Dismiss and Meta's FAC**

On April 13, 2023, Voyager UK filed the First MTD, asserting that Meta's Complaint failed to plausibly assert a claim for breach of contract. (Dkt. No. 36.) Rather than file an opposition brief, Meta instead filed the FAC on May 5, 2023. (Dkt. No. 42.) As compared to the original Complaint, the FAC differs in limited ways, by alleging: (i) additional conduct that occurred after the filing of

1  the Complaint (FAC ¶¶ 2, 59, 67-76); (ii) the CFAA and CDAFA claims for the first time (*id.* ¶¶ 3,

2  90-103); (iii) subject-matter jurisdiction of those new claims (*id.* ¶¶ 10-12); and (iv) that "[a]

3  Facebook [and Instagram] user account cannot be created without the user agreeing to Facebook's [or

4  Instagram's] Terms," and that "by continuing to access and use a Facebook [or Instagram] account,

5  the user is agreeing to Facebook's [or Instagram's] Terms" (*id.* ¶¶ 25-26).  On June 2, 2023, Voyager

6  UK filed the Second MTD, emphasizing Meta's failure to address the deficiencies identified in the

7  First MTD, and highlighting Meta's failure to plead a sufficient jurisdictional basis for its CFAA and

8  CDAFA claims.  (Dkt. No. 50.)  Yet, once again, Meta's Response failed to identify the contract(s)-

9  at-issue; failed to allege any conduct by Voyager UK that demonstrated assent to those contract(s);

10 failed to plead any plausible basis to conclude that the Non-Party Entities are Voyager UK's alter ego

11 or agents (or vice versa); and failed to provide any evidence to rebut the sworn declaration of

12 Courtney Bromley, which demonstrates that the Court lacks a basis to exercise personal jurisdiction

13 over Voyager UK for the CFAA and CDAFA claims.  (*See* Dkt. No. 57.)

14  **III.   LEGAL STANDARDS**

15  **A.   Legal Standards Governing Rule 12(b)(6) Motions to Dismiss**

16       A complaint must include "a short and plain statement of the claim showing that the pleader

17 is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "give the defendant

18 fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v.*

19 *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

20       To survive a motion to dismiss, a plaintiff must plead "more than labels and conclusions, and

21 a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*,

22 478 U.S. 265, 286 (1986)).  Rather, a complaint must "plead[] factual content that allows the court to

23 draw the reasonable inference that the defendant is liable for the misconduct alleged," and "naked

24 assertion[s] devoid of further factual enhancement'" are not sufficient to meet this standard.  *Ashcroft*

25 *v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556-57) (quotation marks omitted).

26 To determine whether a complaint satisfies the requirements of Rules 8(a)(2) and 12(b)(6), "all

27 material allegations of the complaint are accepted as true, as well as all reasonable inferences to be

28 drawn from them."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  However, this standard

1  "do[es] not require courts to credit a complaint's conclusory statements without reference to its factual

2  context." *Iqbal*, 556 U.S. at 686.

3      **B.      Legal Standards Governing Personal Jurisdiction**

4          The plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. *Picot*

5  *v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "Federal courts ordinarily follow state law in

6  determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117,

7  125 (2014). California's long arm statute permits exercise of personal jurisdiction to the fullest extent

8  permissible under the U.S. Constitution; therefore, the court's inquiry "centers on whether exercising

9  jurisdiction comports with due process." *Picot*, 780 F.3d at 1211; *see also* Cal. Code Civ. P. § 410.10.

10  Due process "limits the power of a state's courts to exercise jurisdiction over defendants who do not

11  consent to jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). In order

12  to comport with the constitutional requirements of due process, a defendant must "have certain

13  minimum contacts with [the forum state] such that the maintenance of the suit does not offend

14  traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

15  316 (1945) (internal quotation marks omitted). Under this "minimum contacts" analysis, a court can

16  exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction."

17  *Daimler*, 571 U.S. at 121–22 (citations omitted).

18          Specific jurisdiction may be exercised when a defendant's contacts with a forum give rise to

19  the asserted claims. *See Goodyear*, 564 U.S. at 924-25. It exists when a defendant: (1) purposefully

20  directs activities at the forum or its residents or purposely avails itself of the privilege of conducting

21  activities in the forum; (2) the claim arises out of or relates to those activities; and (3) the exercise of

22  jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir.

23  2017). A defendant "purposefully directs" its activities at the forum state when it "(1) commit[s] an

24  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

25  likely to be suffered in the forum state." *Picot*, 780 F.3d at 1214 (citing *Dole Food Co. v. Watts*, 303

26  F.3d 1104, 1111 (9th Cir. 2002)).

27

28

## IV.    ARGUMENT

### A.    Meta's Breach of Contract Claim Should Be Dismissed for Failing to Plausibly Allege That an Agreement Exists Between Meta and Voyager UK

#### 1.    Meta Has Not Sufficiently Alleged the Existence of a Contract That Voyager UK Allegedly Breached

Before the Court can analyze Voyager UK's alleged acceptance of the terms of a contract, Meta needs to identify a contract between the two that was allegedly breached.  Meta has twice failed to do so in a way that would place Voyager UK on notice of the relevant contract terms.

Under California law, to state a claim for breach of contract, "a plaintiff must allege <u>facts</u> showing (1) the existence of a contract, (2) that the plaintiff performed [its] duties under the contract or was excused from doing so, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of that breach." *Smith v. Cap. One Fin. Corp.*, No. C 11-3425 PJH, 2012 WL 259515, at *4 (N.D. Cal. Jan. 27, 2012) (citing *First Comm'l Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001)) (emphasis added).

