KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
OLEG ELKHUNOVICH (269238)
oeklhunovich@susmangodfrey.com
MICHAEL GERVAIS (330731)
mgervais@susmangodfrey.com
LEAR JIANG (338600)
ljiang@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

CHANLER LANGHAM (Pro Hac Vice)
clangham@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas  77002-5096
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

Attorneys for Plaintiff Meta Platforms, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| META PLATFORMS, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>VOYAGER LABS LTD., a United Kingdom corporation,<br><br>        Defendant. | Case No. 3:23-cv-00154-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT VOYAGER LABS LTD.'S RENEWED MOTION TO DISMISS**<br><br>Hearing Date: April 4, 2024<br>Hearing Time: 2:00 p.m.<br>Judge: Honorable Araceli Martinez-Olguin<br><br>FAC Filed: May 5, 2023 |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND .................................................................................................. 2

      A.    Facebook and Instagram ........................................................................ 2

      B.    Voyager Labs Ltd. ................................................................................. 3

      C.    Voyager's Scraping Activities and Targeting of California............... 4

      D.    Meta's Enforcement Actions Against Voyager .................................... 5

III.    LEGAL STANDARDS ....................................................................................... 6

IV.   ARGUMENT ....................................................................................................... 7

      A.    Meta has Alleged a Breach of Contract Claim Against Voyager Labs
           Ltd............................................................................................................ 7

           1.    The FAC Pleads Facts Sufficient to Show Specific Provisions
               of Facebook's Terms of Service and Instagram's Terms of Use
               that Voyager Breached ............................................................... 8

           2.    Voyager Agreed to Facebook's and Instagram's Terms Because
               Voyager Created, Controlled, and Used Facebook and
               Instagram Accounts ................................................................. 10

           3.    Voyager's Correspondences with the LAPD Create the
               Inference that Voyager Created and Used Facebook and
               Instagram and Agreed to Their Terms ...................................... 13

           4.    The Court Cannot Consider the Bromley Declaration ............... 14

      B.    Meta Has Sufficiently Alleged a Claim for Breach Against Voyager
           Without Need for a Theory of Vicarious Liability ................................ 15

           1.    Meta has Sufficiently Alleged a Breach Claim Against Voyager
                Labs Ltd. ................................................................................... 15

            2.    Even if Implicated, Meta's FAC Alleges Alter Ego and Agency
               Liability ................................................................................... 16

      C.    The Court has Personal Jurisdiction over Voyager to Adjudicate Meta's
           CFAA and CDAFA Claims .................................................................. 19

           1.    Voyager Expressly Consented to Jurisdiction in its Case
                Management Statement ............................................................. 20

           2.    Voyager Consented to Jurisdiction by Agreeing to a Forum-
                Selection Clause ...................................................................... 21

           3.    The Court has Specific Personal Jurisdiction over the
                CFAA/CDAFA Claims ............................................................ 22

      D.    If the Court Grants any Portion of Voyager's Motion to Dismiss, the
           Court Should Grant Leave to Amend ...................................................... 25

V.      CONCLUSION .................................................................................................. 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. EmbroideryInc.*,
    368 F.3d 1174 (9th Cir. 2004) ................................................................. 20

*AK Futures LLC v. LCF Labs Inc.*,
    No. 21-cv-02121, 2022 WL 16859970 (C.D. Cal. Oct. 5, 2022) ............................... 9

*Alexander Assocs., Inc. v. FCMP, Inc.*,
    No. 10-cv-12355, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012) .......................... 16

*Am. W. Airlines, Inc. v. GPA Grp., Ltd.*,
    877 F.2d 793 (9th Cir. 1989) ................................................................. 24

*Automattic, Inc. v. Steiner*,
    82 F. Supp. 3d 1011 (N.D. Cal. 2015) ...................................................... 21

*Barantsevich v. VTB Bank*,
    954 F. Supp. 2d 972 (C.D. Cal. 2013) ...................................................... 18

*Be In, Inc. v. Google Inc.*,
    No. 12-cv-03373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ............................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 7

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ................................................................. 11

*Cadence Design Sys., Inc. v. Pounce Consulting*,
    No. 17-cv-04732, 2019 WL 1768619 (N.D. Cal. Apr. 1, 2019) ............................... 18

*City and Cnty. of San Francisco v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ...................................................... 18

*Daimler Trucks N.A. LLC v. Superior Ct.*,
    80 Cal. App.5th 946 (Cal. Ct. App. 2022) .............................................. 23, 25

*Dana Innovations v. Trend Elecs. Int'l Inc.*,
    No. 22-cv-02155, 2023 WL 3335909 (C.D. Cal. Apr. 21, 2023) ............................. 20

*Dependable Highway Express, Inc. v. RIM Logistics, Ltd.*,
    No. 18-cv-04261, 2018 WL 7500276 (C.D. Cal. Sept. 10, 2018) .............................. 8

*Dolin v. Facebook, Inc.*,
    289 F. Supp. 3d 1153 (D. Haw. 2018) .................................................. 12, 21

*Eclectic Props. East, LLC v. The Marcus & Millichap Co.*,
  No. 09-cv-00511, 2012 WL 713289 (N.D. Cal. Mar. 5, 2012) ................................................ 18

*Eller v. City of Santa Rosa*,
  No. 09-cv-01094 2009 WL 3517610 (N.D. Cal. Oct. 23, 2009) ........................................ 10, 13

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................................... 25

*Estate of Miller v. Cnty. of Sutter*,
  No. 20-cv-557, 2020 WL 6392565 (E.D. Cal. Oct. 30, 2020)................................................. 17

*Facebook, Inc. v. Gajjar*,
  No. 20-cv-02429, Dkt. 36 (N.D. Cal. Mar. 22, 2021)............................................................. 22

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ............................................................................................... 22

*Facebook, Inc. v. Rankwave Co., Ltd.*,
  No. 19-cv-03738, 2019 WL 8895237 (N.D. Cal. Nov. 14, 2019) ........................................... 23

*Facebook, Inc. v. Sahinturk*,
  No. 20-cv-08153, 2022 WL 1304471 (N.D. Cal. May 2, 2022)............................................... 24

*Facebook, Inc. v. Sluchevsky*,
  No. 19-cv-01277, 2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) .................................... *passim*

*Facebook, Inc. v. Trabi*,
  No. 19-cv-03738, Dkt. 15 (N.D. Cal. Aug. 2, 2019) .............................................................. 22

*Famous Birthdays, LLC v. SocialEdge, Inc.*,
  No. 21-cv-9562, 2022 WL 1591723 (C.D. Cal. Apr. 15, 2022)................................................. 7

*Franklin v. Facebook, Inc.*,
  No. 15-cv-00655, 2015 WL 7755670 (N.D. Ga. Nov. 24, 2015) ............................................ 12

*Fteja v. Facebook*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)............................................................................... 11, 12

*Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*,
  No. 18-cv-05031, 2019 WL 331161 (N.D. Cal. Jan. 25, 2019)............................................... 18

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................................................. 12

*In re Plantronics, Inc. Secs. Litig.*,
  No. 19-cv-07481, 2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) ............................................. 7

*Ind. Elec. Supply Inc. v. Solar Installs, Inc.*,
  No. 18-cv-01435, 2018 WL 6092800 (N.D. Cal. Nov. 21, 2018) ........................................... 18

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ................................................................................................. 20

*James River Ins. Co. v. DCMI, Inc.*,
    No. 11-cv-06345, 2012 WL 2873763 (N.D. Cal. July 12, 2012) ............................... 8

*Kaar v. Wells Fargo Bank, N.A.*,
    No. 16-cv-01290, 2016 WL 3068396 (N.D. Cal. June 1, 2016) ................................ 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................... 14

*Kidstar v. Facebook, Inc.*,
    No. 18-cv-13558, 2020 WL 4382279 (D.N.J. July 31, 2020) .................................. 12

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ................................................................................. 24

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) .................................................................................................... 21

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F. 2d 509 (9th Cir. 1988) ................................................................................. 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F. 3d 1025 (9th Cir. 2008) ................................................................................. 6

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F. 3d 1218 (9th Cir. 2011) ......................................................................... 23, 25

*Meta Platforms, Inc. v. Arowokoko*,
    No. 22-cv-00803, 2023 WL 3035454 (N.D. Cal. Feb. 24, 2023) ............................ 11

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) .................................................................. 10

*Meta Platforms, Inc. v. Social Data Trading Ltd.*, No. 21-cv-09807,
    2022 WL 18806267 (N.D. Cal. Nov. 15, 2022) ................................... 10, 11, 23, 24

*Mewawalla v. Middleman*,
    601 F. Supp. 3d 574 (N.D. Cal. 2022) ............................................................. 10, 20

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d. Cir. 2017) .................................................................................... 11

*Miller v. Facebook, Inc.*,
    No. 09-cv-2810, 2010 WL 9525523 (N.D. Ga. Jan. 15, 2010) ......................... 12, 22

*Misha Consulting Grp., Inc. v. Core Educ. And Consulting Solutions, Inc.*,
No. 13-cv-04262, 2013 WL 6073362 (N.D. Cal. Nov. 15, 2013) .......................................... 8, 9

