EMILY REITMEIER (SBN 305512)
emily.reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
 FLOM LLP
525 University Avenue
Palo Alto, California  94301-1908
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570

RYAN IWAHASHI (SBN 284766)
ryan@gishpllc.com
GISH PLLC
50 California Street
San Francisco, CA 94111
Telephone: (415) 630-2000

EDWARD L. TULIN (*pro hac vice*)
edward@gishpllc.com
ANDREW D. GISH (*pro hac vice*)
andrew@gishpllc.com
RAYMOND J. BILDERBECK (*pro hac vice*)
ray@gishpllc.com
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
Telephone:     (212) 518-2000

Attorneys for Defendant Voyager Labs, Ltd.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| META PLATFORMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br><br> VOYAGER LABS LTD., <br><br> Defendant. | Case No. 3:23-cv-00154-AMO <br><br> **DEFENDANT VOYAGER LABS LTD.'S REPLY IN SUPPORT OF ITS RENEWED MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Hearing Date: April 4, 2024 <br> Judge: Honorable Araceli Martinez-Olguín <br><br> First Amended Complaint Filed: May 5, 2023 |

**TABLE OF CONTENTS**

I. Meta Has Failed to Plausibly Plead Breach of Contract..........................................2

    A. Meta Fails to Plausibly Allege Existence of Agreement with Voyager UK ................................................................................................................2

    B. Meta Fails to Plausibly Allege That Voyager UK Manifested Assent ........4

    C. Meta Fails to Sufficiently Allege Alter Ego or Agency Liability................8

II. The Court Lacks Personal Jurisdiction Over the CFAA and CDAFA Claims......11

    A. The Bromley Declaration is Fatal To Meta's Personal Jurisdiction Theories......................................................................................................11

    B. Voyager UK Did Not Waive Jurisdiction in the CMS or Prior Correspondence..........................................................................................12

    C. Meta's Forum-Selection Clause Theory Fails............................................14

    D. Meta Fails to Refute Voyager UK's Evidence That It Lacks "Minimum Contacts" ...................................................................................................15

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery Inc.*, 368 F.3d 1174 (9th Cir. 2004) ........................... 14

*Be In, Inc. v. Google Inc.*, No. 12-cv-3373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) .................. 6

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ...................................... 4-5, 7

*Brooke v. Patel*,
 No. 1:20-CV-1106 JLT EPG, 2023 WL 2645648 (E.D. Cal. Mar. 27, 2023) ............................... 8

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
 491 F. Supp. 3d 610 (N.D. Cal. 2020) .................................................................................. 9

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ........................................ 2

*Dependable Highway Express, Inc. v. RIM Logistics, Ltd.*,
 No. 18-cv-04261, 2018 WL 7500276 (C.D. Cal. Sept. 10, 2018) .......................................... 4

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) .................................................................. 2, 12

*Estate of Miller v. Cnty. of Sutter*,
 No. 2:20-cv-577, 2020 WL 6392565 (E.D. Cal. Nov. 2, 2020) ............................................. 9

*Facebook, Inc. v. Sluchevsky*,
 No. 19-cv-1277, 2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) ......................................... 3, 15

*Finkelstein v. AXA Equitable Life Ins. Co.*,
 325 F. Supp. 3d 1061 (N.D. Cal. 2018) ................................................................................ 8

*Franklin v. Facebook Inc.*,
 No. 1:15-cv-655-LMM, 2015 WL 7755670 (N.D. Ga. Nov. 24, 2015) ................................... 5

*Fteja v. Facebook*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................ 5

*Goldberg v. Rome McGuigan, P.C.*,
 No. 20-cv-9958-JFW, 2021 WL 3520725 (C.D. Cal. Apr. 23, 2021) ................................... 13

*Ind. Elec. Supply Inc. v. Solar Installs, Inc.*,
 No. 4:18-cv-1435, 2018 WL 6092800 (N.D. Ca. Nov. 21, 2018) ......................................... 9

*James River Ins. Co. v. DCMI, Inc.*,
 No. 11-cv-06345, 2012 WL 2873763 (N.D. Cal. July 12, 2012) .......................................... 4

*Kaar v. Wells Fargo Bank, N.A.*,
 No. 16-cv-01290, 2016 WL 3068396 (N.D. Cal. June 1, 2016) ............................................ 4

*Klian v. Crawford*,
 No. 12-cv-2373, 2012 WL 12878721 (C.D. Cal. June 6, 2012) .......................................... 14

*Meta Platforms Inc. v. Soc. Data Trading Ltd.*,
 No. 21-cv-09807, 2022 WL 18806267 (N.D. Cal. Nov. 15, 2022) ........................................ 3

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2022) ................................................................................3

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ..................................................................7

*Misha Consulting Grp., Inc. v. Core Educ. and Consulting Solutions, Inc.*,
  No. 13-cv-04262, 2013 WL 6073362 (N.D. Cal. Nov. 15, 2013) ................................3-4

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ...............................................4, 6, 7

*Olney v. Job.com, Inc.*,
  No. 1:12-cv-01724-LJO-SKO, 2014 WL 4660851 (E.D. Cal. Sept. 17, 2014) ..........................6-7

*Ranza v. Nike Inc.*, 793 F.3d 1059 (9th Cir. 2015) .........................................................................9

*Rocha v. Urban Outfitters, Inc.*,
  No. 23-cv-542-AMO, 2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ...................................6

*Snow v. Eventbrite, Inc.*,
  No. 20-cv-03698, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ......................................5

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
  813 F. App'x 316 (9th Cir. 2020) ..................................................................................12

