UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| META PLATFORMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VOYAGER LABS LTD., <br><br> Defendant. | Case No. 23-cv-00154-AMO <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Re: Dkt. No. 83 |

This is an action by Meta Platforms, Inc., against a UK-based entity, Voyager Labs Ltd. Voyager designed surveillance software that uses tens of thousands of fake accounts to scrape data from Facebook and Instagram. ECF 42 ¶¶ 33-35, 38. Voyager licenses that software to its customers, such as law enforcement agencies, who pay considerable fees to anonymously acquire data about a target. *Id.* ¶¶ 38-47. Based on this alleged misuse of Facebook and Instagram, Meta asserts claims for breach of contract, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502. *Id.* ¶¶ 80-89, ¶¶ 90-94, ¶¶ 95-103. Voyager moves to dismiss the operative first amended complaint on two grounds.[1] First, Voyager argues that Meta has failed to state a claim because it has not adequately alleged the existence of a contract. ECF 83 at 17-22. Second, Voyager argues that the Court lacks personal jurisdiction over it as to Meta's statutory claims. *Id.* at 28-34. Neither basis warrants dismissal.

Voyager's challenges to Meta's contract-based allegations are two-fold. Voyager first argues that Meta has not identified the specific contracts at issue. *Id.* at 17-19. On that point, Meta alleges that everyone who creates an account on Facebook or Instagram must agree to the

---

[1] This order assumes familiarity with the applicable legal standards.

1  platform's terms.  ECF 42 ¶¶ 25, 26.  Voyager rightly points out that Meta could define those

2  terms with more clarity in the operative complaint.[2]  ECF 83 at 18-19.  Voyager additionally notes

3  Meta does not specify which version of any document was in effect at the time of any alleged

4  breach.  *Id.* at 19.

5        Meta does, however, allege that Voyager breached the following provisions when it

6  allegedly created thousands of fake accounts to scrape, then sell, platform users' social media data:

> 27. Section 3.2.1 of Facebook's Terms of Service prohibits "do[ing] . . . anything . . . unlawful, misleading, . . . or fraudulent," or facilitating or supporting others in doing so. Instagram's Terms also prohibit "do[ing] anything unlawful, misleading, or fraudulent," or facilitating or supporting others in doing so.
>
> 28. Section 3.2.3 of Facebook's Terms of Service prohibits "access[ing] or collect[ing] data from [Meta] Products using automated means (without our prior permission) or attempt[ing] to access data you do not have permission to access." Instagram's Terms of Use also prohibit "access[ing] or collect[ing] in unauthorized ways . . . [including] collecting information in an automated way without our express permission."
>
> 29. Section 3.1 of Facebook's Terms of Service require users to, among other things, "[p]rovide for your account the same name that you use in everyday life," "provide accurate information about yourself," and "[o]nly create one account (your own) and use it for personal purposes." Facebook's Community Standards prohibit the use of fake accounts.
>
> 30. Section 3.1 of Facebook's Terms of Service further prohibit anyone from using Facebook if Meta has "previously disabled your account for violations of our Terms or the Community Standards, or other terms and policies that apply to your use of Facebook." If Meta disables an account, users "agree not to create another account without our permission." Instagram's Terms similarly prohibit using Instagram if Meta "previously disabled your account for violation of law or any of [Instagram's] policies."
>
> 31. Section 3.2.5 of Facebook's Terms of Service prohibits "sell[ing], licens[ing], or purchas[ing] any data obtained from us or our services, except as provided in the Platform Terms." Instagram's Terms also prohibit "sell[ing], licens[ing], or purchas[ing] any account or data obtained from us or our Service."

---

[2] For example, Meta defines " 'Facebook's Terms' as Facebook's Terms of Service and other rules that govern access to and use of Facebook, including Facebook's Community Standards and, as applicable, Meta's Commercial Terms."  ECF 42 ¶ 25.  Meta's definition of "Instagram's Terms" is similar; those terms consist of "Instagram's Terms of Use and other rules that govern access to and use of Instagram, including Instagram's Community Guidelines."  *Id.* ¶ 26.