This Motion focuses on the first prong of the foregoing test.  To properly plead the existence of a contract sufficient to meet that first prong, a plaintiff must "make clear" what contracts are at issue by identifying them specifically—courts dismiss claims where "dizzying references to multiple 'agreements,' 'promises,' and 'contracts' [make] it 'impossible' to discern which contract, terms, parties, and breaches [are] the basis of the breach-of-contract claim." *AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121-JVS (ADSx), 2022 WL 16859970, at *4 (C.D. Cal. Oct. 5, 2022); *see also Park v. Morgan Stanley & Co.*, No. 2:11-cv-9466-ODW (MRWx), 2012 WL 589653, at *2 (C.D. Cal. Feb. 22, 2012) (finding that a plaintiff had failed to sufficiently allege the existence of a contract where the pleadings "fail[ed] to allege the nature of the contract sufficiently enough to give Defendant[s] notice of the contract to which Plaintiff refers . . . leav[ing] Defendants to guess as to which 'agreement' was actually breached"); *Vaccarino v. Midland Nat. Life Ins., Co.*, No. 11-cv-05858 (CAS) (MANx), 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011) (dismissing breach of contract claim where the plaintiff failed to "identify her contract's essential terms," or "which terms of the contract were breached").

1    Here, despite attaching more than 1,500 pages of largely irrelevant "exhibits" to the FAC,

2    Meta does not include any of the supposed contract(s) that Meta alleges are the basis for its breach

3    claim, despite the fact that Voyager UK has repeatedly identified such deficiencies in the First MTD

4    and Second MTD.  Instead, Meta alludes to seven different <u>categories</u> of potential contracts: (1)

5    Facebook's Terms of Service; (2) Facebook's Community Standards; (3) Meta's Commercial Terms

6    (but only "as applicable"); (4) other "rules that govern access to and use of Facebook"; (5) Instagram's

7    Terms of Use; (6) Instagram's Community Guidelines; and (7) other "rules that govern access to and

8    use of Instagram."  (FAC ¶¶ 25, 26.)  The FAC defines categories (1)-(4) as "Facebook's Terms," and

9    categories (5)-(7) as "Instagram's Terms."  (*Id.*)  These references are insufficient to state a plausible

10   breach of contract claim, for several reasons.

11   <u>*First*</u>, it is unclear what Meta means by "as applicable, the Meta Commercial Terms" (FAC

12   ¶ 25), and therefore it is likewise unclear whether Meta contends (i) that its Commercial Terms apply,

13   (ii) that only certain unidentified Commercial Terms apply, or (iii) that they only apply to certain

14   activities.  It is also unclear how the various terms and conditions referenced in the FAC relate to one

15   another, whether some terms supersede others, and, if so, how.  Meta never quotes any of its

16   Commercial Terms in the FAC and, as noted above, Meta has not provided a copy of them.  Meta's

17   FAC therefore does not satisfy Rule 8 because Voyager UK is left guessing as to what the applicable

18   contract terms are, and whether or to what extent Meta contends that those terms apply.  *See e.g.*,

19   *Garibaldi v. Bank of Am. Corp.,* No. C 13-02223 SI, 2014 WL 172284, at *3 (N.D. Cal. Jan. 15,

20   2014) (dismissing breach of contract claim despite multiple "references [to] defendant's 'uniform

21   policies' regarding accrual of paid time off," because this failed to provide "sufficient factual

22   information for the Court to determine what these 'uniform policies' actually are"); *Park,* 2012 WL

23   589653, at *2 (dismissing breach of contract claim where defendant alleged that "compensation

24   guides and agreements" existed between the parties and had been breached).

25   <u>*Second*</u>, Meta's FAC refers to a catchall category of contracts consisting of "rules that govern

26   access to and use of" Facebook and Instagram, (FAC ¶¶ 25, 26), but then says nothing more about

27   those alleged contracts, their terms, when they are supposed to have been executed, or why they

28   allegedly bind Voyager UK today.  Meta has thus invoked an amorphous web of various Facebook

and Instagram "rules" and is hedging its bets on whether it will later need to shoehorn in other adhesion documents using this undefined, umbrella category.  But this tactic turns ordinary principles of contract law upside down.  If Meta's FAC is deemed sufficient to satisfy Rule 8, then plaintiffs could invoke the mere specter of electronic adhesion contracts without ever providing those contracts or details about how a user allegedly agreed to them.  Meta's allegations relating to these unspecified "rules" therefore fail to satisfy even the liberal standards under Rule 8 and should be dismissed.  *See AK Futures LLC v. LCF Labs Inc*., No. 8:21-cv-02121 (JVS) (ADSx), 2022 WL 2784409, at *4 (C.D. Cal. June 24, 2022) (granting motion to dismiss where complaint merely suggested "that multiple contracts are at issue, mentioning 'contracts for the manufacture, distribution, co-pack and sale of [certain] products'").

*Third*, Meta never alleges whether the current versions of the foregoing seven categories of potential contracts are the basis for its breach claim, or whether the versions that were in effect at the time of alleged account creation are instead the basis.  Meta also does not state whether all contracts allegedly created with Voyager UK are in force in perpetuity, or are of fixed duration.  For instance, Meta alleges that Voyager UK created Facebook and Instagram accounts in 2016, but does not allege that all seven categories of agreements outlined above were entered in 2016, or that they are still in force today.  Meta's evasive pleading tactic warrants dismissal.  *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, No. 18-CV-07568-EMC, 2019 WL 4221599, at *10 (N.D. Cal. Sept. 5, 2019) (granting motion to dismiss breach of contract claim based on superseded agreements).

### 2.   Meta Fails to Plausibly Allege That Voyager UK Manifested Assent

Even if Voyager UK was on notice of the terms of the contracts it allegedly entered (which it is not), Meta has for the second time alleged no facts from which it can be inferred that Voyager UK accepted those terms.  That is fatal to Meta's breach of contract claim, because "the formation of a contract requires a manifestation of mutual assent." *Be In, Inc*., 2013 WL 5568706, at *6 (quotation marks omitted).  "Indeed, such a manifestation is the touchstone of contract." *Id.*; *see also Berkson v. Gogo LLC,* 97 F. Supp. 3d 359, 383 (E.D.N.Y. 2015) ("Sometimes forgotten in the Internet Age—where contracts of adhesion are often the rule for online consumers—is the essential element of contract formation: mutual manifestation of assent.")