*Moriarty v. Consolidated Funeral Servs., Inc.*,
No. 98-cv-2025, 1998 WL 748323 (N.D. Ill. Oct. 22, 1998) .................................................... 16

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ................................................................................................ 10

*Pac. Maritime Freight, Inc. v. Foster*,
No. 10-cv-0578, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) .............................................. 16

*Park v. Morgan Stanley & Co., Inc.*,
No. 11-cv-9466, 2012 WL 589653 (N.D. Cal. Feb. 22, 2012) .................................................. 9

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......................................................................................... 17, 19

*Rodriguez v. Instagram, LLC*,
No. 12-cv-06482, 2013 WL 3732883 (N.D. Cal. July 15, 2013) ............................................ 12

*Sandoval v. Ali*,
34 F. Supp.3d 1031 (N.D. Cal. 2014) ..................................................................................... 18

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2003) ................................................................................. 14, 15, 19, 23

*Shanghai Automation Instrument Co., Ltd. v. Kuei*,
194 F. Supp. 2d 995 (N.D. Cal. 2001) .................................................................................... 18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F. 3d 1035 (9th Cir. 2010) ................................................................................................. 7

*Sloane v. Karma Enterprises, Inc.*,
No. 08-cv-05094, 2008 WL 11342657 (C.D. Cal. Nov. 3, 2008) ........................................... 16

*Snow v. Eventbrite, Inc.*,
No. 20-cv-03698, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ............................................. 10

*Sonoma Cnty. Ass'n of Reitred Employees v. Sonoma Cnty.*,
708 F.3d 1109 (9th Cir. 2013) ................................................................................................ 25

*Thomas v. Facebook, Inc.*,
No. 18-cv-00856, 2018 WL 3915585 (E.D. Cal. Aug. 15, 2018) ...................................... 12, 21

*Thompson v. Los Robles Reg'l Med. Ctr.*,
No. 20-55771, 2021 WL 5002214 (9th Cir. Oct. 28, 2021) .................................................... 25

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
   108 F. Supp. 3d 816 (N.D. Cal. 2015) ...................................................................20

*Vaccarino v. Midland Nat'l Life Ins., Co.*,
   No. 11-cv-05858, 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011) ...............................9

*Warner Bros. Entm't, Inc. v. Free-TV-Video-Online.Info*,
   No. 08-cv-8484, 2009 WL 10673279 (C.D. Cal. June 24, 2009)...............................25

*Warwick v. Rejuvi Lab., Inc.*,
   No. 18-cv-02701, 2018 WL 3609089 (N.D. Cal. July 27, 2018) ...............................19

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) ...................................................................................24

*WhatsApp, Inc. v. NSO Grp. Techs. Ltd.*,
   472 F. Supp. 3d 649 (N.D. Cal. 2020) ...............................................................23, 24

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) .......................................................................8

*Wynes v. Kaiser Permanente Hosps.*,
   No. 10-cv-0702, 2011 WL 1302916 (E.D. Cal. Mar. 31, 2011)...................................8

*X Corp. v. Bright Data Ltd.*,
   2024 WL 422075 (N.D. Cal. Feb. 5, 2024) ...............................................................23

**Statutes**

Cal. Civ. Code § 2299....................................................................................................19

California Comprehensive Computer Data Access and Fraud Act ..........................*passim*

Federal Computer Fraud and Abuse Act ................................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(2)..................................................................................................19

Fed. R. Civ. P. 12(b)(6)....................................................................................................7

Fed. R. Civ. P. 15(a) ......................................................................................................25

Fed. R. Evid. 201 .......................................................................................................2, 14

## I.      INTRODUCTION

Defendant Voyager Labs Ltd. ("Voyager") has built a business around violating Facebook's Terms of Service and Instagram's Terms of Use. Voyager has developed, distributed, and used surveillance software that improperly relies on fake accounts to collect—or "scrape"—data from Facebook and Instagram through unauthorized, automated means. Between at least July 2022 and January 2023, Voyager created over 38,000 fake Facebook accounts, which it has used, to date, to scrape information from more than 600,000 Facebook users' viewable profiles, including from over 30,000 Facebook users in California. FAC ¶¶ 1, 14, 67. Voyager's activities violate Facebook's Terms of Service's and Instagram's Terms of Use's clear prohibitions on, *inter alia*, "access[ing] or collect[ing] data from [Meta] Products using automated means" and "sell[ing], licens[ing], or purchas[ing] any data obtained from" Facebook or Instagram. *Id*. at ¶¶ 27–31. Meta filed this action on January 12, 2023, to enforce its contractual rights, alleging a claim for breach of contract.

After Meta revoked Voyager's access to Facebook and Instagram, and even after Meta filed this action, Voyager continued to access and scrape data from Meta's services without authorization, and continued creating fake user accounts. For example, Voyager created over 17,000 new fake Facebook accounts after Meta filed suit to replenish the supply of accounts it uses for scraping (bringing its total to over 55,000 fake Facebook accounts created). *Id*. at ¶ 67. Voyager's persistent misconduct in continuing to access and use Meta's platforms without authorization prompted Meta to file the operative First Amended Complaint ("FAC") on May 5, 2023. The FAC alleges additional claims for violations of the federal Computer Fraud and Abuse Act ("CFAA") and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA").

Voyager's renewed motion to dismiss the FAC should be denied.   **First**, Voyager mischaracterizes the liberal standard applicable to pleading the existence of an agreement to a contract. Meta alleged facts sufficient to show Voyager agreed to Facebook's and Instagram's Terms by creating and using accounts, and that Voyager had notice of these Terms.  Meta's FAC quotes verbatim the specific provisions that Voyager has breached. Voyager's claim that it is not "on notice of the relevant contract terms" is simply not credible.  Dkt. 83 at 8.

**Second**, Voyager incorrectly argues that Meta must rely on theories of vicarious liability to

state a claim. Voyager misunderstands the FAC—Meta's allegations are directed at the Defendant, Voyager Labs Ltd. and the conduct of its employees, not some alter ego of Defendant's.[1]

**Third**, Voyager's argument that this Court does not have personal jurisdiction to adjudicate the CFAA and CDAFA claims is meritless. Voyager has: (1) already told this Court it consents to jurisdiction in the parties' April 11, 2023 Case Management Statement; (2) agreed to Facebook's forum-selection clause by creating and controlling thousands of accounts; and (3) specifically targeted conduct at California—including scraping the accounts of over 30,000 Facebook users in California, and providing scraping services for the Los Angeles Police Department ("LAPD"). Indeed, in a letter Voyager sent Meta in December 2022, Voyager's U.K. counsel *quoted Facebook's forum-selection clause* (the same clause it now claims ignorance of) and stated its "belief that California is appropriate for this matter." Gervais Decl. Ex. 4. Courts have also consistently held that scraping the profiles of thousands of Facebook users in California (as Voyager has done) is, standing alone, sufficient for a court to exercise personal jurisdiction. *See, e.g.*, *Facebook, Inc. v. Sluchevsky*, No. 19-cv-01277, 2020 WL 5823277, at *7 (N.D. Cal. Aug. 28, 2020), *R&R adopted* 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020). Voyager also provided scraping services for the LAPD, which evinces Voyager's purposeful direction to the State.

When accepting Meta's allegations in the FAC as true—as the Court must do when evaluating a motion to dismiss—Voyager cannot raise any *legal* arguments in support of its motion.[2] Voyager's renewed motion to dismiss should be denied.

## II.   BACKGROUND

### A.   Facebook and Instagram

Meta operates, among other products, Facebook and Instagram.  Everyone who signs up for or uses Facebook must agree to Facebook's Terms of Service, including rules like Facebook's

---

[1] Even if the Court considers Voyager's vicarious liability argument, Meta's FAC attached Voyager's financial statements disclosing commingled revenues, debts, and employees over which Voyager "has control."  This is more than sufficient to state a claim. *See* Section IV.B, *infra*.

[2] Voyager cites frequently to a declaration filed by its CEO in support of its arguments (the "Bromley Declaration"). The Court cannot consider the Bromley Declaration because it is not proper for judicial notice. *See* Fed. R. Evid. 201 (judicial notice only for facts "whose accuracy cannot reasonably be questioned"). At a minimum, the Bromley Declaration shows there are unresolved issues of fact that must be decided in Meta's favor at this stage. *See* Section IV.A.4, *infra*.

Community Standards (collectively, "Facebook's Terms").  *Id.* at ¶ 25.  Everyone who signs up for or uses Instagram must agree to Instagram's Terms of Use, including rules like Instagram's Community Guidelines (collectively, "Instagram's Terms").  *Id.* at ¶ 26.  No person can create a Facebook or Instagram user account without agreeing to each platform's Terms, and a person cannot access certain information and features without creating an account.  *Id.* at ¶¶ 25–26; 37(a).