*Uniloc 2017 LLC v. H&R Block, Inc.*,
  No. SACV 19-1149 JVS (KESx), 2019 U.S. Dist. LEXIS 229166 (C.D. Cal. Dec. 23, 2019) ......9

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................................................................15

*Williams v. Apple, Inc.*, 449 F. Supp. 3d 892 (N.D. Cal. 2020) .......................................................3

*Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*,
  No. 8:20-cv-00102-JWH-ADSx, 2022 WL 739522 (C.D. Cal. Feb. 2, 2022) ..............................10

*Wynes v. Kaiser Permanente Hosps.*,
  No. 10-cv-0702, 2011 WL 1302916 (E.D. Cal. Mar. 31, 2011) ......................................4

*X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA,
  2024 WL 422075 (N.D. Cal. Feb. 5, 2024) ..................................................................15

Meta's opposition to Voyager UK's renewed motion to dismiss ("Renewed MTD")[1] is based on a fundamental misunderstanding of the law governing the sufficiency of claims for breach of online adhesion contracts, and ignores the Bromley Declaration, which indisputably establishes that Meta cannot satisfy its burden of demonstrating personal jurisdiction for the non-contract claims.

<u>*Voyager UK's 12(b)(6) Motion to Dismiss the First Cause of Action*</u>. Meta assiduously avoids Voyager UK's primary arguments and on-point caselaw. Under the most analogous precedent from the Ninth Circuit and this Court—which Meta fails to distinguish or ignores entirely—the FAC fails to place Voyager UK on notice of the online adhesion contracts it has allegedly breached, and fails to allege any facts from which it could be reasonably inferred that Voyager UK manifested assent to any such contract. Meta's theory of contract formation remains entirely unclear, with fundamental, threshold questions left entirely unanswered, including: (i) how many contracts Voyager UK is alleged to have entered with Meta; (ii) are those alleged contracts clickwrap, browsewrap, or something else; (iii) when were those contracts entered; (iv) who entered them; and (v) how did that individual manifest assent on Voyager UK's behalf. Meta's opposition relies heavily on prior cases to which it was a party, and in which Meta contends that it made similar contractual allegations. But none of those cases concerned a challenge to the sufficiency of a contract claim; they all involved either default judgments or an opposing party that conceded that a contract had been formed. The fact that Meta has been able to avoid pleading challenges in the past does not absolve it of its obligation to plausibly plead the existence and formation of an online adhesion contract here.

It is also unclear whether Meta is relying on an alter ego or agency theory to support its claims. Meta chastises Voyager UK for "mischaracteriz[ing]," "misunderstand[ing]," and "miscontru[ing]" the FAC as alleging alter ego/agency liability—but then launches into a lengthy discussion of how the FAC arguably alleges alter ego and agency liability. This contradiction notwithstanding, any claims based on alter ego/agency are not sufficiently pleaded and should be dismissed.

<u>*Voyager UK's 12(b)(2) Motion to Dismiss the Second and Third Causes of Action.*</u> Meta's opposition to this aspect of the Renewed MTD is even more untenable. Meta asks the Court to transform a single line from Voyager UK's original Case Management Statement ("CMS")—that it

---

[1] All emphases are added and all capitalized terms have the same meaning as in the Renewed MTD.

would not contest personal jurisdiction solely for Meta's contract claim—into a blanket waiver of personal jurisdiction for all claims.  There is no authority for such a drastic and draconian step.  Meta's remaining personal jurisdiction allegations are squarely and unequivocally contradicted by the sworn Bromley Declaration.  But rather than address that Declaration, Meta contends that "the court cannot consider" it, arguing that it should be "disregard[ed]," or, if it is considered, "then any factual dispute it creates must be resolved in Meta's favor."  Meta is wrong on both points.  <u>First</u>, the Bromley Declaration was submitted only in support of Voyager UK's 12(b)(2) personal jurisdiction challenge and is not cited in the 12(b)(6) challenge to the sufficiency of the contract claim.  As the Ninth Circuit has long recognized, a court may consider evidence outside of the pleadings when adjudicating a Rule 12(b)(2) motion to dismiss, including affidavits.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  <u>Second</u>, although the facts in a complaint are generally accepted as true on a motion to dismiss, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  The unverified allegations in the FAC are directly contradicted by the Bromley Declaration, which means that Meta cannot demonstrate personal jurisdiction over Voyager UK for the Second and Third Causes of Action based on the CMS, a forum selection clause, or through "minimum contacts."

The deadline to amend the pleadings in this case, which has been pending for more than a year, has now passed.  (Dkt. 82.)  Meta has had ample opportunity to amend its pleading to assert a plausible claim for breach of contract, but failed to do so by the Court's deadline.  And any attempt to amend its jurisdictional allegations would be futile given the unrefuted evidence from the Bromley Declaration.  Meta's FAC should therefore be dismissed with prejudice in its entirety.

I.  **Meta Fails to Plausibly Plead Breach of Contract**

   A.  **Meta Fails to Plausibly Allege Existence of Agreement with Voyager UK**

In its Renewed MTD, Voyager UK identified seven <u>categories</u> of potential contracts implicated by the FAC's First Cause of Action: (1) Facebook's Terms of Service; (2) Facebook's Community Standards; (3) Meta's Commercial Terms (but only "as applicable"); (4) other "rules that govern access to and use of Facebook"; (5) Instagram's Terms of Use; (6) Instagram's Community Guidelines; and (7) other "rules that govern access to and use of Instagram."  (Renewed MTD at 9

(quoting FAC ¶¶ 25, 26).)  Meta does not contest that the FAC invokes these seven categories, but says that Voyager UK is wrong that Meta must attach all contracts at issue to the FAC.  (Opp. at 8-9.)  Voyager UK argued only that the FAC failed to put it on notice of what was meant by those seven categories, and that the easiest way to remedy that omission would have been to attach the alleged contracts.  Meta did not do so.  Instead, Meta notes that the FAC quotes portions of "Facebook's Terms of Services" and "Instagram's Terms of Use." By its own admission, Meta has thus not described the relevant terms of any of the <u>other five categories of alleged contracts</u>.  At a minimum, the First Cause of Action fails to state a claim based on those five categories.