2

*Id.* ¶¶ 27-31 (modifications in original), *see also* ¶ 83. These allegations provide the level of clarity Voyager contends is lacking and is sufficient to put Voyager on notice of the basis for Meta's breach of contract claim. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) ("The complaint must identify the specific provision of the contract allegedly breached by the defendant."). Whether Voyager violated all of the terms in effect during the relevant period, some of them, or none of them can be sorted out through discovery and raised at summary judgment.[3]

Voyager next argues that Meta has not adequately alleged facts establishing mutual assent. ECF 83 at 19-22. Meta alleges that Voyager created tens of thousands of fake accounts to scrape data from Facebook and Instagram using automated technology. *See* ECF 42 ¶¶ 33, 35. Meta also alleges that it sent a cease-and-desist letters and other correspondence to Voyager in October 2017, November 2022, and February 2023, in which it identified the provisions Voyager breached or described the unauthorized conduct. *Id.* ¶¶ 34, 60, 62, 73 & Exs. 4, 6. Meta further alleges that notwithstanding its efforts to secure compliance with the Facebook and Instagram terms, Voyager continued to create fake accounts, use its software to scrape social media data, and set-up a sophisticated infrastructure to avoid detection by the technologies Meta implemented to detect and stop such misuse of its platforms. *Id.* ¶¶ 57, 67-76.

These allegations plausibly suggest that Voyager had actual knowledge of Meta's terms. For this reason, Voyager's reliance on cases where mutual assent turns on the sufficiency of inquiry notice in the context of a clickwrap or browsewrap agreement is misplaced. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be

---

[3] Likewise, in the event Voyager wishes to contest whether it, or some other entity or person (whether affiliated with Voyager or not), engaged in the conduct that is the subject of Meta's complaint, it may do so at the summary judgment stage. To the extent Voyager raises those factual disputes now to challenge purported alter ego allegations, the Court does not read Meta's complaint as asserting claims against any defendant other than Voyager. *See* ECF 84 at 9 ("Voyager misunderstands the [first amended complaint] – Meta's allegations are directed at the Defendant, Voyager Labs Ltd. and the conduct of its employees, not some alter ego of Defendant's."). The Court thus does not reach the parties' alter ego arguments.

1  found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous
2  notice of the terms to which the consumer will be bound; and (2) the consumer takes some action,
3  such as clicking a button or checking a box, that unambiguously manifests . . . assent to those
4  terms."). Indeed, "[c]ourts have consistently enforced . . . 'clickwrap' or 'browsewrap'
5  agreements formed on the Internet where the user had actual notice of the agreement . . . ."
6  *See Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL 5102609, at *5 (N.D. Cal. Oct.
7  11, 2019) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)).

8  Moreover, in light of allegations that Voyager had actual notice of the Facebook and
9  Instagram terms, it is plausible to infer that Voyager's continued use of the social media platforms
10 signified its assent to those terms, which as Meta alleges, every user must accept in order to use
11 Facebook and Instagram. *Cf. Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL
12 5568706, at *9 (N.D. Cal. Oct. 9, 2013) (finding that the defendants' mere use of a website could
13 not serve as a manifestation of assent where the plaintiff relied on "the mere existence of a link" to
14 establish that the defendants were put on notice of use of the website would be interpreted as
15 agreement to the terms of service). Additionally, " '[u]nder California law . . . formation of
16 contract – including mutual assent – is generally a question for the trier of fact.' " *Mi Sook Lee v.*
17 *Rusu*, No. C 17-01110 WHA, 2017 WL 2630126, at *7 (N.D. Cal. June 19, 2017) (quoting *Vita*
18 *Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App. 4th 763, 771
19 (2015)). Accordingly, Voyager's motion to dismiss for failure to state a claim is **DENIED.**