1   Meta's breach claim is based entirely on electronic adhesion contracts.   Such adhesion

2   contracts are analyzed differently from traditional paper contracts:

> In the world of paper contracting, the outward manifestation of assent
> to the same thing by both parties is often readily established by the
> offeree's receipt of the physical contract. . . .   By contrast, when
> transactions occur over the internet, there is no face-to-face contact and
> the consumer is not typically provided a physical copy of the
> contractual terms. In that context, and in the absence of actual notice,
> a manifestation of assent may be inferred from the consumer's actions
> on the website—including, for example, checking boxes and clicking
> buttons—but any such action must indicate the parties' assent to the
> same thing, which occurs only when the website puts the consumer on
> constructive notice of the contractual terms.

9   *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021).   Whether a complaint sufficiently

10   alleges mutual assent of online adhesion contract(s) depends on the kind of adhesion contract at issue.

11   For so-called "clickwrap" agreements, pleading that a user affirmatively clicked a box indicating

12   acceptance of the relevant terms may be sufficient.   *Berman v. Freedom Fin. Network, LLC*, 30 F.4th

13   849, 856 (9th Cir. 2022).   On the other hand, for so-called "browsewrap" agreements—where

14   plaintiffs sometimes suggest that consumers' mere use of a website binds them to terms that they did

15   not affirmatively accept—merely alleging that someone has used a website is generally not enough

16   to satisfy the requirements under Rule 8.   *Be In, Inc.*, 2013 WL 5568706, at *9 (dismissing claims for

17   breach of browsewrap contract and noting that "Defendants' mere use of the website can only serve

18   as a manifestation of assent where Defendants had, or should have had, reason to know that mere use

19   would be so interpreted").

20   The FAC does not identify what type of online adhesion contract(s) Voyager UK allegedly

21   entered.   But assuming that those are either clickwrap or browsewrap adhesion contracts—an

22   assumption to which Meta is not entitled—then Meta's FAC fails to allege conduct by Voyager UK

23   that would meet the applicable pleading standards.

24   *First*, Meta fails to plead facts from which a reasonable factfinder could conclude that

25   Voyager UK entered a clickwrap contract with Meta.   At a minimum, a plaintiff must plead that the

26   software or application could not be *used* unless the defendant clicked a box or otherwise

27   affirmatively agreed to the terms of service.   *See, e.g.*, *BMMSoft, Inc. v. White Oaks Technology, Inc.*,

28   No. C–09–4562 MMC, 2010 WL 3340555, at *1 (N.D. Cal. Aug. 25, 2010); *see also TopstepTrader,*

1   *LLC v. OneUp Trader, LLC*, No. 17 C 4412, 2018 WL 1859040 (N.D. Ill. Apr. 18, 2018) (dismissing

2   breach of contract claims where complaint failed to allege how the defendant manifested assent to

3   the terms of clickwrap agreement).  Here, the FAC alleges that "[e]veryone who creates a Facebook

4   [or Instagram] account or otherwise uses Facebook [or Instagram] agrees to the Terms of Service and

5   other rules that govern access to and use of Facebook [and Instagram]," and that the foregoing user

6   accounts "cannot be created without the user agreeing to Facebook or Instagram's terms."[5]  (FAC ¶¶

7   25, 26.)   But those conclusory allegations say nothing about what Voyager UK actually did to

8   manifest assent to any terms—like Meta's original Complaint, the FAC includes no screenshots of

9   Facebook or Instagram, no description of any boxes that were clicked, no allegation that Facebook

10  or Instagram cannot be *used* unless a user affirmatively agreed to certain terms, etc.

11      *Second*, Meta fails to plead facts from which a reasonable factfinder could conclude that

12  Voyager UK entered a browsewrap contract with Meta.  "Because no affirmative action is required

13  by the website user to agree to the terms of a contract other than his or her use of the website, the

14  determination of the validity of the browsewrap contract depends on whether the user has actual or

15  constructive knowledge of a website's terms and conditions."  *Nguyen*, 763 F.3d at 1176.  Just as with

16  the original Complaint, Meta's FAC does not allege that Voyager UK had actual or constructive

17  knowledge of any of the "terms and conditions" to which it allegedly agreed; on the contrary, Meta's

18  allegations invoke only generic "users" who "agree" to terms through continued use of the websites,

19  including terms that can apparently apply to individuals who "otherwise use" the websites without

20  creating an account.  That is insufficient.  *See Be In, Inc.*, 2013 WL 5568706, at *9  (dismissing

21  breach of contract claims based on browsewrap agreements for failure to plead "grounds for the Court

22  to find a manifestation of Defendants' mutual assent to the Terms of Service").   As the Ninth Circuit

23  has recognized, to determine whether the requisite notice was provided, courts must assess the design

24  and content of the website in question, the prominence of terms and conditions, etc.—bearing in mind

25  that "the onus must be on website owners to put users on notice of the terms" that will apply to them.

26  *Id.* at 1179; *Berman*, 30 F.4th at 856 ("Unless the website operator can show that a consumer has

27  actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice

28  
---
[5]      The FAC alleges this in the present tense, but does not allege that these requirements also applied in 2016 when Voyager UK allegedly created Facebook/Instagram accounts.

1  theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the

2  consumer will be bound; and (2) the consumer takes some action, such as clicking a button or

3  checking a box, that unambiguously manifests . . . assent to those terms.").

4       Meta never explains how or who at Voyager UK was placed on notice of the contract terms

5  to which it allegedly agreed.  Meta does not allege that anyone at Voyager UK was presented with

6  any textual notice that continued use of a website would bind it to any particular set of terms—let

7  alone seven categories of potentially applicable terms.  *See Long v. Provide Com., Inc.*, 245 Cal. App.