Meta takes its users' privacy and user experience seriously, and developed Terms of Service for its products to achieve these goals. Facebook's Terms of Service prohibit users from "access[ing] or collect[ing] data from [Meta] Products using automated means (without [Meta's] prior permission) or attempt[ing] to access data you do not have permission to access"; and from "sell[ing], licens[ing], or purchas[ing] any account or data obtained from us or our Service."  *Id.* at ¶¶ 28, 31 (quoting Facebook's Terms of Service §§ 3.2.3; 3.2.5). They further prohibit "do[ing] … anything … unlawful, misleading … or fraudulent" on the platform, and requires that users "provide accurate information about yourself" to "[o]nly create one account (your own) … for personal purposes."  *Id.* at ¶¶ 27, 29 (quoting §§ 3.2.1; 3.1).   A person cannot use Facebook if Meta "previously disabled your account for violations of our Terms or the Community Standards, or other terms and policies that apply to your use of Facebook."  *Id.* at ¶ 30 (quoting § 3.1).

Instagram's Terms of Use similarly prohibit "do[ing] anything unlawful, misleading, or fraudulent"; from "access[ing] or collect[ing] [data] in unauthorized ways … [including] collecting information in an automated way without [Meta's] express permission"; and from "sell[ing], licens[ing], or purchas[ing] any account or data obtained from us or our Service." *Id.* at ¶¶ 27, 28, 31.  Instagram's Terms also prohibit anyone from using Instagram if Meta "previously disabled your account for violation of law or any of [Instagram's] policies." *Id.* at ¶ 30.

### B.   Voyager Labs Ltd.

Voyager is a privately owned, limited liability company registered in the United Kingdom. *Id.* at ¶ 5. According to Voyager, it develops, markets, and distributes software that "enable[s] traceless collection" and analysis of "massive amounts" of data from websites and "social media networks" like Facebook and Instagram (the "Surveillance Software"). *Id.* at ¶¶ 8, 39.  The Surveillance Software permits users to scrape data "anonymously, using multiple proxies from different locations

and multiple vendors, so that the collection process cannot be associated with [Voyager's] clients' servers by any 3rd party or by the social network itself." *Id*. at ¶ 39.

In public financial statements, Voyager describes itself as "head[ing] an international group of companies ('the Group')" that includes Voyager Analytics, Inc., Bionic 8 Analytics Ltd., and Novarize, Inc.  FAC Ex. 1. At 4, 31. The "Group" jointly reports revenues, costs, strategic risks, development strategy, and outlook. Voyager's "Annual Report and Consolidated Financial Statements for the Year Ended 31 December 2021" states, *inter alia*, that "[t]he Group develops and sells software solutions based on . . . big data analytics." *Id*. at 4. "The Group generate[s] revenues primarily in the form of software license fees and related maintenance and service fees," *id*. at 21, and "[t]he Group ended 2021 well capitalised, with $13,223 thousands . . . of total equity, $11,701 thousands . . . of cash and cash equivalents and $24,980 thousands . . . of total assets." *Id*. at 4. In 2021, the "[a]verage monthly number of persons employed by the Group" was 114, with "[e]mployment costs" totaling $17.486 million. *Id*. at 28.

The Group also shares costs and debts.  In 2021, "the Group [] secured a credit line from an Israeli bank and to date, has withdrawn the entire principal amount of $12 million. The Group [] also signed an agreement with its shareholders and received the funding of $ 5 million in . . . December 2022." *Id*. at 6.  "The Group makes significant investments in R&D every year," with "[t]he [G]roup [] incur[ing] $10,684 thousands in research and development expenditure" in 2021. *Id*. at 8.  The Group's "[r]esearch and development are performed in Israel." *Id*. Voyager also acknowledges that its "[s]ubsidiaries are all entities over which the Group has control," and that its "consolidated financial statements present the results of the Company and its subsidiaries . . . applying consistent accounting policies and after the elimination of intercompany transactions and balances between group companies." *Id*. at 21.

## C.   Voyager's Scraping Activities and Targeting of California

To facilitate its scraping activities, Voyager: (1) creates accounts on Facebook and Instagram; (2) sets up computer infrastructure, including IP addresses and servers to initiate data-scraping requests; and (3) uses and distributes its Surveillance Software to use the Facebook and Instagram accounts that it created to scrape data and pass information on to Voyager's customers. FAC ¶ 48.

Since at least July 2022, Voyager has used its Surveillance Software and over 55,000 fake Facebook accounts to collect information from more than 600,000 Facebook profiles, including from at least 30,000 Facebook users in California. *Id.* at ¶¶ 1, 14, 67.

Voyager's fake Facebook accounts typically have no friends or followers, do not include any profile information, and are generally registered using phone numbers with an Israeli country code (where Voyager performs its research and development) or with an email address sharing a similar pattern of letters and numbers. *Id.* at ¶ 49. Voyager uses these accounts to make automated requests for data from Meta's computers. The Surveillance Software is specifically designed to scrape "full coverage" of a social media profile, including scraping updates whenever "new data [is] added to the existing profile." *Id.* at ¶ 58. It is also programmed to scrape a user's timeline posts and friends list, and can be used to find specific Facebook and Instagram user accounts using "phone numbers, email addresses, name and picture." *Id.*

Voyager has performed services for, and marketed its Surveillance Software to, customers in California, including at least the LAPD. *Id.* at ¶ 14. In 2019 and 2020, Voyager provided scraping services for the LAPD, including services related to Facebook and Instagram. *E.g.*, FAC Ex. 3, 81–104 (providing a "user guide" related to Voyager's offerings for Facebook). And Voyager's correspondences with the LAPD indicate that it was intimately aware of when Facebook and Instagram enacted "recent updates" that affected the Surveillance Software's performance on Meta's platforms. *E.g.*, FAC Ex. 5 at 442. Voyager also sent the LAPD various "pricing proposals" in June, October, and November 2020, and in June 2021, in which Voyager solicited contracts for its services to the LAPD. FAC Ex. 3 at 15–19, 30–32, 209–10.

**D.   Meta's Enforcement Actions Against Voyager**

Since at least October 2017, Meta has notified Voyager that its scraping activities are prohibited and have taken enforcement actions against Voyager's misconduct. On October 16, 2017, Meta sent Voyager Labs a cease-and-desist letter stating that Facebook and Instagram "have developed their terms in order to protect their users" and that they "prohibit, among other things, automated access to either platform without express permission." FAC Ex. 4 at 2. The letter included links to Facebook's and Instagram's Terms for Voyager's reference. *Id.*

In August 2022, Meta required verification of 23,000 fake Facebook accounts associated with Voyager.  FAC ¶ 61.  Meta requested that each account verify the name listed on the account or to log into the account with a password. For example, one of the fake Facebook accounts Meta identified had the name "Olga Herrera."  "Olga Herrera" did not complete any user verification in response to Meta's initial request. *Id*. On November 11, 2022, Meta sent Voyager another letter, this time with details of the claims made in this lawsuit, and a further demand that Voyager immediately cease any violation of Facebook's and Instagram's Terms.  *Id*. at ¶ 62.  The November 2022 letter alleged that Voyager had created and controlled the "Olga Herrera" account. *Id*. On December 5, 2022, an individual who identified himself on LinkedIn as a "QA Manager and Automation Tests Development Specialist" at Voyager Labs logged in to the Olga Herrera account. *Id*. at ¶ 63. Despite its employee logging into the Olga Herrera account on December 5, Voyager sent further letters to Meta on December 8 and December 14, 2022, falsely claiming that it "did not create or control" the account and that "none of its subsidiaries" created or used the account.  *Id*. at ¶ 64.

On January 12, 2023, Meta filed this action against Voyager and disabled thousands of Facebook and Instagram accounts associated with Voyager. *Id.* at ¶ 66. Voyager's misconduct did not stop and, since January 12, it has created over 17,000 new fake Facebook accounts to replace the accounts Meta disabled so that it could continue scraping Meta's platforms.  *Id*. at ¶ 67. On February 23, 2023, Meta sent Voyager yet another cease-and-desist letter, stating that it "reiterate[s] that Meta revoked Voyager's limited license to access and use Facebook and Instagram," and that "Voyager must stop accessing and using Facebook and Instagram, and cease its unauthorized data collection practices immediately." *Id*. at ¶ 73. Meta disabled thousands more of Voyager's accounts the same day. *Id*. at ¶ 74. Despite Meta's efforts, Voyager has continued accessing Meta's platforms to scrape data without authorization.

## III.   LEGAL STANDARDS

At the motion-to-dismiss stage, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F. 3d 1025, 1031 (9th Cir. 2008). A court may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

subject to judicial notice." *Id*. at 1030–31 (citation omitted).

To withstand a motion to dismiss, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]ismissal for failure to state a claim is 'proper *only* where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F. 3d 1035, 1041 (9th Cir. 2010) (citation omitted, emphasis added). "The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Famous Birthdays, LLC v. SocialEdge, Inc.*, No. 21-cv-9562, 2022 WL 1591723, at *2 (C.D. Cal. Apr. 15, 2022) (denying motion to dismiss breach-of-contract, CFAA, and CDAFA claims).