Moreover, even assuming that Meta quoted from categories (1) and (4) above (a fact that is not clear from the FAC itself), that still fails to place Voyager UK on notice of what contracts are alleged to have been breached because: (i) Meta refuses to explain whether "as applicable, the Meta Commercial Terms," means that those Terms supersede, supplement, or amend other contracts; and (ii) Meta refuses to identify the version of the contracts that Voyager UK allegedly entered.[2]  As one illustration, Meta previously submitted a version of its Commercial Terms as an exhibit to the Chmelar Declaration, (*see* Dkt. 53-4), but Meta then submitted a different version of its Commercial Terms as an exhibit to the Andre Declaration (*see* Dkt. 84-4)— while contending that both versions were in force for an overlapping period of time.  Meta also relies entirely on inapposite caselaw involving default judgments;[3] a concession that a contract had been formed;[4] or traditional written contracts.[5]  Meta cites no authority that the allegations like those in the FAC—particularly given

---

[2] Meta's opposition emphasizes that certain of its terms were referenced in an October 16, 2017 letter. (Opp. at 13 (citing Ex. 4 to FAC at 2).)  But that letter identifies three different categories, none of which are the basis for the First Cause of Action.  (*See* Ex. 4 to FAC at 2 (referencing "Statement of Rights and Responsibilities," "Facebook Platform Policies," and "Instagram API Terms of Use").)

[3] *Facebook, Inc. v. Sluchevsky,* 19-cv-1277, 2020 WL 5823277 (N.D. Cal. Aug. 28, 2020), *report and recommendation adopted*, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020); *Meta Platforms Inc. v. Soc. Data Trading Ltd.*, 21-cv-09807, 2022 WL 18806267 (N.D. Cal. Nov. 15, 2022), *report and recommendation adopted*, 2022 WL 18806265 (N.D. Cal. Dec. 8, 2022).

[4] *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 907-08 (N.D. Cal. 2020) (consumers invoked iCloud terms); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1257 (N.D. Cal. 2022) (no dispute as to contract existence or formation through account creation).

[5] *See, e.g., Misha Consulting Grp., Inc. v. Core Educ. and Consulting Solutions, Inc.*, No. 13-cv-04262, 2013 WL 6073362, at *2 (N.D. Cal. Nov. 15, 2013) (written contract entered via email

*(cont'd)*

Meta's own apparent confusion about what contracts are at issue—are sufficient when the opposing party has not conceded the existence of a contract.

### B. Meta Fails to Plausibly Allege That Voyager UK Manifested Assent

Meta argues that it has plausibly pleaded that some unidentified individual associated with Voyager UK manifested assent to some "Terms" at some point because: (i) Facebook or Instagram allegedly cannot be used without agreeing to their terms; (ii) Voyager UK allegedly created and used multiple Facebook and Instagram accounts; and (iii) Voyager UK received actual notice of "Facebook's and Instagram's Terms." (Opp. at 10-13.) Even assuming those allegations are true, the FAC falls short of the threshold showing required for an online adhesion contract.

Meta's *first* argument ignores the critical question that must be answered when assessing the sufficiency of the FAC: is the contract (or contracts) that Voyager UK is alleged to have entered with Meta clickwrap, browsewrap, or something else? The FAC does not answer that question, and neither does Meta's opposition. Meta fails to acknowledge the distinct standards that apply to online adhesion contracts, and improperly collapses two different analytical frameworks into one. While Meta cites *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), this case aptly demonstrates Meta's error, because it delineates the two "flavors" of "[c]ontracts formed on the Internet": "'clickwrap' (or 'click-through') agreements in which website users are required to **click on an "I agree" box** after being presented with a list of terms and conditions of use, and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink." 763 F.3d at 1175-76. The Ninth Circuit recently reaffirmed this distinction, noting that there is a "spectrum" of online adhesion contracts—with clickwrap agreements providing *actual notice* of their terms and requiring specific manifestation of assent to them on one end, and with browsewrap agreements on "the other end of the spectrum," because "the user supposedly manifests assent" by merely continuing

---

correspondence in 2013); *James River Ins. Co. v. DCMI, Inc.*, No. 11-cv-06345, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012) (written contract for procurement of "commercial general liability insurance"); *Kaar v. Wells Fargo Bank, N.A.*, No. 16-cv-01290, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) (written loan agreement); *Dependable Highway Express, Inc. v. RIM Logistics, Ltd.*, No. 18-cv-04261, 2018 WL 7500276, at *1 (C.D. Cal. Sept. 10, 2018) (written contract for transport of shipping containers); *Wynes v. Kaiser Permanente Hosps.*, No. 10-cv-0702, 2011 WL 1302916, at *11 (E.D. Cal. Mar. 31, 2011) (written employment agreement).

to use a website after terms of an agreement are disclosed through a hyperlink. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). The FAC ignores that spectrum entirely.