20 Voyager's motion to dismiss for lack of personal jurisdiction as to the Meta's statutory
21 claims also fails. The parties' April 11, 2023 joint case management statement reads, in part:
22 "Defendant Voyager Labs Ltd. has agreed not to contest the exercise of personal jurisdiction over
23 it by this Court solely for purposes of this action, and has likewise agreed not to contest that venue
24 is proper in this Court for purposes of this action." ECF 35 at 3. Though the filing of the April 11
25 case management statement preceded the filing of the operative complaint, in which Meta added
26 its statutory claims for the first time, the Court nonetheless has personal jurisdiction under the
27 doctrine of pendent personal jurisdiction. The doctrine permits a court to "assert pendent personal
28 jurisdiction over a defendant with respect to a claim for which there is no independent basis of

4

1    personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in

2    the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v.*

3    *Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

4        Here, the application of the pendent personal jurisdiction doctrine is appropriate for three

5    reasons.[4]  First, Voyager does not dispute that the Court has personal jurisdiction over it with

6    respect to the breach of contract claim.  *See* ECF 85 at 17.  Second, Meta's statutory claims arise

7    from Voyager's alleged misuse of Meta's social media platforms, which is the same factual basis

8    for Meta's breach of contract claim.  *See Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108

9    F. Supp. 3d 816, 823 (N.D. Cal. 2015) (applying pendent personal jurisdiction doctrine under

10   *Action Embroidery* where each of the claims in the complaint stemmed from the allegations that

11   the defendant company was formed using misappropriated trade secrets and proprietary

12   information of the plaintiff).  Third, adjudicating these claims in a single action promotes the goals

13   of judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties,

14   considerations which led to the adoption of the doctrine in the first place.  *See Action Embroidery*,

15   368 F.3d at 1181 ("When a defendant must appear in a forum to defend against one claim, it is

16   often reasonable to compel that defendant to answer other claims in the same suit arising out of a

17   common nucleus of operative facts.  We believe that judicial economy, avoidance of piecemeal

18   litigation, and overall convenience of the parties is best served by adopting this doctrine.").

19       The Court rejects Voyager's arguments to the contrary.  Voyager contends that Meta's

20   claims lack a common nucleus of operative fact because the "contract claim depends on particular

21   terms of use allegedly governing Meta's platforms" whereas the other claims "have nothing to do

22   with contract terms."  ECF 85 at 17.  But this just means that Voyager's alleged misuse of Meta's

23   platforms may give rise to claims under different legal theories.  *See, e.g.*, *CE Distrib., LLC v.*

24   *New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004) (district court had discretion to exercise

25   pendent personal jurisdiction where contract claim and claim for tortious interference arose from

---

[4] Because the pendent personal jurisdiction doctrine is sufficient grounds to deny Voyager's motion to dismiss for lack of personal jurisdiction, the Court does not reach the parties' remaining arguments about the applicability of Meta's forum selection clause, whether specific jurisdiction exists, or the evidence offered in connection with those arguments.

common nucleus of fact). Voyager next argues that "if Meta's breach of contract claim is dismissed, then there is no 'anchor' claim from which to exercise pendent jurisdiction, and the discretionary exercise of such jurisdiction would be improper." *See* ECF 85 at 17. At this juncture, however, Meta's breach of contract claim is live.

Finally, Voyager argues that it would be unfair for the Court to exercise discretionary pendent jurisdiction because Meta could have raised its statutory claims earlier. *Id.* It is not unfair, however, to expect Voyager to anticipate that consenting to personal jurisdiction – even if initially limited to one claim – could lead to the exercise of pendent personal jurisdiction while the pleadings remained unsettled. *See* ECF 35 at 10 (parties jointly proposed September 1, 2023 as the deadline to amend the pleadings). Prior correspondence from Voyager's counsel underscores the absence of any unfairness to Voyager. When the breach of contract claim was the only one pending, Voyager's counsel stated that Meta's allegations "should in fact be advanced in the US District Court for the Northern District of California or in a state court located in San Mateo County." ECF 84-6 at 1. Voyager pointed to "the high cost of legal services and of litigation in England" as one of many reasons why California was "clearly the more appropriate forum." *See id.* at 3-4. Voyager is thus appropriately bound to proceed in this district. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality opinion) (identifying consent as one example that "reveals circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State"). Accordingly, Voyager's motion to dismiss for lack of personal jurisdiction is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 23, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**