8  4th 855, 867, 200 Cal. Rptr. 3d 117, 126 (2016) ("[T]o establish the enforceability of a browsewrap

9  agreement, a textual notice should be required to advise consumers that continued use of a Web site

10  will constitute the consumer's agreement to be bound by the Web site's terms of use."); *Be In, Inc.*,

11  2013 WL 5568706, at *9 ("Because browsewrap agreements, where enforceable, are a powerful

12  means of binding users with very little affirmative assent, a complaint must state facts establishing

13  the means by which the link in question would give notice to a reasonably prudent internet user.").[6]

14       Meta's failure to supplement its deficient pleading with factual allegations sufficient to

15  support an inference of Voyager UK's acceptance of contract terms under either a "clickwrap" or a

16  "browsewrap" standard therefore warrants dismissal of the FAC.

17      **B.**    **Meta Fails to Sufficiently Allege How Voyager UK is Bound by the Actions of**
18            **the Non-Party Entities**

19       The FAC conflates the alleged actions of Voyager UK—the only named defendant—with

20  those allegedly taken by the Non-Party Entities.  Meta alleges that because Voyager UK exerts

21  "complete control" over the Non-Party Entities, Voyager UK should "therefore be held responsible

22  for the activities of its subsidiaries as if [it] was the actor."  (FAC ¶¶ 7.)  Like the original Complaint,

23  the FAC appears to be relying on an "alter ego" theory for its breach claim.

24

25

---

26  [6] *See also Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV99–7654, 2003 WL 21406289, at *2 (C.D.
Cal. Mar. 7, 2003); *Cvent Inc. v. Eventbrite*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010) ("[I]n order

27  to state a plausible claim for relief based upon a browsewrap agreement, the website user must have
had actual or constructive knowledge of the site's terms and conditions, and have manifested assent

28  to them.") (citing *Sw. Airlines Co. v. BoardFirst, LLC*, No. 3:06–CV–0891–B, 2007 WL 4823761 at
*5 (N.D. Tex. Sept. 12, 2007)).

Under California law,[7] this rarely applied theory may permit a parent corporation to be held liable for the actions of its otherwise independent subsidiaries, but not unless a plaintiff has first met specific and exacting pleading standards.  "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting . . . the necessary elements."  *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015); *see also Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006) (dismissing claims because "Plaintiffs' introductory allegation that all defendants are each agents and employees of the other is conclusory and . . . unavailing").  Meta fails to meet the foregoing standards, and thus any claim based on the Non-Party Entities' actions should be dismissed.

### 1.    "Alter Ego" Is a Rare Exception That Requires Additional Facts

"Alter ego is an extreme remedy, sparingly used."  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000) (citing cases).  As a general rule, the formal corporate separation between a parent corporation and its subsidiaries "insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  Under California law, the rare "alter-ego" exception applies only "when the corporate form is used for *a wrongful or inequitable purpose*, [in which case] a court may disregard the corporate form and impute the acts of a subsidiary to the parent. . . [in order to] prevent[] a parent corporation from escaping liability by *abusing corporate privilege* through a subsidiary that is, in effect, *a sham corporation*, to commit wrongful acts."  *Masimo Corp. v. Sotera Wireless*, No. 19-cv-01100-BAS-NLS, 2020 U.S. Dist. LEXIS 232276, at *26-27 (S.D. Cal. Dec. 9, 2020) (citing cases) (emphasis added).

A plaintiff may invoke the alter ego doctrine only "where some conduct amounting to *bad faith* makes it inequitable for the corporate owner to hide behind the corporate form."  *Sonora Diamond*, 83 Cal. App. 4th at 539 (emphasis added).  Given this focus on deliberate, inequitable conduct intended to defraud or mislead counterparties, a plaintiff seeking to advance an alter ego theory must plausibly allege facts showing that "(1) there is such a unity of interest that the separate

---

[7] California law governs whether Meta has sufficiently pleaded alter ego liability.  *See Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1037 (9th Cir. 2010).

1  personalities of the corporations no longer exist; and (2) inequitable results will follow if the corporate

2  separateness is respected." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994);

3  *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (restating elements).

4  Meta has twice failed to plausibly allege either of those elements.

5                    *(a)      Meta Has Twice Failed to Plead "Unity of Interests"*

6          To properly plead unity of interests, it is not enough to plead the mere "fact of control" of one

7  entity over another, as Meta does in the FAC (and as Meta did in the original Complaint). *Katzir's*

8  *Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004).  Nor is it enough

9  to plead "[t]otal ownership and shared management" between two entities. *Ranza*, 793 F.3d at 1073

10  (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).

11  Instead, a plaintiff must plausibly allege "pervasive control over [a] subsidiary, such as when a parent

12  corporation dictates *every facet of the subsidiary's business—from broad policy decisions to routine*

13  *matters of day-to-day operation.*"  *Id.* (emphasis added) (quotation marks and citations omitted).

14  California courts consider several factors to determine whether a parent-subsidiary relationship

15  reflects pervasive control, including:  "the commingling of funds and other assets of the entities, the

16  holding out by one entity that it is liable for the debts of the other, identical equitable ownership of

17  the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs

18  of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of

19  corporate records, and identical directors and officers." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040

20  (N.D. Cal. 2014) (citing cases).

21          Here, Meta fails to allege any facts relating to the foregoing factors, which alone "weighs

22  against a finding of alter ego liability." *Stewart v. Screen Gems–EMI Music, Inc.*, 81 F. Supp. 3d

23  938, 955 (N.D. Cal. 2015).  Instead of addressing the above factors, the FAC repeats a single

24  paragraph from the original Complaint with three inadequate allegations.

25          *First*, Meta alleges that Voyager UK "exercises complete control over its subsidiaries—

26  including governing the subsidiaries' financial and operating policies." (FAC ¶ 7.) Meta's conclusory

27  statement applies only to the Non-Party Entities' "financial and operating policies"—not to every

28  facet of their operations.  In any event, the Ninth Circuit has rejected alter ego liability where a

plaintiff bases such claims on "formulation [by a parent corporation] of general business policies and strategies applicable to its subsidiaries, including specialization in particular areas of commerce." *Doe v. Unocal Corp.*, 248 F.3d 915, 927-28 (9th Cir. 2001); *see also Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 988 (C.D. Cal. 2013) ("[E]vidence of general policy-setting is insufficient to show the requisite unity of interest between the two companies").