## IV.    ARGUMENT

Voyager's motion makes several arguments. First, Voyager claims that Meta has failed to allege the existence of a contract between itself and Voyager, or that Voyager ever agreed to any contract. Dkt. 83 at 8. Second, Voyager argues that Meta failed to allege a theory of vicarious liability (despite Meta's direct allegations against the Defendant, Voyager Labs Ltd.). *Id*. at 13. Third, Voyager argues that this Court does not have personal jurisdiction over Meta's CFAA and CDAFA claims, despite Voyager agreeing to forum-selection clauses and expressly consenting to jurisdiction in this Court. *Id.* at 20. Each argument is meritless. Voyager's motion should be denied.

### A.    Meta has Alleged a Breach of Contract Claim Against Voyager Labs Ltd.

Voyager agrees that California law applies to Meta's breach-of-contract claim and that the FAC plausibly alleges three of the four necessary elements. Dkt. 83 at 8 (noting that the motion "focuses on the first prong of the foregoing test").[3] Voyager disputes only that the FAC creates a plausible inference that Voyager agreed to Facebook's and Instagram's Terms. This argument ignores the entirety of Meta's allegations in the FAC, which are more than sufficient to meet the low pleading standard. *See* FAC ¶¶ 25–26, 32–35, 55, 61, 64, 67–75, 81, and 83.

---

[3] There is no dispute at this stage that Meta has plausibly alleged that: (1) Meta has performed the duties required of it under Facebook's and Instagram's Terms; (2) Voyager's scraping activities breached those Terms; and (3) Meta suffered damages from Voyager's breach. *See In re Plantronics, Inc. Secs. Litig.*, No. 19-cv-07481, 2022 WL 3653333, at *6 n.2 (N.D. Cal. Aug. 17, 2022) (no need for Court to consider bases that "Defendants do not move to dismiss . . . on").

1.   <u>The FAC Pleads Facts Sufficient to Show Specific Terms that Voyager Breached</u>

Voyager complains that Meta should have "include[d] . . . the supposed contract(s)" as exhibits to the FAC because otherwise Voyager "is left guessing as to what the applicable contract terms are." Dkt. 83 at  9. Voyager misstates the standard for alleging the existence of a contract. The applicable standard "does not require the plaintiff to attach the contract or recite the contract's terms verbatim." *Misha Consulting Grp., Inc. v. Core Educ. And Consulting Solutions, Inc.*, No. 13-cv-04262, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013); *James River Ins. Co. v. DCMI, Inc.*, No. 11-cv-06345, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012) ("[T]he majority rule … in this circuit rejects" that "the terms [of a contract] must be set out verbatim in the body of the complaint . . . [or] be attached and incorporated by reference.").

Plaintiffs must only "identify with specificity the contractual obligations allegedly breached," which is "enough to raise a right to relief above the speculative level." *Misha*, 2013 WL 6073362, at *1 (citation omitted). *Misha* is instructive. There, the plaintiff referenced the defendant's agreement "to provide software management and maintenance services to [plaintiff] during the months of March 2013 and April 2013." *Id.* at *2. These allegations "put the defendants on notice" of the agreement in question to withstand a motion to dismiss. *Id.*  Similarly, in *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 907 (N.D. Cal. 2020), this Court ruled that plaintiffs are not required to "identify the specific version of the iCloud Agreement" that they accused Apple of breaching. Plaintiffs satisfied the low pleading standard by "identif[ying] the contractual language that was allegedly breached." *Id.*[4]

The FAC surpasses what is necessary to infer the contract provisions Meta accuses Voyager of breaching. Despite not needing to do so, the FAC "recite[s] . . . verbatim" nine separate provisions from Facebook's and Instagram's Terms that Voyager has violated, including, *inter alia*,

---

[4] *See also Kaar v. Wells Fargo Bank, N.A.*, No. 16-cv-01290, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) (pleading standard does not require attaching contract or reciting terms allegedly breached); *Dependable Highway Express, Inc. v. RIM Logistics, Ltd.*, No. 18-cv-04261, 2018 WL 7500276, at *2 (C.D. Cal. Sept. 10, 2018) (A complaint need only "set[] forth the terms of the agreements at issue" so that the defendant can "ascertain the nature of the claim being asserted against it"); *Wynes v. Kaiser Permanente Hosps.*, No. 10-cv-0702, 2011 WL 1302916, at *11 (E.D. Cal. Mar. 31, 2011) ("[A] claim for breach of contract need not allege specific terms of the contract, allegations of an existence of a written contract, performance under the contract, breach of contract, causation, and damages is sufficient to meet the federal notice pleading standards.").

provisions prohibiting "access[ing] or collect[ing] data . . . using automated means"; creation of more accounts after Meta "has previously disabled your account for violations of our Terms"; and "sell[ing], licens[ing], or purchas[ing] any account or data obtained from us or our Service." *Misha*, 2013 WL 6073362, at *1; FAC ¶¶ 27–31.  Meta even identifies the provisions by section number— Facebook's Terms of Service Sections "3.1, 3.2.1, 3.2.2, 3.2.3, and 3.2.5," and the corresponding, quoted provisions in Instagram's Terms of Use.  FAC at ¶¶ 83.

Meta provides notice of these provisions to everyone who registers for and uses Facebook and Instagram, and they are easily found online. Meta also specifically referenced and linked to these provisions in cease-and-desist letters to Voyager, which Voyager acknowledged receiving.  *See id*. at ¶ 35 and Ex. 4 at 2. At a minimum, these facts put Voyager on notice of the contractual obligations it breached—Meta's prohibitions against: "(a) using automated means without Meta's permission to scrape data . . . (b) selling, licensing, or purchasing data obtained by scraping . . . (c) facilitating others to violate Facebook's Terms and Instagram's Terms . . . (d) using Facebook and Instagram if Meta previously disabled the user's account," and  "(e) using fake Facebook accounts." FAC at ¶ 83.

Voyager's motion ignores the weight of these allegations entirely. Instead, Voyager mischaracterizes the pleading standard[5] to distract from the simple basis for this lawsuit: **Facebook's and Instagram's Terms prohibit scraping data without authorization, and Voyager violated those Terms by developing, distributing, and using its Surveillance Software and fake accounts to scrape data from Facebook and Instagram**. Courts routinely hold that similar allegations against data scrapers plausibly allege a breach of contract. *See Sluchevsky*, 2020 WL 5823277, at *7 (allegations that "Defendants knowingly made aliases on Facebook to use the

---

[5] None of the cases Voyager cites hold that the pleading requirement is as high as Voyager asserts or that a plaintiff needs to attach the contract to a complaint to plead a breach claim. For example, in *AK Futures LLC v. LCF Labs Inc.*, No. 21-cv-02121, 2022 WL 16859970, at *4 (C.D. Cal. Oct. 5, 2022), the plaintiff did not identify a "basis for each of the breaches of contract and their respective provisions." In *Park v. Morgan Stanley & Co., Inc.*, No. 11-cv-9466, 2012 WL 589653, at *3 (N.D. Cal. Feb. 22, 2012), the plaintiff "fail[ed] to allege any specific terms of the contract he claims Defendants actually breached." Indeed, in *Park*, the court observed that a "*Plaintiff need not set out the terms of the contract in detail*." *Id*. (emphasis added).  And in *Vaccarino v. Midland Nat'l Life Ins., Co.*, No. 11-cv-05858, 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011), the plaintiff "d[id] not identify her contract's essential terms" or even "which terms of the contract were breached."

website's services . . . to scrape data from other Facebook users" enough to state a claim for breach); *Meta Platforms, Inc. v. Social Data Trading Ltd.*, No. 21-cv-09807, 2022 WL 18806267, at *3 (N.D. Cal. Nov. 15, 2022) *R&R adopted*, 2022 WL 18806265 (N.D. Cal. Dec. 8, 2022) (allegations that defendant used "thousands of automated Instagram accounts to scrape data from Meta computers" enough to state a claim for breach); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1257 (N.D. Cal. 2022) (granting Meta summary judgment on a breach claim and noting that "all users who create accounts indicate that they agree to Meta's terms of use").  There is no basis for the Court to rule any differently, here.

2.  <u>Voyager Agreed to Facebook's and Instagram's Terms Because Voyager Created, Controlled, and Used Facebook and Instagram Accounts</u>

"Although mutual assent is a prerequisite for contract formation, an adequate pleading need only allege the contract's existence." *Eller v. City of Santa Rosa*, No. 09-cv-01094 2009 WL 3517610, at *5 (N.D. Cal. Oct. 23, 2009).  All that is required at the pleading stage is for a plaintiff to allege "facts [to] allow for the plausible inference that [defendant] and [p]laintiff mutually consented." *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 605 (N.D. Cal. 2022).  The FAC satisfies this low standard.  *See* FAC ¶¶ 32–35, 55, 67–75, 81.

**First,** Voyager complains that Meta did not plead that its services could not be "used unless the defendant clicked a box or otherwise affirmatively agreed to the terms of service." Dkt. 83 at 11. As an initial matter, there is no requirement that, to plead a breach of contract, a plaintiff must allege that its product cannot be used without agreeing to its terms of service. Using a product is one of several ways that a user can manifest assent, and all that is required is that a user had actual or inquiry "notice of the agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014); *Snow v. Eventbrite, Inc.*, No. 20-cv-03698, 2021 WL 3931995, at *3 (N.D. Cal. Sept. 2, 2021) (same).  The Court can reject Voyager's argument on this basis alone.