In any event, the FAC indisputably fails to allege that Voyager UK clicked on any "I agree" button to manifest assent to any contractual category referenced in the First Cause of Action. Meta has thus failed to state a claim for breach of a clickwrap agreement. Instead, Meta's opposition relies on two insufficient tactics: (i) citing *Fteja v. Facebook*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012); and (ii) placing quotation marks around "click"-related terms that do not appear in the FAC. (Opp. at 11-12.) In *Fteja*, Facebook alleged that "a putative Facebook user cannot become an actual Facebook user unless and until ***they have clicked through the registration page where they acknowledge they have read and agreed to Facebook's terms of use.***" 841 F. Supp. 2d at 834.[6] Meta makes no such allegation here—nor does it contend that the process used to sign up for Facebook (or Instagram) in 2011-2012 (i.e., at the time of *Fteja*) is the same as the process that Voyager UK allegedly used at some later time(s). The same is true for the cases Meta cites in footnote 6 of its opposition; Meta does not allege that Voyager UK would have seen the same website or used the same registration process as those at issue in cases from as early as 2010 or 2013. Meta must identify the particular version of its websites that it contends gave rise to a binding contract with Voyager UK—as this Court recognized in a case cited in Meta's opposition. *See Snow v. Eventbrite, Inc.*, No. 20-cv-03698, 2021 WL 3931995, at *4 (N.D. Cal. Sept. 2, 2021) (noting that a representation of how a website "looked in January 2016" was insufficient absent facts as to how the website looked when the contract was allegedly formed).

Meta also cites the FAC's allegation that Voyager UK "'logged in'" to certain accounts, which Meta states "could have occurred only if the user ***clicked 'sign up'*** and manifested assent to be bound by Facebook's Terms." (Opp. at 12 (citing FAC ¶¶ 50, 61, 63–64).) While the FAC does allege that Voyager UK "logged in" to certain accounts, the FAC does ***not*** allege that Voyager UK ever "clicked

---

[6] Meta's predecessor (Facebook) made a similarly detailed allegation in *Franklin v. Facebook Inc.*, No. 1:15-cv-655-LMM, 2015 WL 7755670, at *1 (N.D. Ga. Nov. 24, 2015), asserting that "the Facebook registration process ***in place at the time Plaintiff registered*** for an account informed people [that] 'By clicking Sign Up, you are indicating that you have read and agree to the Terms of Use,'" which was "an underlined hyperlink directing users to [Facebook's Statement of Rights and Responsibilities]." *Id.* The FAC does not describe the registration process that Voyager UK is alleged to have used or any hyperlinks it allegedly would have encountered.

'sign up'"—despite Meta's misleading attempt to make it seem like it is quoting a phrase from the FAC, the words "sign up" never appear in the FAC. The FAC is completely silent as to what, if anything, Voyager UK is alleged to have "clicked." Meta has therefore failed to plausibly allege that Voyager UK assented to a clickwrap contract with Meta.

Meta's contention that "a person cannot use Facebook or Instagram without agreeing to their Terms" likewise fails because it only begs the question: assuming that Voyager UK has used Facebook or Instagram, *how* is Voyager UK alleged to have agreed to any terms that relate to Facebook or Instagram? Meta appears to argue that Voyager UK was on "inquiry notice" of those terms, (Opp. at 10), but according to the very caselaw that Meta cites, "[w]hether a user has inquiry notice of a browsewrap agreement . . . depends on the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1177. The FAC contains no allegations as to the design or content of the Facebook and Instagram websites or the agreement's webpage, and thus there is no plausible basis to conclude that those websites provided "reasonably conspicuous notice." *Rocha v. Urban Outfitters, Inc.*, No. 23-cv-542-AMO, 2024 WL 393486, at *3-5 (N.D. Cal. Feb. 1, 2024). Meta does not even attempt to distinguish the most analogous case, which Voyager UK repeatedly cited: *Be In, Inc. v. Google Inc.*, No. 12-cv-3373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013). In that case, Judge Koh dismissed contract claims because the plaintiff's complaint "fail[ed] to provide factual grounding from which [the plaintiff] can show the formation of a contract." *Id.* at *6. The plaintiff alleged that "Defendants agreed to the Terms of Service when they used and/or visited the CamUp website," but "provide[d] no grounds, beyond the mere existence of a link, for the Court to find that Defendants were on notice that mere use of the website would be interpreted as agreement to the Terms of Service." *Id* at *9. This Court then announced the standard that applies to pleading breach of a browsewrap contract: "a complaint must state facts establishing the means by which the link in question would give notice to a reasonably prudent internet user." *Id.* Just as the complaint in *Be In* failed to provide those facts, so too does the FAC. That is fatal to the FAC's First Cause of Action. *See id.*; *see also Olney v. Job.com, Inc.*, No. 1:12-cv-01724-LJO-SKO, 2014 WL 4660851 (E.D. Cal. Sept. 17, 2014) (dismissing claim where complaint merely alleged that defendants "agreed to be bound by the terms as a condition of their use of Job.com" without factual support).

Meta's *second* argument—that Voyager UK has created Facebook or Instagram accounts—is similarly unavailing. As discussed above, even assuming that Voyager UK created the accounts listed on pages 12-13 of Meta's opposition, that again begs the question: how, through the creation of those accounts, is Voyager UK alleged to have manifested assent to any of the seven categories of contracts in the First Cause of Action? What buttons were clicked; what hyperlinks were presented; what text was visible to Voyager UK? None of those questions are answered by either the FAC or Meta's opposition. Without any details as to how any of the online adhesion contracts are alleged to have been formed, Meta cannot satisfy the *Nguyen/Berman* standard of pleading "inquiry notice."