*Second*, the FAC alleges that Voyager UK "files annual reports that consolidate [Voyager UK]'s and its subsidiaries' financial statements."  (FAC ¶ 6.)  But that is insufficient to support an inference that unity of interests exists.  *See Tomaselli*, 25 Cal. App. 4th at 1285 (finding that allegations, which included claims that corporate entities "had consolidated financial statements" were "woefully short of the showing on which alter ego normally rests"); *Uniloc 2017 LLC v. H&R Block, Inc.*, No. SACV 19-1149 JVS (KESx), 2019 U.S. Dist. LEXIS 229166, at *10 (C.D. Cal. Dec. 23, 2019) (noting that "consolidated financial statements are insufficient to satisfy the alter ego test") (citing cases); *see also Unocal Corp.*, 248 F.3d at 928 (recognizing that "references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship").

*Finally*, the FAC alleges that "at least [Voyager UK] and Voyager Analytics, Inc. both operate under the name 'Voyager Labs.'"  (FAC ¶ 7.)  As an initial matter, this allegation cannot establish Voyager UK's unity of interests with Bionic 8 Analytics, Inc. or Novarize Inc.  But even with respect to Voyager Analytics, Inc., unity of interests cannot be plausibly pleaded merely by alleging that two distinct corporations sometimes operate under the same name.  *See, e.g.*, *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865, at *18 (N.D. Cal. Mar. 5, 2012) (determining that "the alleged failure of [] marketing materials to distinguish among the corporate defendants" was insufficient to plead the unity of interests necessary to support alter ego liability); *Hong Kong uCloudlink Network Tech. Ltd. v. Simo Holdings, Inc.*, No. 18-cv-05031-EMC, 2019 WL 331161, at *8 (N.D. Cal. Jan. 25, 2019) (finding that references to separate entities using a single name was insufficient to plead the necessary unity of interests for an alter ego relationship).  Taken to its logical conclusion, Meta's position would be tantamount to an admission

1  that Meta Platforms Ireland Limited ("Meta Ireland") is its alter ego because both Meta and Meta

2  Ireland operate using the common business monikers "Facebook" and "Instagram."

3  　　　The FAC thus fails to allege any facts to support a reasonable inference that Voyager UK has

4  the requisite "unity of interests" necessary to establish that the Non-Party Entities are merely its alter

5  ego, and instead includes scant allegations that courts have found insufficient.  On this basis alone,

6  Meta's alter ego theory fails.

7  　　　　　　　　*(b)*　　*Meta Fails to Plead "Inequitable Results" If Alter Ego is Rejected*

8  　　　Meta also fails to plead facts sufficient to create a reasonable inference that unless the Non-

9  Party Entities are deemed to be the alter ego of Voyager UK, "inequitable results" would occur, as

10  required under the second prong of the alter ego test.  The types of allegations necessary to meet this

11  second prong typically amount to "bad faith," such as fraud or deliberate undercapitalization of a

12  subsidiary.  *Gerritsen*, 116 F. Supp. 3d at 1138, 1143 (citation omitted).  "Without such evidence, the

13  alter ego doctrine cannot be invoked."  *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539.

14  　　　Meta does not plead that any "inequitable result" would follow if the corporate separateness

15  of the four entities mentioned in the FAC is maintained.  Nor does Meta plead any facts that would

16  support a reasonable inference that Voyager UK took any actions in bad faith, exerted manipulative

17  control over the Non-Party Entities, engaged in any fraudulent conduct, or that any of the Non-Party

18  Entities were deliberately undercapitalized.  This failure thus provides a separate and independent

19  basis for rejecting all claims for relief based on the actions of any of the Non-Party Entities.  *See, e.g.*,

20  *Women's Recovery Ctr., LLC*, 2022 WL 739522, at *4.

21  　　　　　　　**2.**　　**The FAC Fails to Plausibly Allege an Agency Theory**

22  　　　Meta may argue that, either in addition to or in lieu of an alter ego theory, the Non-Party

23  Entities are agents of Voyager UK, and that this agency relationship provides the basis for its breach

24  claim, despite the absence of any such explicit allegation in the FAC.  But even if the FAC were read

25  in this way, Meta's breach claim should still be dismissed because the FAC pleads no facts from

26  which a reasonable factfinder could plausibly conclude that the Non-Party Entities are agents of

27  Voyager UK.  *See, e.g.*, *Hospitality Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, No. 15-cv-

28

1  01791 JVS (DFMx), 2016 WL 9045621, at *4-5 (C.D. Cal. Jan. 28, 2016) (rejecting agency liability

2  where the complaint merely alleged that two entities were the agents of another).

3      Indeed, the hallmark of an agency relationship is that "the alleged agents had actual or

4  apparent authority to act on behalf of another." *Gunderson v. ADM Investor Servs., Inc.*, 85 F. Supp.

5  2d 892, 905 (N.D. Iowa 2000); *see also Allied Prods. Corp. v. Electric & Gas Tech.*, *Inc.*, No. 97 C

6  5256, 1998 WL 173305, at *2 (N.D. Ill. Apr. 8, 1998) (same).  But the FAC alleges no such thing; it

7  never contends that any of the Non-Party Entities had actual or apparent authority to act on behalf of

8  Voyager UK.  Instead, the FAC relies solely on the unsupported and conclusory allegation that

9  Voyager UK can "be held responsible for the activities of its subsidiaries."  (FAC ¶ 7.)  That is

10 insufficient.  *See, e.g.*, *Women's Recovery Ctr., LLC*, 2022 WL 739522, at *3 (bare invocation of

11 agency theory is insufficient); *see also Prochaska & Assocs. v. Merrill Lynch Pierce Fenner & Smith,*

12 *Inc.*, 798 F. Supp. 1427, 1432 (D. Neb. 1992) (finding that a "bald" allegation of agency "is by itself

13 a mere legal conclusion and is therefore insufficient").  Likewise, Meta fails to allege that Voyager

14 UK has "manifest[ed] assent to [an agent] that the agent shall act on [its] behalf and subject to [its]

15 control."  *See* Restatement (Third) of Agency § 1.01 (2006).