Regardless, Meta *has* alleged that a person cannot use Facebook or Instagram without agreeing to their Terms. The FAC alleges that "[e]veryone who creates a Facebook account or otherwise uses Facebook *must* agree to Facebook's Terms of Service," and "[e]veryone who creates an Instagram account or uses Instagram *must* agree to Instagram's Terms of Use."  FAC ¶¶ 25, 26 (emphasis added). The FAC alleges that "at all relevant times, [Voyager] was bound by Facebook's

and Instagram's Terms," *id*. at ¶ 32, and that Voyager agreed to Facebook's and Instagram's Terms because "[s]ince at least February 1, 2016," Voyager "created and used multiple Facebook and Instagram accounts," including thousands of fake accounts directly linked to Voyager Labs employees. *Id*. at ¶¶ 55, 61–76, 81. These allegations are sufficient to state a claim. *Sluchevsky*, 2020 WL 5823277, at *7 ("Agreeing to Facebook's TOS by creating a Facebook account and accessing Facebook's services created a contract between Plaintiff and Defendants."); *Social Data*, 2022 WL 18806267, at *3 ("When [defendant] created Instagram accounts, it agreed to Instagram's terms of service."); *Meta Platforms, Inc. v. Arowokoko*, No. 22-cv-00803, 2023 WL 3035454, at *4 (N.D. Cal. Feb. 24, 2023) ("Plaintiffs have adequately alleged that by creating and using Facebook and Instagram accounts, Defendants consented to the platforms' TOS and TOU.").

Facebook's and Instagram's Terms are "provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d. Cir. 2017) (contract formed at account sign up because "the language '[b]y creating an Uber account, you agree' is a clear prompt directing users to read the Terms . . . and signaling that their acceptance of the benefit or registration would be subject to contractual terms"); *id*. at 79–80 ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms . . . whether he clicked on the hyperlink or not."); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (holding that user consents when "the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement"). That Voyager boasts that it can collect and analyze "massive amounts" of data from "social media networks" means that likely did so by signing up for and using Facebook and Instagram accounts. FAC ¶ 39. This is because both Facebook and Instagram use a lockout mechanism that limits access to information without first "creating and logging into an account." *Id*. ¶ 37(a).

Indeed, courts nationwide that have considered Meta's sign-up procedures have consistently held that a user manifests assent when the user creates a Facebook or Instagram account or otherwise uses the service. *See Fteja v. Facebook*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) ("In order to have obtained a Facebook account, Fteja must have clicked the . . . 'Sign Up' button.");

*Franklin v. Facebook, Inc.*, No. 15-cv-00655, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015) (court could not "identify a single instance where any federal court has struck down [Facebook's Terms of Service] as an impermissible contract of adhesion induced by fraud or overreaching").[6]  In fact, a case that Voyager relies on for the view that mere use of a service is insufficient to allege assent *specifically cited Facebook's* sign-up process and the *Fteja* case as an example of a notice that was likely to "give rise to constructive assent" to users of the service.  *Be In, Inc. v. Google Inc.*, No. 12-cv-03373, 2013 WL 5568706, at *7 (N.D. Cal. Oct. 9, 2013).

**Second**, the FAC's allegations satisfy the low pleading standard to state a claim by identifying multiple Facebook and Instagram accounts that Voyager created, including fake Facebook accounts. FAC ¶ 33; ¶ 55 (fake account "Olga Herrera"); ¶ 57 (fake account "Caleb Plant"); ¶ 68 (fake accounts "Susan Walter" and "Roxie Coote"); ¶ 70 (fake account "Kari Fowler"); ¶ 71 (fake account "Felicia West"); ¶ 75 (fake accounts "Paul Aldridge," "Katie Moore," and "Bob Shankar").[7]  Not only does the FAC identify these accounts by name, Voyager also "logged in" to these fake accounts—which could have occurred only if the user clicked "sign up" and manifested assent to be bound by Facebook's Terms. *Id*. at ¶¶ 50, 61, 63–64.  Voyager also created a "Voyager Labs" Business Manager account and a "Voyager Labs" Facebook Page.  *Id*. at ¶ 33. Only registered Facebook users can create a Business Manager account or a Facebook Page.  *Id*. at ¶¶ 22–23.

The fake "Olga Herrera" account is directly linked to an individual who identified himself on LinkedIn as a "QA Manager and Automation Tests Development Specialist" at Voyager Labs. *Id*. at ¶ 63. That employee logged into the Olga Herrera account after Meta informed Voyager that Meta had linked the account to Voyager's scraping activities. *Id*. Similarly, a Voyager employee who

---

[6] *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164–67 (N.D. Cal. 2016) (examining Facebook's registration process and finding it constituted a binding contract on the user); *Kidstar v. Facebook, Inc.*, No. 18-cv-13558, 2020 WL 4382279, at *3 (D.N.J. July 31, 2020) (same); *Thomas v. Facebook, Inc.*, No. 18-cv-00856, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (same); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1159 (D. Haw. 2018) (same); *Miller v. Facebook, Inc.*, No. 09-cv-2810, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (same); *Rodriguez v. Instagram, LLC*, No. 12-cv-06482, 2013 WL 3732883, at *1–2 (N.D. Cal. July 15, 2013) ("Individuals who use Instagram must agree to Instagram's terms of use.").

[7] Other accounts Voyager created include a Facebook account created 02/01/2016 with the name "Voyager Analytics"; an Instagram account created 02/24/2016 named "voyageranalytics"; and another Instagram account created 02/16/2016 named "voyageranalytics8166." FAC ¶ 33.

identified himself as a "Technical Support Manager" at Voyager Labs accssed the fake accounts "Susan Walter" and "Roxie Coote." *Id*. at ¶ 68. And a Voyager employee who identified himself as an "NOC [Network Operations Center] Team Leader" at Voyager Labs accessed the fake account "Paul Aldridge" on or about March 5, 2023—after this lawsuit began. *Id*. at ¶ 75. In total, Voyager created and used over 55,000 fake Facebook accounts to facilitate its illegal scraping activities. *Id*. at ¶¶ 1, 67. These allegations are sufficient to show that Voyager systematically used and abused Meta's platforms, and go beyond what is necessary at the pleading stage to allege assent. *See Eller*, 2009 WL 3517610, at *5 ("[A]n adequate pleading need only allege the contract's existence.").

**Third**, Voyager had actual notice outside of the Facebook/Instagram sign-up process because Meta notified Voyager multiple times in writing that scraping violates Facebook's and Instagram's Terms, including through filing this lawsuit. Meta's October 2017 cease-and-desist letter expressly stated that Facebook's and Instagram's Terms "prohibit, among other things, automated access to either platform without express permission," and informed Voyager that "[t]he publicly available descriptions of your services strongly suggest that you use Facebook and Instagram user data, **and no such use is possible without violating Facebook's and Instagram's terms**." FAC Ex. 4 at 2 (emphasis added). Meta sent similar letters in 2022 and February 2023. FAC ¶¶ 62, 73. The FAC alleges that Voyager acknowledged receipt of cease-and-desist letters, but did not stop using Facebook and Instagram despite knowing that use of those services constitute assent to their Terms. *Id*. at ¶ 35. Indeed, the FAC alleges that Voyager created all of the fake Facebook accounts identified in the FAC *after* acknowledging receipt of Meta's October 2017 letter and that Voyager created thousands of fake accounts even after Meta filed this lawsuit. *Id*. at ¶¶ 33, 67. Voyager's motion does not claim it did not ever *use* Facebook or Instagram—only that it never agreed to those services' Terms. Dkt. 83 at 11–13. But not only has Meta alleged that Voyager *did* agree (and had notice of the Terms), it is also not possible to scrape the "massive amounts" of data Voyager boasts of without using or creating Facebook or Instagram accounts. FAC at ¶ 37; 39. That Voyager now claims ignorance that using Meta's platforms constitute assent to their Terms is beyond belief.

### 3. Voyager's Correspondences with the LAPD Create the Inference that Voyager Created and Used Facebook and Instagram and Agreed to Their Terms

Voyager's solicitations to the LAPD show Voyager's awareness of Facebook's and

Instagram's capabilities, creating the inference that Voyager created Facebook or Instagram accounts and agreed to their Terms. *See* FAC Ex. 5. For instance, October 2019 emails from Voyager employees to the LAPD describe how "recent updates" on Facebook and Instagram "have affected our collections" and that Voyager is developing a "workaround." *Id*. at 442; 428.  An April 2019 "user guide" Voyager provided the LAPD also gives detailed descriptions of Facebook features and how one can use Voyager's software to obtain data from them (e.g., how to get information from "Facebook Pages," "Facebook Groups," "Facebook Events"). FAC Ex. 3 at 83. Voyager also advertised how special features of the Surveillance Software, including one called "Friendship Report is only available for Facebook and Instagram profiles." FAC ¶ 58. Voyager could not have had such knowledge of Facebook and Instagram, nor made these representations, without signing up for and using Facebook and Instagram.  *Id*. at ¶ 37.