Meta tries to fill the foregoing gaps in two untenable ways. *First*, Meta cites a series of default judgments in which the sufficiency of the pleadings was not contested. (Opp. at 11-12.) Those default judgments cannot establish any facts from which it could be plausibly concluded that Voyager UK entered seven categories of contracts with Meta by creating online accounts. *Second*, Meta misleadingly quotes language that is not from the FAC, and that is not from Facebook or Instagram, to try to mask the lack of detail in its FAC. For instance, Meta states that "Facebook's and Instagram's Terms are 'provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply.'" (Opp. at 11.) But that quotation does not describe "enrollment" in Facebook or Instagram (or any allegation in the FAC); it describes the process of creating ***an Uber account*** as set forth in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017). Indeed, after reading the *Meyer* decision, one would know more about how to sign up for an Uber account—including the "registration button" presented to Uber users and accompanying "hyperlinks"—than she would about Facebook or Instagram after reading the FAC. Meta cannot remedy the deficiencies in its FAC by relying on a description of how Uber allegedly forms contracts with users.

Meta's opposition also relies heavily on an allegedly fake Facebook account under the name "Olga Herrera" to support its claim that it has sufficiently pleaded the existence of a contract. (Opp. at 12-13.) That reliance is misplaced, not least because Meta previously argued that this account allegedly resulted in a formation of a different contract—Facebook's EU Terms of Use—with a

different entity—Meta Platforms Ireland Limited ("Meta Ireland"). (*See* Dkt. 53-6, ¶¶ 3, 4.)[7] Meta Ireland is not a party to this action, and Facebook's EU Terms of Use are not asserted in the First Cause of Action. Meta's repeated invocations of alleged actions by Voyager UK relating to "fake accounts" have nothing to do with whether Voyager UK was on inquiry notice that it was assenting to a browsewrap contract with Meta. Similarly misplaced is Meta's argument that Exhibits 3 and 5 to the FAC support the inference that Voyager was on inquiry notice of any terms that are the subject of the First Cause of Action. (Opp. at 14.) Those exhibits (i) do not describe the design or content of Facebook or Instagram; (ii) do not refer to any terms or conditions applicable to Facebook or Instagram; and (iii) do not contain facts from which a reasonable factfinder could conclude that Voyager UK agreed to be bound to any contract, whether through the creation of the alleged "fake" accounts or otherwise. They thus provide no evidence of inquiry notice to Voyager UK.

Meta's *third* argument—that Voyager UK was on actual notice of the terms of the contracts at issue from correspondence that it sent in October 2017—likewise misses the mark. The October 2017 correspondence ostensibly references the 2017 version of (i) the "Statement of Rights and Responsibilities"; (ii) "Facebook Platform Policies"; (iii) "Instagram Terms of Use"; and (iv) "Instagram API Terms of Use." (FAC, Ex. 4 at 2.) It is not clear whether these terms—three of which refer to categories that are not among the seven categories in the First Cause of Action—are the same as those referenced in the FAC, or whether the 2017 version is the same as any versions that Voyager UK is alleged to have breached. Meta cites no instance when this sort of correspondence—referencing different sets of terms from those at issue in the FAC—was deemed sufficient to constitute actual notice giving rise to online contract formation.

**C.  Meta Fails to Sufficiently Allege Alter Ego or Agency Liability**

Meta sharply criticizes Voyager UK for addressing alter ego or agency theories of liability, going so far as to characterize this portion of the Renewed MTD as a "strawman"—because according

---

[7] This letter is referenced in paragraph 64 of the FAC, and therefore can be considered as part of the 12(b)(6) challenge. *See, e.g.*, *Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018) (on a MTD, the court "may take into account documents that are not physically attached to the complaint if the contents of the document are alleged in the complaint and the authenticity of the documents is not questioned"); *Brooke v. Patel*, No. 1:20-cv-1106 JLT EPG, 2023 WL 2645648, at *5 n.2 (E.D. Cal. Mar. 27, 2023) ("Where a complaint references communications, including emails, courts have determined . . . [they] may be considered with the [MTD].").

to Meta, the FAC does not plead alter ego or agency. Instead, Meta twice declares that "[a]ll of the FAC's allegations are directed at Voyager [UK]" and it would not be proper to perform "any alter-ego or agency analysis." (Opp. at 16.) But then the next four pages of Meta's opposition address the opposite proposition—that Meta *did in fact* allege alter ego and agency liability. Meta has not plausibly pleaded liability under alter ego/agency theories, and those allegations should be dismissed.

The FAC fails to allege "unity of interests" or "inequitable results." Meta's "unity of interest" allegations are based on a single document: the 2021 consolidated financial statement ("CFS") from Voyager UK and the Non-Party Entities. Meta's reliance on the CFS is misplaced, because "consolidated financial statements are insufficient to satisfy the alter ego test." *Uniloc 2017 LLC v. H&R Block, Inc.*, No. SACV 19-1149 JVS, 2019 U.S. Dist. LEXIS 229166, at *10 (C.D. Cal. Dec. 23, 2019). Meta appears to have confused ordinary consolidated financial reporting with improper commingling of funds, and cites no authority for the principle that consolidated UK financial statements render the entire Voyager corporate structure a sham. Instead, Meta's cited cases are either distinguishable based on their far more extensive factual record,[8] or support dismissal of the FAC.[9]

Meta argues that "[t]he Court need look no further than Voyager [UK]'s own statement that its 'subsidiaries are all entities over which the Group has control.'" (Opp. at 17.) But that is literally the legal definition of a subsidiary,[10] and if the mere right of a parent to assert control over a subsidiary were sufficient to confer alter ego liability, then every parent-subsidiary relationship would trigger the rare exception to corporate formalities—making the exception the rule. Indeed, the 2021 CFS