16     **3.      Because Meta Fails To Plausibly Allege Alter Ego or Agency Liability,**
           **Its Breach of Contract Claim Should Be Dismissed**
17

18     Meta's claim for breach of contract "realleges and incorporates all preceding paragraphs,"

19 including the paragraph in which Voyager UK was alleged to be liable for all acts performed by the

20 Non-Party Entities, and then alleges that "Defendant, through its employees and agents, created and

21 used multiple Facebook and Instagram accounts and thereby agreed to Facebook's and Instagram's

22 Terms."  (FAC ¶¶ 80, 81.)  In other words, Meta's breach of contract claim advances a theory of

23 contract formation that is based on certain employees and agents.  But if such employees and agents

24 are those of just the *Non-Party Entities*, then even if taken as true, these allegations cannot reasonably

25 support the inference that *Voyager UK* is liable for such conduct.

26     The FAC does not provide the requisite level of detail that would enable a Court to attribute

27 responsibility for the conduct of the Non-Party Entities to Voyager UK under either alter ego or

28 agency theories, and Meta's vague allegations do not provide "fair notice of what the . . . claim is and

1  the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  The claims based on these theories

2  should therefore be dismissed under Rule 12(b)(6) because they fail to "plead[] factual content that

3  allows the court to draw the reasonable inference that the *defendant* is liable for the misconduct

4  alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

5  **C.**   **Meta's Breach Claim Should Be Dismissed with Prejudice**

6      Meta has now had multiple chances to state a plausible breach of contract claim, and it missed

7  the mark each time.  The First MTD and Second MTD raised each of the points above, and yet Meta

8  chose not to address any of them in the FAC or in another amended pleading.  As but one example,

9  even as Meta took the time and effort to add new exhibits to the FAC (including Exhibits 1 and 6),

10  Meta apparently could not locate the actual contracts that Voyager UK is alleged to have entered and

11  attach those as exhibits.  Nor could Meta marshal any facts to support its alter ego or agency theories,

12  instead choosing merely to repeat bare, conclusory statements.   Meta is a sophisticated entity,

13  represented by sophisticated counsel, and it obviously knows how to assert a plausible contract claim

14  when the facts support such a claim.  But Meta clearly cannot do so here.  And because Meta has

15  indisputably been on notice of the deficiencies in its original breach claim (and in its alter ego/agency

16  theories) for more than a year, and has not been able to remedy them in the FAC, those claims should

17  be dismissed with prejudice.  *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012)

18  (dismissing claims with prejudice and noting that "Defendant's first motion to dismiss placed

19  Plaintiffs on notice regarding the deficiencies of these claims in the complaint, and Plaintiffs failed

20  to cure the defects in the Amended Complaint"); *Teamsters Local 617 Pension & Welfare Funds v.*

21  *Apollo Group, Inc.*, 282 F.R.D. 216, 236 (D. Ariz. 2012) (noting that "a plaintiff's failure to correct

22  the deficiencies in its FAC is a strong indication that the plaintiffs have no additional facts to plead").

23  The Court should therefore exercise its "particularly broad discretion" to dismiss with prejudice

24  where a sophisticated plaintiff could have remedied its pleading deficiencies but failed to do so.  *Id.*

25  (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)).

26  **D.**   **The Court Lacks Personal Jurisdiction Over the CFAA & CDAFA Claims**

27      Meta offers two bases for specific personal jurisdiction over Voyager UK for the CFAA and

28  CDAFA Claims: (i) a forum selection clause in an unspecified contract that has not been submitted

1    to the Court; and (ii) the allegation that Voyager UK individually targeted California-based Meta and

2    certain California-based Meta users, and marketed, offered, and distributed software to one or more

3    customers in California.  Those should be rejected.

### 1.    No Forum Selection Clause Confers Personal Jurisdiction for the CFAA & CDAFA Claims

6         The FAC's principal basis for personal jurisdiction over Voyager UK is a forum selection

7    clause in Facebook and Instagram's terms of use/service.  That theory fails for three reasons: (i) by

8    failing to clearly identify the alleged forum selection clause, Meta has presented only a legal

9    conclusion; (ii) Voyager UK has never agreed to any Meta terms of service or use, and therefore

10   cannot be bound by any such clause; and (iii) even if Voyager UK had agreed to Meta's unidentified

11   terms of service or use, that is irrelevant to whether personal jurisdiction exists for the CFAA and

12   CDAFA claims, because they are non-contractual claims.

13        *First,* Meta's failure to quote or attach the alleged forum selection clause(s) is alone fatal to

14   its argument that such a clause confers personal jurisdiction.  As California courts have repeatedly

15   observed, "[i]t . . . falls to the Court to interpret [disputed] forum selections clauses" under federal

16   law by looking to the actual "forum selection provisions of the contact in question."  *Competent*

17   *Software Pvt. Ltd. v. Corelogic Sol'ns, LLC*, No. 19-cv-2161-DOC-KES, 2020 WL 133688, at *2

18   (C.D. Cal. Jan. 13, 2020); *see also McNally v. Kingdom Trust Co.*, No. 20-cv-830-DOC-MRW, 2020

19   WL 7786539, at *1-2 (C.D. Cal. Nov. 13, 2020) (when considering a forum selection clause, the court

20   must "first address whether [it] is mandatory or permissive and whether the action falls within [its]

21   scope" by considering "the contract's plain language").  Without the relevant forum selection clause,

22   the Court cannot assess its coverage or applicability.  *See Kevcon, Inc. v. L.B. Contracting, LLC*, No.