4.   The Court Cannot Consider the Bromley Declaration

The FAC alleges that Voyager, through its employees, created and controlled thousands of Facebook and Instagram accounts, including fake accounts used to access and scrape data from Facebook. *Id*. ¶¶ 33, 49–50, 68, 70–72, 75, 76.  In support of its *factual* arguments—which are inappropriate at the motion-to-dismiss stage—Voyager relies on a declaration from its CEO, Courtney Bromley, to argue that it "never 'had multiple Facebook and Instagram accounts,' and never 'thereby agreed to' any of Meta's terms of service or use." Dkt. 83 at 21. The Court cannot consider the Bromley Declaration in deciding this motion. Courts can only take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint.").

At the pleadings stage, "uncontroverted allegations in the complaint must be taken as true," and "conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2003). But the Bromley Declaration is no more than Voyager's proffer of its version of heavily disputed

facts that it asks the Court to accept—like whether Voyager created Facebook and Instagram accounts, whether Voyager scraped Meta's platforms, and whether Voyager has any ties to California.  Indeed, if a court considers such declarations, then every defendant could simply move to dismiss by filing a declaration denying a complaint's allegations.  The Court should disregard it and, even if it were considered, any factual dispute it creates must be resolved in Meta's favor.  *Id.*

### B. Meta Has Sufficiently Alleged a Claim for Breach Against Voyager Without Need for a Theory of Vicarious Liability

#### 1. Meta has Sufficiently Alleged a Breach Claim Against Voyager Labs Ltd.

Voyager mischaracterizes Meta's FAC as alleging an "alter ego" or agency theory of liability. Voyager then attacks this straw-man argument to complain that Voyager is somehow unconnected to its subsidiaries—another factual dispute that is inappropriate for resolution at this stage. *See* Bromley Decl. ¶ 9.

Voyager misunderstands (or worse, misconstrues) Meta's allegations. Not only does Voyager's argument raise disputed fact issues, but Voyager overlooks that Meta's allegations are all directed at the Defendant, Voyager Labs Ltd. Voyager Labs Ltd. is the "Defendant [who] has breached and continues to breach Facebook's and Instagram's Terms." FAC ¶ 83. Voyager Labs Ltd. is the "Defendant [who] created and used over 38,000 fake Facebook user accounts . . . to scrape more than 600,000 Facebook users'" profiles. *Id.* at ¶ 1. And Voyager Labs Ltd. is the "Defendant," who, after Meta "revoked Defendant's access to Facebook and Instagram and filed a legal action," created thousands of new fake accounts to scrape Meta's platforms. *Id.* at ¶ 2.

All of the FAC's allegations are directed at Voyager Labs Ltd. For instance, the fake Facebook accounts are linked to individuals who identified themselves as employees at Voyager Labs. *Id.* at ¶ 63 (employee who self-identified as a "QA Manager and Automation Tests Development Specialist" at Voyager Labs used the fake account "Olga Herrera"); ¶ 68 (employee who self-identified as a "Technical Support Manager" at Voyager Labs used the fake accounts "Susan Walter" and "Roxie Coote"); ¶ 75 (employee who self-identified as a "NOC Team Leader" at Voyager Labs used the fake account "Paul Aldridge").  Indeed, Meta alleges that a Voyager Labs employee logged into the "Olga Herrera" account *after* Meta notified Voyager Labs that it was aware of the account's relationship to Voyager. *Id.* at ¶ 64.

---

15

Furthermore, the materials Voyager sent the LAPD were from "Voyager Labs" and were stamped with the disclaimer that any copyrighted materials were owned by "Voyager Labs Ltd. or its affiliates ('VoyagerLabs')." FAC Ex. 3 at 116. Defendant (who is the only entity with the "Voyager **Labs**" name) is the one who provided services for and made commercial offers to the LAPD, and who—in correspondences on "Voyager Labs" letterhead—sent a "letter as affirmation of **Voyager Labs** as an authorized and Sole Proprietor of the **Voyager Labs** suite of products intended for purchase by [the LAPD]." *Id*. at 28 (emphasis added). All of Defendant's emails to the LAPD came from email addresses ending in "@voyagerlabs.co." *E.g.*, *id*. at 20.

These allegations are, standing alone, more than enough to state a claim against Voyager Labs Ltd. There is no need for any alter-ego or agency analysis because Meta's allegations are against Voyager Labs Ltd. for actions performed by Voyager Labs Ltd. *See Pac. Maritime Freight, Inc. v. Foster*, No. 10-cv-0578, 2010 WL 3339432, at *8–*9 (S.D. Cal. Aug. 24, 2010) (defendant "allegedly committed" the fraudulent acts complained of "herself," "so she can be held personally liable for them without the use of the alter-ego theory" and "no need to show alter-ego liability" when defendant "allegedly controls" a related entity); *Sloane v. Karma Enterprises, Inc.*, No. 08-cv-05094, 2008 WL 11342657, at *3 n.16 (C.D. Cal. Nov. 3, 2008) ("Sloane need not allege that Karma and Entertainment 7 were Ferrari's alter egos to state a claim against him" because the complaint alleged that "each of the [d]efendants" were liable).[8]

### 2. Even if Implicated, Meta's FAC Alleges Alter Ego and Agency Liability

Because Meta's allegations are directed at Voyager Labs, the Court need not analyze any alter ego or agency theories. Nevertheless, Meta's FAC satisfies the pleading standard for both theories.

**Alter Ego.** Meta has pled both "unity of interest" and "inequitable results."[9] Voyager Labs

---

[8] *See Alexander Assocs., Inc. v. FCMP, Inc.*, No. 10-cv-12355, 2012 WL 1033464, at *18 (E.D. Mich. Mar. 27, 2012) ("There is no need to apply the alter-ego test . . . because the Court already has found that defendant to have sufficient minimum contacts based on its own conduct"); *Moriarty v. Consolidated Funeral Servs., Inc.*, No. 98-cv-2025, 1998 WL 748323, at *2 n.5 (N.D. Ill. Oct. 22, 1998) ("analysis of liability under the 'alter-ego' doctrine is unnecessary" where complaint alleged defendants were liable).

[9] Voyager again stretches the standard. Alleging alter-ego liability does not mean that a "plaintiff must . . . allege . . . [that] 'a parent corporation dictates every facet of the subsidiary's business.'" Dkt. 83 at 15. "A plaintiff can state a claim by explaining in detail how one company dictated every

Ltd.'s 2021 Annual Statement shows that Voyager Labs Ltd. commingles its finances, employees, research and development, and real estate leases with its affiliates such that the affiliates are no more than "instrumenalit[ies]" of one another. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted); *Estate of Miller*, 2020 WL 6392565, at *8 (all that is required at the pleadings is whether, "if true, [the allegations] could support a plausible claim of alter-ego liability").

Voyager describes itself and its affiliates as forming one "Group" that has, together, "developed a proprietary AI-based technology that harnesses billions of data points." FAC Ex. 1 at 4. It is "[t]he Group [who] develops and sells software solutions based on . . . big data analytics"; and it is "[t]he Group [who] ended 2021 well capitalised, with $13,223 thousands . . . of total equity . . . and $24,980 thousands . . . of total assets." *Id.* In 2021, it was "the Group [who] secured a credit line from an Israeli bank . . . [for] $12 million," *id.* at 6, and it was "[t]he Group [who] incur[red] $10,684 thousands in research and development expenditure." *Id.* at 8. "The Group" also jointly reports employees. In 2021, the "[a]verage monthly number of persons employed by the Group" was 114; with "[e]mployment costs for" the Group totaling $17.486 million. *Id.* at 28.

In short, the FAC creates a plausible inference that the Voyager entities are shells for one another because Voyager Labs Ltd. admits that it: (1) controls and commingles "the Group's" finances, including debts; (2) takes out multi-million dollar lines of credit for "the Group"; (3) develops "the Group's" "investment plans"; (4) plans "the Group's" strategic outlook; (5) sets "the Group's" R&D plans, including commingling $10.684 million in R&D costs in 2021; (6) receives payments together with "the Group" "from customers based upon contractual payment schedules"; (7) leases property on behalf of "the Group" and negotiates real estate contracts to "offer the Group the greatest possible flexibility in doing business"; and (8) shares employees with "the Group." *Id.* at 4, 6, 19, 22–23, 28. The Court need look no further than Voyager's own statement that its "[s]ubsidiaries are all entities over which the Group has control" and that "[t]he Group controls an entity when the Group has the power to govern the entity's financial and operating policies, is exposed to, or has rights to, variable returns from its involvement with the entity and has the ability

---

facet of the other's business, *but doing so is not necessary.*" *Estate of Miller v. Cnty. of Sutter*, No. 20-cv-557, 2020 WL 6392565, at *7 (E.D. Cal. Oct. 30, 2020) (emphasis added).

to affect those returns through its power over the entity." *Id*. at 21.