---

[8] *See Estate of Miller v. Cnty. of Sutter*, No. 2:20-cv-577-KJM-DMC, 2020 WL 6392565 (E.D. Cal. Nov. 2, 2020) (complaint included "dozens of paragraphs" relating to alter ego allegations, including that defendant used alter egos as instruments "to artificially divorce its profits from its liabilities," and to direct the "day-to-day operations by . . . installing executives and board members"); *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 637-38 (N.D. Cal. 2020) (complaint alleged that parent's control "encompasses its subsidiaries' day-to-day activities," and that parent "used its subsidiaries' cash flows to repurchase its own shares and pay dividends to shareholders"); *Ind. Elec. Supply Inc. v. Solar Installs, Inc.*, No. 4:18-cv-1435, 2018 WL 6092800, at *4-5, *8 (N.D. Ca. Nov. 21, 2018) (complaint alleged that "[t]he president of one company" had "sole authority to" control "the purse strings of another allegedly separate company," and that one defendant explicitly held itself out as responsible for co-defendant's debts to the plaintiff)

[9] *See Ranza v. Nike Inc.*, 793 F.3d 1059 (9th Cir. 2015) (employer was not an alter ego of its parent corporation despite the fact that parent was "heavily involved in [subsidiary's] operations").

[10] *See* Black's Law Dictionary (2d ed.) (defining "subsidiary" as an "[e]nterprise that is controlled by another owning more than 50% of voting stock").

DEFENDANT'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS    CASE NO. 3:23-cv-00154-AMO
9

shows only a standard corporate relationship in which all ordinary corporate formalities are assumed; Meta has identified nothing exceptional.  Instead, Meta repeatedly mischaracterizes the 2021 CFS. For instance, Meta contends that Voyager UK and the Non-Paty Entities "disregard . . . corporate formalities."  But according to the CFS, Voyager UK "entered into distribution agreement and management services with Bionic 8 Analytics . . . under terms that are no less favourable to the Group than those arranged with third parties," and received nearly $4 million in services pursuant to those arms-length arrangements in 2021.  (Ex. 1 to FAC at 34-35.)  That is the opposite of "disregard"; corporate formalities are observed to the point that there are written inter-Group service contracts. And while Meta contends that Voyager UK enters into lease agreements for its subsidiaries, the CFS notes that multiple Non-Party Entities executed their own leases.  (Ex. 1 to FAC at 31.)  Meta also does not identify a single officer that is the same for Voyager UK and any subsidiary, and does not identify a single individual that is employed by more than one member of the "Group." Meta has thus failed to plausibly allege "unity of interests."

<u>Second</u>, Meta claims that it "alleged inequitable results," (Opp. at 18), but then ***fails to cite any such allegations from the FAC***.  Meta cannot use its opposition to amend its pleading, and the failure to plead any inequitable results alone compels dismissal of any claim based on alter ego liability.  *See Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, No. 8:20-cv-00102-JWH-ADSx, 2022 WL 739522, at *4 (C.D. Cal. Feb. 2, 2022).

<u>Finally</u>, as for Meta's allegations of agency liability, it is not even clear who is alleged to be an agent of whom.  Meta asserts that any time an entity identifies itself as "Voyager Labs" in Exs. 3 and 5 to the FAC, that must be Voyager UK.  This argument should be rejected because (i) it contradicts the FAC's allegation that "at least Voyager Labs Ltd. and Voyager Analytics, Inc. both operate under the name 'Voyager Labs'" (FAC ¶ 7); and (ii) the cited materials explicitly clarify that "Voyager Labs" could refer to Voyager UK or to any of "its affiliates."  (Opp. at 16 (citing FAC Ex. 3 at 116).)  In addition, Meta argues that: (i) if an entity identifies itself as "Voyager Labs," then it must be an agent of Voyager UK; and (ii) if an individual identified herself as an employee of "Voyager Labs," then she must be an agent of Voyager UK.  Both of those theories fail based on Meta's actual allegation, which is that Voyager Analytics Inc. also independently uses the common

marketing term "Voyager Labs," (FAC ¶ 7), and thus according to Plaintiffs, the use of the term "Voyager Labs" could just as easily refer to one of the Non-Party Entities.

## II. The Court Lacks Personal Jurisdiction Over the CFAA and CDAFA Claims

Meta offers three bases for personal jurisdiction over Voyager UK for the CFAA and CDAFA Claims: (i) Voyager UK waived personal jurisdiction for all Meta-related claims in its CMS and in prior correspondence; (ii) Voyager UK waived personal jurisdiction for the CFAA and CDAFA claims based on a forum-selection clause in certain of Meta's terms; and (iii) Voyager UK has minimum contacts with California.  Meta has failed to satisfy its burden of showing that any of the foregoing establishes personal jurisdiction over Voyager UK for the CFAA and CDAFA claims.

### A. The Bromley Declaration is Fatal to Meta's Personal Jurisdiction Theories

The Bromley Declaration (submitted roughly nine months ago) specifically addresses each of Meta's arguments for personal jurisdiction, and refutes them all:

- *Alleged Waiver by Prior Correspondence*:  "[I]n the context of communications . . . that occurred before Meta filed its original Complaint in this action, Voyager UK agreed not to contest personal jurisdiction solely for claims brought by Meta for breach of contract in California (but did not make such an agreement for any other claims)."  (Dkt. 50-2, ¶ 20)

- *Applicability of Forum Selection Clause*:  "Voyager UK does not have, and has never had, multiple Facebook and Instagram accounts, and never agreed to any terms of service or use associated with Facebook or Instagram, and therefore never agreed to any forum selection clause . . . ."  (*Id.*)

- *Minimum Contacts*:  "Voyager UK does not lease or own an office or otherwise have any presence in California.  Voyager UK is also not registered with the Secretary of State of California to do business in California . . .  and provides no services for any California-based customers; has no contracts that were made in California; has no contracts that are governed by California law; and does not market sell, or offer for sale any products in California."  (*Id.*, ¶¶ 11-13, 21.)