23   12-cv-2014 BEN (BLM), 2013 WL 78962 (S.D. Cal. Jan. 3, 2013) (granting motion to dismiss for

24   lack of personal jurisdiction based on analysis of actual language of forum selection clause); *Mardis*

25   *v. Jackson Hewitt Tax Service Inc.*, No. 16-cv-2115, 2019 WL 7207551, at *4-6 (D.N.J. Dec. 26,

26   2019) (performing a detailed analysis of whether, under the specific language of the forum selection

27   clause, it applied to the particular defendants and claims asserted).  Meta's FAC alleges only that

28   "Facebook's Terms of Service, Meta's Commercial Terms, and Instagram's Terms of Use each . . .

1    contain[s] a forum selection clause that requires Defendant to submit to the personal jurisdiction" of

2    this Court.  That is a legal conclusion that is entitled to no weight.  *See Iqbal*, 556 U.S. at 678.

3         *Second*, Voyager UK never "had multiple Facebook and Instagram accounts," and never

4    "thereby agreed to" any of Meta's terms of service or use.[8]  (Bromley Decl. ¶¶ 20, 23.)  Voyager UK

5    is therefore not bound by any of those terms.  *See, e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279,

6    294 (2002) ("The general rule is 'that a contract cannot bind a nonparty.'") (citations omitted).  And

7    while Meta's jurisdictional allegations in the FAC do not explicitly assert that Voyager UK should be

8    bound by an agreement between Meta and any of the Non-Party Entities, Meta elsewhere alleges

9    generally that Voyager UK can "be held responsible for the activities of its subsidiaries."  (FAC ¶ 7.)

10    To the extent this is construed as pleading (i) that one or more of the Non-Party Entities agreed to a

11    forum selection clause and (ii) that Voyager UK is bound as a non-party to such an agreement, such

12    a theory should also be rejected.  *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 589-90 (N.D. Cal.

13    2022) (citing cases and noting that "[m]ost district courts that have considered whether a plaintiff

14    may enforce a forum selection clause to establish personal jurisdiction over non-signatory defendants

15    have rejected such attempts because a non-signatory defendant to a contract has not consented to

16    jurisdiction"); *Pestmaster Franchise Network, Inc. v. Mata*, No. 16-cv-07268-EMC, 2017 WL

17    1956927, at *4-5 (N.D. Cal. May 11, 2017) (granting motion to dismiss for lack of personal

18    jurisdiction and determining that forum selection clause could not be used to establish jurisdiction

19    over non-signatory that was not "intimately involved in the formation and execution of the

20    contracts"); *FTC-Forward Threat Control, LLC v. Dominion Harbor Enterprises, LLC*, Case No.

21    5:19-cv-06590, 2020 WL 5545156, at *6 (N.D. Cal. Sept. 16, 2020) (determining that "Movants did

22    not sign the Agreement, did not consent to the forum selection clause, and therefore are not subject

23    to the jurisdiction of California courts absent other countervailing considerations").

24         *Third*, even if the Court were to conclude that Voyager UK is bound by a forum selection

25    clause that appears in Facebook's or Instagram's Terms of Use (whatever those might be), Meta's

26    interpretation of that clause as conferring jurisdiction over statutory claims would violate due process

27

---

28    [8] In the context of resolving a jurisdictional challenge, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

by essentially subjecting a foreign defendant to general jurisdiction.  *Abelesz v. OTP Bank*, 692 F.3d 638, 657 (7th Cir. 2012) ("Nor are . . . forum-selection clauses[] sufficient to establish general jurisdiction."); *Vangura Kitchen Tops, Inc. v. C&C N. Am., Inc.*, No. 08-cv-1011, 2008 WL 4540186, at *9 (W.D. Pa. Oct. 7, 2008) (noting that "a forum selection clause . . . does not suffice to give [California] general jurisdiction over [a defendant] for all purposes, or specific jurisdiction [for claims that] do not arise from [the parties'] agreement"); *Daniels Agrosciences, LLC v. Ball DPF, LLC*, No. 13-cv-268, 2013 WL 5310208, at *4, 7 (D.R.I. Sept. 20, 2013) (rejecting argument that forum selection clause applies to "all" disputes between the parties because "[f]orum selection clauses … are not sufficient to establish general jurisdiction").  Thus, even if a forum selection clause appears in some set of terms of use or service to which Voyager UK agreed (which it did not), then specific personal jurisdiction over the CFAA and CDAFA claims could be conferred only if those claims arise from that particular contract.  They do not.

On the contrary, Meta contends that a CFAA violation occurred because Defendant accessed "Meta's protected computers without authorization," and that a CDAFA violation occurred because Defendant accessed and otherwise used "Meta's computers . . . without permission."  (FAC ¶¶ 93, 97-102.)  The terms of service and use that allegedly contain the forum selection clause are not a basis for either claim; on the contrary, the reason that Defendant allegedly acted "without authorization" for purposes of the CFAA is because Meta "revoked Defendant's access to Facebook and Instagram, including by sending cease-and-desist letters, disabling Defendant's accounts, and filing a civil action," while the reason that Defendant allegedly acted "without permission" for purposes of the CDAFA is because "Meta revoked Defendant's access to Facebook and Instagram and filed a civil action against Defendant."  (*Id.* (emphasis added).)  Thus, Meta's CFAA and CDAFA claims are independent from the first cause of action; in fact, they are necessarily premised on Meta having terminated any alleged contracts with Voyager UK.  Indeed, as Meta well knows, a CFAA claim cannot arise from an alleged violation of a website's terms of service or use.  *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("[A] violation of the terms of a website—without more—cannot establish liability under the CFAA.").

1    **2.    <u>Voyager UK Lacks Sufficient Minimum Contacts to Confer Specific
2         Personal Jurisdiction Over the CFAA and CDAFA Claims</u>**

3         Meta also asserts two different types of minimum contacts allegedly give rise to specific

4    personal jurisdiction over Voyager UK: (i) the individualized targeting of Meta and certain Meta

5    customers that are based in California; and (ii) marketing, offering, and distributing software to

6    California-based customers, including the Los Angeles Police Department ("LAPD").  Meta's first

7    set of alleged contacts is insufficient under well-established Supreme Court law.  And Voyager UK

8    has not engaged in any conduct in Meta's second set of alleged contacts.