These facts are sufficient to plead unity of interest, which occurs if there is "commingling of funds and other assets"; "disregard of corporate formalities"; "holding out by one entity that it is liable to the debts of the other"; "use of the same offices and employees"; "lack of segregation of corporate records" and "identical . . . officers." *City and Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635–38 (N.D. Cal. 2020) (prima facie showing of alter ego where there was a "shared financial structure"; and "one commercial organization"); *Ind. Elec. Supply Inc. v. Solar Installs, Inc.*, No. 18-cv-01435, 2018 WL 6092800, at *5 (N.D. Cal. Nov. 21, 2018) (alter ego where one entity "held itself out as being liable for the debts" of another).[10]

Meta has also alleged inequitable results. Treating Voyager Labs Ltd. as separate from its affiliates—despite Voyager's own representations that they act in tandem and commingle revenues and debts—would be tacit approval for a "shell game" between the Voyager entities to try to avoid liability for its abuse of Meta's platforms. *Cadence Design Sys., Inc. v. Pounce Consulting*, No. 17-cv-04732, 2019 WL 1768619, at *6 (N.D. Cal. Apr. 1, 2019) (noting that "Pounce USA and Pounce SA represent themselves publicly as a single entity" as supportive of liability for both). By allowing Voyager Labs Ltd. to avoid liability by crediting bald assertions that it is not the entity who committed the actions alleged in the FAC (a disputed fact) encourages other Voyager "Group" entities to transfer assets to Voyager Labs Ltd. to hide assets or information. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1003 (N.D. Cal. 2001) (refusing alter-ego liability would encourage "transfer of funds" to other entities). That Voyager disputes the FAC's allegations is irrelevant—the Court must draw inferences in the plaintiff's favor. *See Purdue Pharma*, 491 F. Supp. 3d at 644 (denying in part motion to dismiss and reserving alter-ego

---

[10] The cases Voyager cites involved much fewer and more imprecise allegations than the FAC. In *Sandoval v. Ali*, 34 F. Supp.3d 1031, 1040 (N.D. Cal. 2014), the plaintiff made only a blanket statement that "upon information and belief" the two parties were related. And in other cases, there were no allegations of "undercapitalization, commingled funds or disregard for corporate formalities" unlike Meta's specific allegations here (e.g., same loans, revenues, costs, and financial statements). *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 988 (C.D. Cal. 2013); *Eclectic Props. East, LLC v. The Marcus & Millichap Co.*, No. 09-cv-00511, 2012 WL 713289, at *5 (N.D. Cal. Mar. 5, 2012) (same); *Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18-cv-05031, 2019 WL 331161, at *7 (N.D. Cal. Jan. 25, 2019) (same).

determination "until after the parties have the benefit of a full trial record").

**Agency.**  Agency liability exists if there is a reasonable inference that: (1) the agent had the authority to act on behalf of the principal; (2) the principal caused a belief that the agent had authority; and (3) reliance by plaintiff. *Warwick v. Rejuvi Lab., Inc.*, No. 18-cv-02701, 2018 WL 3609089, at *5 (N.D. Cal. July 27, 2018). The Court need look no further than how Meta alleges that *every* Voyager correspondence to the LAPD is from "Voyager Labs." All "pricing proposals" are from "Voyager Labs" and describe the services "Voyager Labs" would perform. *E.g.*, FAC Ex. 3 at 16; *id.* at 34 ("Voyager Labs welcomes the opportunity to submit this proposal."). One can infer that these materials were either from Voyager Labs Ltd. or on its behalf. Agency liability is alleged where an agent "sold services and products developed by" defendant, "was trained by [defendant] to sell its products and services," or otherwise represented themselves out to be affiliated with the defendant. *Warwick*, 2018 WL 3609089, at *5.

Meta has also alleged that individuals who self-identified as "Voyager Labs" employees were those who used the fake Facebook accounts described in the FAC to scrape Facebook. This creates the inference that agents of Voyager Labs Ltd. (e.g., employees) scraped Meta's platforms. *See* Cal. Civ. Code § 2299 ("An agency is actual when the agent is really employed by the principal."); *id.* § 2300 (agency relationship alleged where "the principal . . . causes a third person to believe another to be his agent"). To the extent Defendant claims those individuals are not Voyager Labs employees, that is a disputed fact for which the Court must make all plausible inferences in Meta's favor.

### C. The Court has Personal Jurisdiction over Voyager to Adjudicate Meta's CFAA and CDAFA Claims

Voyager moves to dismiss Meta's CFAA and CDAFA claims for lack of personal jurisdiction. Dkt. 83 at 19. To withstand a motion to dismiss under Rule 12(b)(2), a plaintiff "need only make a *prima facie* showing of jurisdictional facts." *Ranza*, 793 F.3d at 1068 (citation omitted). "[U]ncontroverted allegations in the complaint must be taken as true," and factual disputes are "resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800. This Court has jurisdiction over Meta's CFAA and CDAFA claims because Voyager: (1) consented to jurisdiction in a Case Management Statement; (2) agreed to enforceable forum-selection clauses providing for exclusive

jurisdiction in this district; and (3) purposefully directed its conduct at this forum.

1.   <u>Voyager Expressly Consented to Jurisdiction in its Case Management Statement</u>

"[T]he personal jurisdiction requirement is a waivable right," and Voyager has expressly told this Court it consents to jurisdiction. *Mewawalla*, 601 F. Supp. 3d at 588; *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (defendants can consent to personal jurisdiction through stipulation). Voyager stated in the April 11, 2023 Case Management Statement that it "has agreed not to contest the exercise of personal jurisdiction over it by this Court solely for purposes of **this action**[.]" Dkt. 35 at 1 (emphasis added). This concession should end the matter. Meta's CFAA and CDAFA claims arise from the same misconduct as Meta's breach claim, and they are obviously part of "this action." *Every* claim arises from Voyager's unauthorized scraping, which violated Facebook's and Instagram's Terms. That Voyager continued breaching those contracts by continuing its unauthorized access to Meta's computers, post-revocation, simply forms the basis of *additional* claims that arise from the same set of facts.

A court has personal jurisdiction over all claims in a suit "so long as [they] arise[] out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (a court should consider "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties"); *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 823 (N.D. Cal. 2015) (personal jurisdiction over all claims—even those arguably not encompassed by a forum-selection clause—because they arose from the common allegation that defendant formed a company to compete with the plaintiff by "relying on misappropriated trade secrets and proprietary information"); *Dana Innovations v. Trend Elecs. Int'l Inc.*, No. 22-cv-02155, 2023 WL 3335909, at *7 (C.D. Cal. Apr. 21, 2023) (even if the agreement forming a breach claim had "expired," there was "substantial overlap" with other claims to exercise personal jurisdiction over all claims). Here, Meta brought CFAA and CDAFA claims precisely because the facts underlying Meta's breach-of-contract claim *did not change*—Voyager's actions have not changed since Meta revoked its access to Meta's platforms, nor did they change after Meta filed this lawsuit. This unauthorized conduct forms the basis for all of Meta's claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.    <u>Voyager Consented to Jurisdiction by Agreeing to a Forum-Selection Clause</u>

Voyager "consented to personal jurisdiction when [it] accepted" Facebook's Terms, which includes an enforceable forum-selection clause providing for exclusive jurisdiction in this district. *Automattic, Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015) (citation omitted). Forum-selection clauses are "*prima facie* valid" and are "enforceable absent a strong showing" that the clause is invalid or that enforcement would be "unreasonable or unjust." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F. 2d 509, 514 (9th Cir. 1988) (citation omitted). The party opposing a forum-selection clause must "show that [a] trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

Facebook's Terms contain a forum-selection clause: [11]

> You and Meta each agree that **any claim**, cause of action, or dispute between us that arises out of or relates to these Terms **or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County**. **You also agree to submit to the personal jurisdiction of either of these courts** for the purpose of litigating any such claim . . . .

FAC at ¶ 13; Wleklinski Decl. Ex. 1 (emphasis added).

Meta has plausibly alleged that Voyager agreed to Facebook's Terms, and thus agreed to litigate all claims in this forum. *See* Section IV.A, *supra*. "Courts routinely uphold forum selection clauses in form contracts between consumers and businesses." *Thomas*, 2018 WL 3915585, at *4 (upholding Facebook's forum-selection clause and noting that "the Court is not aware of any case concluding that the forum selection clause in Facebook's [Terms] is invalid"). Courts nationwide have held that the forum-selection clauses for Meta's products—including provisions identical to those Voyager agreed to—are valid, enforceable, "not fraudulent or overreaching" and "do not contravene public policy, or otherwise 'do[] not comport with fundamental fairness.'" *Sluchevsky*, 2020 WL 5823277, at *2 (citation omitted); *Dolin*, 289 F. Supp. 3d at 1159 (collecting cases).