The Bromley Declaration also specifically refutes a litany of allegations in the FAC by attesting that (i) none of the individuals in Exs. 3 and 5 to the FAC, or those identified as "Voyager Employees 1, 2, and 3," were employed by Voyager UK at the time of the relevant actions (*id.*, ¶¶ 16, 17); (ii) Voyager UK never marketed, offered, or distributed any software to the Los Angeles Police Department ("LAPD") (*id.*, ¶ 21); and (iii) no director, officer, employee, agent, or representative of Voyager UK created or used the Facebook/Instagram accounts identified in the FAC (*id.*, ¶¶ 23, 25).

Meta does not address the Bromley Declaration, except to incorrectly contend that "the Court cannot consider the Bromley Declaration in deciding this motion," and that "even if it were considered, any factual dispute it creates must be resolved in Meta's favor." (Opp. at 14-15.) Meta's position is wrong in several respects.  *First*, it is contrary to the well-established law of the Ninth Circuit, which provides that on a Rule 12(b)(2) motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination." *Unocal*, 248 F.3d at 922; *see also ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) (affirming dismissal for lack of personal jurisdiction based on an "uncontroverted declaration" from the defendant); *Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950 (JLS) (ADS), 2020 WL 3883273, at *4 (C.D. Cal. May 20, 2020) (dismissing for lack of personal jurisdiction in part based on declarations).  *Second*, Meta itself submitted and cited two declarations to support its arguments relating to personal jurisdiction.  (*See* Opp. at 19-25.)  *Third*, Meta's declarations do not address the allegations in the Bromley Declaration—they never cite any of those allegations, or submit any evidence that contradicts Ms. Bromley's sworn statements.  There are thus no factual disputes to be decided in Meta's favor; the only evidence of record is from Voyager UK.  *See, e.g.*, *Precision Transducer Sys. v. STFO Trading LLC*, No. 09-cv-4245, 2009 WL 10700319, at *4 (C.D. Cal. Oct. 15, 2009) (granting dismissal of two defendants where "Plaintiff has failed to submit any declarations that contradict [defendants'] declarations regarding personal jurisdiction").  The Bromley Declaration is alone dispositive of Meta's personal jurisdiction allegations, and Meta's decision to ignore it compels dismissal of the CDAA and CDAFA claims.

### B. Voyager UK Did Not Waive Jurisdiction in the CMS or Prior Correspondence

Meta argues that Voyager UK waived its right to challenge personal jurisdiction as to the Second and Third Causes of Action (i) in the CMS; and (ii) in a December 8, 2022 letter (submitted as Ex. 4 to the Gervais Declaration).  Not so.  Both of Voyager UK's statements were specifically limited to Meta's breach of contract claim.

Meta's original complaint asserted only a single "Cause of Action" for breach of contract, and did not assert claims under the CFAA or CDAFA. (Dkt. 1.)  Thus, when Voyager UK stated in its original CMS that it "agreed not to contest the exercise of personal jurisdiction over it by this Court solely for purposes ***of this action***," (Dkt. 35, ¶ 1), Voyager UK was necessarily addressing only the

action as it existed as of April 11, 2023—i.e., as a single cause of action for breach of contract. Similarly, in the December 8 letter, Voyager UK began by noting that Meta's "claims are for alleged violations of the terms of various alleged contracts, as identified in paragraph 4 of the [Letter Before Action dated 11 November 2022, the 'LBA']."  (Dkt. 84-6, ¶ 3.)  Voyager UK then noted that it was "prepared to submit to the jurisdiction of the US District Court for the Northern District of California and of any state court located in San Mateo County *for the purposes of resolving the allegations contained in the LBA*." (*Id.*, ¶ 9.)  Just as Meta's allegations in the original Complaint were limited to breach of contract, so too were the "allegations contained in the LBA." (*Id.*)  Meta had never given any indication to Voyager UK that it intended to assert claims under the CFAA or CDAFA prior to the filing of its FAC on May 5, 2023—a fact that Meta does not dispute.  In retrospect, it seems Meta may have engaged in a bait-and-switch, initially indicating its intent to assert only a single claim and then, once Voyager UK had agreed not to contest personal jurisdiction for that claim, radically expanding the scope of the action in which that single claim had been asserted.  The Court should not retroactively transform Voyager UK's narrow statements on personal jurisdiction into a broad, blanket waiver that applies to claims that were unknown to Voyager UK at the time of those statements.