9         *First*, Meta's theory of individualized targeting—of California-based Meta and of California-

10   based Meta customers—was specifically rejected by the Supreme Court in *Walden v. Fiore*, 571 U.S.

11   277 (2014).   In *Walden*, the Supreme Court found that harm suffered by a plaintiff or other third

12   parties in the forum state from a foreign defendant's actions was insufficient to satisfy due process—

13   even when the defendant knows that its conduct is directed to entities based in the forum state.  *Id.* at

14   289-90; *see also Adobe Sys. Inc. v. Nwubah*, No. 18-cv-6063, 2019 WL 6611096, at *6 (N.D. Cal.

15   Dec. 5, 2019) (noting that "the Supreme Court has stressed that specific personal jurisdiction must

16   arise from a defendant's own contacts with the forum state, not from plaintiff's or a third party's

17   contacts with the forum"); *see also Wescott v. Reisner*, No. 17-cv-06271, 2018 WL 2463614, at *3

18   (N.D. Cal. June 1, 2018) ("The fact that [plaintiff] experiences his financial injury in California

19   because he happens to live here does not establish jurisdiction," because "'mere injury to a forum

20   resident is not a sufficient connection to the forum . . . .'") (citations omitted); *Republic of Kazakhstan

21   v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897, at *7 (N.D. Cal. Dec. 21, 2017) ("The mere

22   fact that Google—the company that owns the servers—is headquartered in California is not enough

23   to establish that Khrapunov, a Kazakh citizen who resides in Switzerland, expressly aimed his alleged

24   conduct at California.").  Thus, the Court should not engage in an injury-focused inquiry, but rather

25   must engage in a conduct-focused inquiry, such that "[t]he proper question is not where the plaintiff

26   experienced a particular injury or effect but whether the defendant's conduct connects him to the

27   forum in a meaningful way." *Walden*, 571 U.S. at 290.  And yet, Meta's minimum contacts allegations

28   in the FAC are injury-focused—i.e., Meta alleges that individuals and entities in California have been

1   targeted by Voyager UK, which is precisely the sort of argument rejected by the Supreme Court in

2   *Walden*.   Thus, even if such "targeting" occurred (which it did not) and even if Voyager UK

3   knowingly targeted California-based individuals and entities (which it did not), that would still be

4   insufficient to satisfy due process for purposes of specific personal jurisdiction.  Moreover, it is not

5   clear where Meta alleges that Voyager UK's actions occurred—presumably, if Voyager UK took any

6   alleged action (whether targeted at California or otherwise), it would have been in the United

7   Kingdom.   Meta does not appear to be alleging that Meta's computers *in California* were accessed

8   "without authorization" or "without permission," but rather only that Meta itself (along with certain

9   of its users) reside in California.  Indeed, the only computer server alleged to have accessed a Meta

10  website is in Virginia, not in California.  (FAC ¶ 53.)  Thus, even if those allegations in the FAC are

11  taken as true, they are insufficient as a matter of law to constitute minimum contacts.

12          *Second*, Voyager UK does not individually target Meta or Meta's California-based customers;

13  does not market, offer, or distribute software to California-based customers, including the LAPD; and

14  does not employ anyone that the FAC alleges has taken action in California.  (Bromley Decl. ¶¶ 16-

15  18, 21.)   Indeed, Voyager UK has no offices, employees, officers, directors, or operations in

16  California, and has no contracts that were made in California or governed by California law, and thus

17  could not have anticipated that it would be haled into court in California absent waiver of personal

18  jurisdiction (which it has provided only for the first cause of action in this litigation).  (*Id.* ¶¶ 11-13,

19  21, 25.)  Voyager UK therefore has not purposefully directed any activities at California.  *See, e.g.*,

20  *ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) (affirming

21  dismissal for lack of personal jurisdiction where an "uncontroverted declaration" established a lack

22  of purposeful direction towards the forum state); *Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950 (JLS)

23  (ADS), 2020 WL 3883273, at *4 (C.D. Cal. May 20, 2020) (dismissing action for lack of personal

24  jurisdiction in part based on declarations "disavowing any involvement" in the activities alleged to

25  have been directed to the forum state).

26          Moreover, while Meta has not explicitly alleged alter ego or agency theory as a basis for

27  specific personal jurisdiction, Meta has failed to plead any facts that would support conferring

28  jurisdiction over Voyager UK by virtue of the actions of one or more of the Non-Party Entities, for

the reasons discussed above.  *See* Section IV.B., *supra*; *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983-84 (N.D. Cal. 2016) (granting motion to dismiss for lack of personal jurisdiction although parent and subsidiary had "overlapping officers and directors," presented themselves "as one integrated company on [their] website and in government filings" and that the parent had "been involved in discrete business decisions of" the subsidiary).  Indeed, under well-established precedent, the court must "start with the firm proposition that neither ownership nor control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business."  *Sonora Diamond Corp. v. Superior Ct. of Tuolumne Cty.*, 83 Cal. App. 4th 523, 541 (2000).  "As a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations." *Id.* at 542.  Meta's conclusory allegation that Voyager UK exercises "complete control" over its subsidiaries thus cannot justify attributing contacts that third-parties might have with California to Voyager UK for jurisdictional purposes.

## CONCLUSION

For the above reasons, Meta has failed to state a claim for breach of contract, and that claim should be dismissed with prejudice pursuant to Rule 12(b)(6).  Meta has also failed to satisfy its burden of showing that this Court can exercise personal jurisdiction over Voyager UK for the remaining claims of the FAC, and thus they should be dismissed with prejudice as well.


Dated:  February 8, 2024                                      GISH PLLC
                                                                             By: */s/ Edward L. Tulin*_____
                                                                             EDWARD L. TULIN
                                                                             Attorneys for Defendant Voyager Labs Ltd.