Voyager complains that Meta did not attach any alleged forum-selection clauses to the FAC,

---

[11] Voyager also agreed to the forum-selection clause in Meta's Commercial Terms, which similarly provide that the claims at issue be resolved exclusively in the Northern District of California and that Voyager consents to personal jurisdiction in this District. *See* FAC ¶¶ 13, 15; Wleklinski Decl. Ex. 3.

but that is not a pleading requirement.  It is common practice for plaintiffs to raise applicable forum-selection clauses in response to a motion to dismiss challenging jurisdiction. *E.g.*, *Facebook, Inc. v. Gajjar*, No. 20-cv-02429, Dkt. 36 (N.D. Cal. Mar. 22, 2021); *Facebook, Inc. v. Trabi*, No. 19-cv-03738, Dkt. 15 (N.D. Cal. Aug. 2, 2019).  In fact, *Voyager* is the one who proposed that the parties resolve any litigation in this forum *because of Facebook's forum-selection clause*. In a December 8, 2022 letter to Meta, Voyager: (1) *quoted verbatim* Facebook's forum-selection clause (the same one quoted above); (2) stated that "any such claim [arising from Facebook's Terms] must be brought in California"; (3) stated that this "is hardly a surprising outcome in circumstances where Meta's headquarters are in California" and that Voyager was "fortified in its belief that California is appropriate for this matter"; and (4) avowed that Voyager "is prepared to submit to the jurisdiction of the US District Court for the Northern District of California." Gervais Decl. Ex. 4.

Although Voyager expressly demanded litigation in this forum (and consented to it), it now claims application of the forum-selection clause violates due process by subjecting it to general jurisdiction.  Dkt. 83 at 21-22. But Facebook's forum-selection clause expressly provides that it applies to "any claim," which courts have construed broadly. *E.g.*, *Miller*, 2010 WL 9525523, at *2 (Facebook's "forum selection's use of the term 'any dispute' is broad enough to include" copyright and patent claims). Moreover, the CFAA and CDAFA claims clearly "arise[] out of or relates" to Voyager's use of Facebook and Instagram because they are premised on Voyager's post-revocation access to and use of those platforms. Had Voyager not violated Facebook's Terms, Meta would not have revoked Voyager's access, and Meta would not have claimed that Voyager's continued access without authorization violated the CFAA and CDAFA. *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) (defendant violated CFAA after it "knew that it no longer had authorization to access Facebook's computers, but continued to do so anyway"). Accepting Voyager's argument would improperly narrow the scope of forum-selection clauses such that they could apply *only* to breach-of-contract claims, but Voyager cites no case interpreting such clauses so narrowly. *See Sluchevsky*, 2020 WL 5823277, at *2 (jurisdiction over CFAA/CDAFA claims from consent to forum-selection clause); *Miller*, 2010 WL 9525523, at *2.

   3.   The Court has Specific Personal Jurisdiction over the CFAA/CDAFA Claims

Specific personal jurisdiction exists when: (1) a nonresident defendant purposefully directs activities at the forum state or its residents, or purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim alleged arises out of or relates to the defendant's activities in the state; and (3) the exercise of jurisdiction is reasonable. *E.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F. 3d 1218, 1227–28 (9th Cir. 2011). Meta must satisfy only the first two prongs of the specific-jurisdiction test, after which "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citation omitted). The FAC satisfies this standard.

**First**, scraping Facebook or Instagram (including scraping profiles of users in California) is conduct targeted at California sufficient for personal jurisdiction. In *Sluchevsky*, a defendant "purposefully directed their harmful conduct at California" for purposes of CFAA/CDAFA claims because the defendant knew that "[p]laintiff's principal place of business is in California" and because defendant "scrap[ed] Facebook users' data" including "over 37,000 Facebook users in California." 2020 WL 5823277, at *4. Similarly, in *Social Data*, the defendant "purposefully directed its activities at [California]" because it "scraped the Instagram accounts of approximately 250,000 California users." 2022 WL 18806267, at *2 (cleaned up). And in *WhatsApp, Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020), jurisdiction over CFAA/CDAFA claims existed because "defendants sought out WhatsApp's California-based servers for the purpose of routing malicious code through those servers . . . By sending the malicious code, defendants electronically entered the forum state seeking out plaintiffs' servers, which were a necessary component to transmit the malicious code to the users." *Id.* at 673; *Facebook, Inc. v. Rankwave Co., Ltd.*, No. 19-cv-03738, 2019 WL 8895237, at *7 (N.D. Cal. Nov. 14, 2019) (defendant's use of data that "originally belonged to California-based users" supports jurisdiction); *Daimler Trucks N.A. LLC v. Superior Ct.*, 80 Cal. App.5th 946, 958 (Cal. Ct. App. 2022) (noting that how plaintiffs "are both California residents weighs in favor of specific jurisdiction" and that their incursion of expenses in California attributable to the defendant's harm "relate to" defendant's California activities); *see also X Corp. v. Bright Data Ltd.*, 2024 WL 422075, at *4 (N.D. Cal. Feb. 5, 2024) (finding personal jurisdiction where defendant "directly targeted a forum resident" "by selling data scraped from that

forum resident's platform").

Voyager knowingly directed conduct at Meta in California and scraped data from "at least 30,000 Facebook users in California." FAC ¶ 14. Meta also specifically identifies the "users located in California that had their information scraped by" Voyager, including "employees of non-profit organizations, universities … as well as full-time parents, retirees, and union members." *Id*. at ¶ 56. Voyager's scraping of California users continued *after* Meta revoked its access, and *after* it had notice that any continued scraping would harm Meta (and its users) in California. "But for [Voyager's] decision to use software to scrape [Meta's] servers for content … [Meta] would not have expended resources in California to investigate and remediate [Voyager's] conduct, nor would [Meta] be suing" Voyager. *Facebook, Inc. v. Sahinturk*, No. 20-cv-08153, 2022 WL 1304471, at *5 (N.D. Cal. May 2, 2022) ("Plaintiffs' expenditure of resources in California to detect and remediate the damage done by [defendant's] activities . . . underscores that [defendant] inflicted harm in the forum state."); *WhatsApp*, 472 F. Supp.3d at 673 (defendants' actions targeted California "by interfering with the WhatsApp service and burdening their network"); *Social Data*, 2022 WL 18806267, at *3 (jurisdiction found where defendant's "scraping interfered with Meta's products … including within California" (cleaned up)).[12]

**Second**, Voyager engages in business in California. Voyager performed extensive services for the LAPD *after* Meta revoked its access to Meta's platforms through the October 2017 cease-and-desist letter. For example, Voyager provided technical assistance, "[p]rotective intelligence for County, City, & Department VIPs," "[r]eal-time tactical intelligence," and extensive trainings of Voyager's Surveillance Software. FAC Ex. 3 at 145; *id*. at 81–104 (providing "user guide" for scraping Facebook); Ex. 5 at 485. In emails to the LAPD, Voyager employees would also notify the LAPD whenever Voyager added new capabilities related to Facebook or Instagram, or whenever

---

[12] If the Court believes more jurisdictional facts are necessary, it should grant jurisdictional discovery rather than dismiss Meta's claims. A Court has "broad discretion" to permit jurisdictional discovery if "the jurisdictional facts are contested or more facts are needed." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). It is an abuse of discretion to dismiss claims without discovery if there are "jurisdictional facts which plaintiffs may be able to develop." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 (9th Cir. 1977); *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) ("[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed.").

Facebook made "recent changes that have affected [Voyager's] collections" and how Voyager was actively looking for "workaround[s]" to continue scraping. *Id.* Ex. 5 at 521, 406. These contacts are more than enough to establish jurisdiction, as Voyager's conduct in California relates to Meta's claims. *See Mavrix Photo, Inc.*, 647 F. 3d at 1230 (advertisements targeted at California and for "commercial gain" sufficient for jurisdiction); *Warner Bros. Entm't, Inc. v. Free-TV-Video-Online.Info*, No. 08-cv-8484, 2009 WL 10673279, at *4 (C.D. Cal. June 24, 2009) (jurisdiction existed where defendants' online service had California users); *Daimler*, 80 Cal. App.5th at 957 (jurisdiction existed even though defendant did not sell the offending product in California because defendant marketed products in California for the specific purpose that caused harm in California).

### D. If the Court Grants any Portion of Voyager's Renewed Motion to Dismiss, the Court Should Grant Leave to Amend

Should the Court grant any portion of Voyager's motion, it should grant Meta leave to amend. "Absent prejudice [to the opposing party]. . . there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Reitred Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) (cleaned up). Voyager's motion does not even attempt to claim that it would be prejudiced if Meta were permitted to amend the FAC. Voyager also mischaracterizes why Meta filed the FAC. Meta filed the FAC to add CFAA and CDAFA claims because of Voyager's continued unauthorized access to Facebook and Instagram despite multiple notices that its access was revoked (including filing this lawsuit). Meta did not file a FAC to cure any alleged "deficiencies," as Voyager contends. Nothing in Voyager's motion supports a view that there are "no set of facts" that Meta could allege to support the claims presented. *Thompson v. Los Robles Reg'l Med. Ctr.*, No. 20-55771, 2021 WL 5002214, at *1 (9th Cir. Oct. 28, 2021) (citation omitted).

### V. CONCLUSION

For the foregoing reasons, the Court should deny Voyager's renewed motion to dismiss.

1   Dated: February 22, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KALPANA SRINIVASAN
CHANLER LANGHAM
OLEG ELKHUNOVICH
MICHAEL GERVAIS
LEAR JIANG
SUSMAN GODFREY L.L.P.

By:      */s/ Michael Gervais*
            Michael Gervais

Attorneys for Plaintiff
META PLATFORMS, INC.