Meta also appears to invoke the doctrine of pendent personal jurisdiction (albeit not by name), arguing that because the CFAA and CDAFA claims arise out of the same "common nucleus of operative facts" as Meta's contract claim (for which personal jurisdiction is not contested), then the Court has "personal jurisdiction over all claims." (Opp. at 20-21.)  The Court should not apply this discretionary doctrine.  *First*, the CFAA and CDAFA claims do not arise out of the same common nucleus of operative facts as the breach of contract claim.  While Meta's contract claim depends on particular terms of use allegedly governing Meta's platforms, the CFAA and CDAFA claims are based instead on an alleged violation of a general prohibition on access, and have nothing to do with any particular contract terms.  *Second*, if Meta's breach of contract claim is dismissed, then there is no "anchor" claim from which to exercise pendent jurisdiction, and the discretionary exercise of such jurisdiction would be improper.  *See Goldberg v. Rome McGuigan, P.C.*, No. 20-cv-9958-JFW (SKx), 2021 WL 3520725, at *4 (C.D. Cal. Apr. 23, 2021). *Third,* it would be unfair for the Court to exercise discretionary pendent jurisdiction where Meta could have earlier raised the CFAA and CDAFA

claims, but instead concealed its intent to assert them until it had extracted Voyager UK's pledge not to contest personal jurisdiction for the breach of contract claim. *See, e.g.*, *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). By Meta's own account, it was aware of the basis for the CFAA and CDAFA claims since it allegedly revoked Voyager UK's access to Facebook in 2017 (Opp. at 24)—nearly six years before it first surfaced these claims.

### C. Meta's Forum-Selection-Clause Theory Fails

The Bromley Declaration—the only sworn evidence in this case—establishes that Voyager UK never agreed to any forum selection clause, including because it never created any of the accounts referenced in the FAC. (Dkt. 50-2, ¶¶ 16, 17, 20, 23, 25.) In response, Meta relies on the FAC and the Andre Declaration (which Meta inexplicably calls the "Wleklinski Declaration" in its opposition), but that cannot satisfy its burden of demonstrating personal jurisdiction over Voyager UK. *First*, the FAC is unverified, and while the truth of the allegations therein must be assumed for purposes of Voyager UK's Rule 12(b)(6), that is not true for Voyager UK's Rule 12(b)(2) challenge. *See, e.g.*, *Klian v. Crawford*, No. 12-cv-2373, 2012 WL 12878721, at *2 (C.D. Cal. June 6, 2012) (declining to consider unverified complaint on challenge to personal jurisdiction because it "does not constitute evidence"). *Second*, the Andre Declaration does not refute any of the Bromley Declaration—it merely submits three sets of "Facebook Terms" that Ms. Andre states were in effect through May 2023. One of those is Facebook's Terms of Service for Israel; those Israeli Terms of Service are not referenced in the FAC or in Meta's opposition. Meta apparently has not yet decided if it is going to contend that Voyager UK also agreed to an eighth category of contractual terms. At any rate, neither the Andre Declaration, nor the exhibits thereto, nor any other evidence from Meta, supports the view that Voyager UK agreed to any sets of terms or to the forum selection clauses appearing therein.

Meta also makes much of the fact that Voyager UK's pre-litigation correspondence references one of Meta's forum selection clauses. (Opp. at 22.) But Meta's argument omits critical context. Meta had threatened to file suit against Voyager UK for breach of contract in the United Kingdom based on a European contract with Meta Ireland. (*See* Dkt. 84-6.) Voyager UK noted that the claims that Meta had raised appeared to be based on "non-European terms," and that in at least one version of those terms, *Meta* (not Voyager UK) had agreed that when those non-European terms were

allegedly at issue, then the dispute would have to be resolved exclusively in this Court. (*Id.*) Voyager UK's statements do not represent an agreement to be bound by any forum selection clause, nor an acknowledgement that it had previously been so bound.

### D. Meta Fails to Refute Voyager UK's Evidence That It Lacks "Minimum Contacts"

Meta relies exclusively on the FAC and its exhibits in connection with its argument that Voyager UK—a foreign entity with no presence in California—nonetheless has "minimum contacts" with California that subject it to personal jurisdiction here for the Second and Third Causes of Action. For the reasons discussed above, that is unavailing, because the sworn Bromley Declaration refutes each of the relevant allegations, including those relating to the alleged LAPD contacts. (Dkt. 50-2, ¶¶ 11-13, 16, 17, 19, 21, 24, 25.) Meta offers no evidence to the contrary.

Moreover, notwithstanding Meta's decision to ignore the Bromley Declaration, Meta also inexplicably ignores the leading Supreme Court case (and its progeny) upon which the Renewed MTD was based: *Walden v. Fiore*, 571 U.S. 277 (2014). In that case, the Supreme Court specifically rejected the idea that even if Voyager UK's actions—which are not alleged to have been taken by Voyager UK in California—affected California residents, that *injury-focused* approach is insufficient to satisfy the *conduct-focused* "minimum contacts" test. *Id.* at 289-90. Meta instead relies on a series of default judgments that it obtained, none of which considered *Walden*. (Opp. at 23-24 (citing default judgments in *Sluchevsky*, *Social Data*, and *Sahinturk*).) Meta also cites a case in which defendants were alleged to have sought out "WhatsApp's California-based servers." (Opp. at 23.) But Meta does not allege that Voyager UK sought out any *California-based servers*; the FAC does not identify where Meta's servers are located, and the only server referenced in the FAC is an Amazon server allegedly located in Virginia. (FAC, ¶ 53.) Finally, Meta cites *X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 422075 (N.D. Cal. Feb. 5, 2024)—in which this Court found personal jurisdiction over a defendant that, among other things, "directed potential customers interested in the data, tools, and services at issue **to a sales office in downtown San Francisco**." *Id.* at *2. Meta has not shown that Voyager UK has any such California contacts.

### CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

| | | |
|---|---|---|
| 1 | Dated:  February 29, 2024 | GISH PLLC |
| 2 | | By: */s/ Edward L. Tulin*_____ |
| | | EDWARD L. TULIN |
| 3 | | Attorneys for Defendant Voyager Labs Ltd. |